**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

ELENA POMA F/K/A ELENA AQUINO :     CIVIL ACTION NO.
             Plaintiff,    :      3:02CV543 (MRK)

v.                       :

                      :

CITY OF HARTFORD/        :
HEALTH DEPARTMENT    :
            Defendants.  :      NOVEMBER 4, 2003
                      :

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT

The Defendant, City of Hartford/Health Department, respectfully submits this

Memorandum of Law in support of its Motion for Summary Judgment. Summary judgment

should enter in favor of the Defendant because Plaintiff cannot establish sufficient evidence to

create a genuine issue of material fact as to the issue of whether she was denied a promotion to

the position of Lead Inspector on the basis of her race, ancestry, sex or pregnancy or in

retaliation for filing an internal complaint. Additionally, some of Plaintiff's claims are barred by

the applicable statute of limitations and Plaintiff's claims brought pursuant to the Connecticut

Fair Employment Practices Act ("CFEPA") are barred because Plaintiff failed to obtain a release

of such claims. Finally, if Plaintiff has adequately alleged a racial harassment claim, Plaintiff

cannot offer sufficient evidence to demonstrate a hostile work environment.

I.    BACKGROUND

Plaintiff, an employee of the City of Hartford, brought this action against the City of Hartford/Health Department[1] based on her failure to gain a promotion to the position of Public Health Sanitation Inspector, otherwise known as a "Lead Inspector," in 1997 and 1998.

The City of Hartford maintains a civil service system, under which all positions within the City are divided into the classified service and the non-classified service. All City positions are in the classified service unless specifically excluded therefrom by the City Charter. The Lead Inspector position is a classified position.

Under the City's Personnel Rules and Regulations, vacancies within the classified service may only be filled after a job announcement is posted. The job announcement (or "posting") specifies the time in which applications may be filed. All applications must be made on the forms provided by the Personnel Department. Under the Personnel Rules and Regulations, "[t]he Director of Personnel shall reject any application which indicates on its face that the applicant does not possess the minimum qualifications required for the position or who fails to file by the announced closing date for receiving applications unless prior to such date an extension has been publicly announced." Personnel Rules & Regulations, Rule V §3. Once an applicant's application is deemed to meet the minimum qualifications for the position, the

---

[1] The City of Hartford, obviously, is a municipality in Connecticut and, during the relevant period, maintained a Health Department. The Health Department was never a separate legal entity but, rather, a department within the City of Hartford. Thus, the City of Hartford is the only defendant in this action.

2

applicant becomes eligible for a competitive examination. Personnel Rules & Regulations, Rule VI §1 (p. 6-1). After all eligible applicants have been tested and ranked based on their test scores, the Personnel Department forwards to the Director of the relevant department (or "department head" or "appointing authority") a list of three names to interview for the position. After interviews, the Director makes his or her selection from the interviewed candidates.

On December 4, 1997, a job announcement for the Lead Inspector position was posted. The posting indicated that applications would be accepted up to December 19, 1997. Plaintiff never submitted an application for the position because she was on maternity leave and did not know about the posting. Consequently, she was not considered for the position.

On November 25, 1998, a job announcement for the Lead Inspector position was posted. The posting stated that applications would be accepted until Friday, December 18, 1998 and that the necessary qualifications included graduation from high school, two years of college and two years of "responsible experience in the field of public health sanitation, involving public contact." Plaintiff submitted a timely application in response to this job announcement. However, on or about December 29, 1998, Plaintiff received correspondence from Susan Comstock, a Principal Personnel Analyst, indicating the Plaintiff's application failed to reflect the minimum academic and experience requirements for the position.

Prior to receiving this letter, Elena Poma and Susan Comstock had never met and Susan Comstock had no knowledge as to whether or not Ms. Poma was pregnant. Moreover, prior to

3

reviewing all timely applications for the position, Ms. Comstock did not speak to anyone regarding Plaintiff's application.

Plaintiff's application failed to reflect completion of two years of college. In particular, Plaintiff failed to indicate the number of college credits that she had earned towards a degree. Ms. Poma also did not submit any college transcript or similar document with her application in order to demonstrate the number of college credits that she had earned.

Plaintiff's application also failed to reflect two years of "responsible experience in the filed of public health sanitation, involving public contact" as required in the posting. Ms. Poma's application simply reflected that she had served as a Senior Clerk Typist in the Health Department since 12/96. Moreover, Plaintiff commenced her duties as a Senior Clerk Typist in the Health Department on December 30, 1996. Thus, as of December 18, 1998 (the last day upon which applications for the position could be submitted), she did not have two full years of experience in the Health Department. Additionally, according to Plaintiff, she started to accompany Lead Inspectors on lead inspections in February of 1997. Thus, as of December 18, 1998, she did not have even two full years of experience in tagging along with Lead Inspectors.

Plaintiff also alleges that she was spoken to by her supervisor, Kevin Hood, regarding two conversations she had with a co-worker in which the Spanish language was spoken. Plaintiff was never disciplined as a result of those conversations. Additionally, Plaintiff's request to

4

attend a training session on lead inspection equipment was denied, while her request to attend a lead abatement training session was approved.

Plaintiff filed a claim with the Connecticut Commission on Human Rights and Opportunities (CHRO) on February 18, 1999. Plaintiff failed to obtain a Release of Jurisdiction from the CHRO.

II.     DISCUSSION

A.     Summary Judgment Standard.

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of [his] pleading, but [his] response, by affidavits or otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). In determining when a party has raised a genuine issue of material fact, the Supreme Court has stated, "there is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-250 (1986) (citations omitted). Indeed, a plaintiff may not get to a jury without "any significant probative evidence tending to

5

support the complaint." Anderson, 477 U.S. at 249 (quoting, First Nat'l Bank of Arizona v. Cities Servs. Co., 391 U.S. 253, 290 (1968)).  The moving party's burden may be fulfilled by "pointing out to the District Court—that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

The Second Circuit has stated that a "mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." Yerdon v. Henry, 91 F.3d 370, 374 (2d Cir. 1996), quoting, Anderson, 477 U.S. at 252; see also, Bickerstaff v. Vassar College, 196 F.3d 435, 448 (2d Cir. 1999), cert. denied, 530 U.S. 1242 (2000) ("An inference is not a suspicion or guess.  It is a reasoned, logical decision to conclude that a disputed fact exists on the basis of another fact that is known to exist.").  Further, the Second Circuit has stated that the non-movant "cannot rely on inadmissible hearsay in opposing a motion for summary judgment." Burlington Coat Factory Warehouse Corp. v. Espirit de Corp., 769 F.2d 919, 924 (2d Cir. 1985).  Thus, "even in the discrimination context, a plaintiff must provide more than conclusory allegations of discrimination to defeat a motion for summary judgment." Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir.), cert. denied, 474 U.S. 829 (1985).  In fact, the plaintiff's evidence must be precise and specific, and may not be based on conjecture and surmise. Bickerstaff, 196 F.3d at 451 ("affidavits must be based upon 'concrete particulars,' not conclusory allegations."); Lisa's Party City, Inc. v. Town of Henrietta, 185 F.3d 12, 17 (2d Cir. 1999); see also, McLee v. Chrysler

6

Corp., 109 F.3d 130, 135 (2d Cir. 1997) (plaintiff's rationalizations are insufficient to create

genuine issues of material fact). In this case, plaintiff has failed to raise a genuine issue of

material fact necessitating a trial.

      B.      <u>Plaintiff's Claims Concerning the 1997 Lead Inspector Promotional Opportunity
Are Barred by the Statute of Limitations</u>.

Plaintiff's claims concerning the promotional opportunity for the Lead Inspector position

in December of 1997 are barred by the applicable statute of limitations.

Judge Underhill has summarized Title VII statute of limitations analysis as follows:

> Title VII requires plaintiffs to exhaust administrative remedies prior to filing an
> action for damages in federal court. First, the plaintiff must file a complaint with
> a state or local fair employment opportunity commission if one exists. Second,
> the plaintiff must file a timely charge of discrimination with the EEOC. Finally,
> the plaintiff must receive a right to sue letter from the EEOC and file suit within
> 90 days.

> Where the plaintiff first files discrimination charges with a state agency, district
> courts may hear only those claims involving discriminatory acts that were raised
> before the EEOC and that occurred within 300 days of the date the EEOC charge
> was filed. To determine the timeliness of an EEOC complaint and an ensuing
> lawsuit, the court must identify the dates on which the alleged discriminatory acts
> took place.

<u>Miner v. Town of Cheshire</u>, 126 F. Supp. 2d 184, 189 (D. Conn. 2000) (multiple internal

citations omitted); 42 U.S.C. §2000e-5.

The CFEPA analysis is similar. However, under CFEPA, an administrative complaint

must be filed with the CHRO within 180 days of the alleged act of discrimination. Conn. Gen.

7

Stat. §46a-180; <u>Williams v. Comm'n. on Human Rights & Opportunities</u>, 257 Conn. 258, 777 A.2d 645 (2001).

In this case, Plaintiff filed her complaint of discrimination with the CHRO on February 18, 1999. Poma Tr. at 64 & Exhibit 4 thereto; <u>see also,</u> Amended Complaint at ¶4(a). She alleges that her claim was filed the same day with the EEOC and, for purposes of this motion, the Defendants do not contest such filing date. Thus, by the undersigned's calculations, 300 days before February 18, 1999 was <u>April 24, 1998</u> and 180 days before February 18, 1999 was <u>August 22, 1998</u>. Therefore, any alleged discriminatory actions occurring prior to April 24, 1998 are barred under Title VII's statute of limitations and any alleged discriminatory actions occurring prior to August 22, 1998 are barred by CFEPA's statute of limitations.

Of course, these filing deadlines, as with any statute of limitations are subject to waiver, estoppel and equitable tolling. <u>Miner</u>, 126 F. Supp. 2d at 189. "A limitations period may be tolled by offering evidence of a 'continuing violation' so long as at least one allegation falls within the appropriate statutory period." <u>Id</u>. "Discrete incidents or even similar multiple incidents of discrimination that do not result from discriminatory policies or mechanisms, however, do not amount to a continuing violation. Moreover, courts in this circuit disfavor application of the continuing violation doctrine and hold that only compelling circumstances warrant use of this exception to the statute of limitations." <u>Id</u>. (multiple citations omitted).

8

In this case, Plaintiff's complaint encompasses two discrete incidents—the Defendant's failure to promote Plaintiff to the Lead Inspector position in 1997; and the Defendant's failure to promote Plaintiff to the Lead Inspector position in November of 1998.  On December 4, 1997, the Lead Inspector job announcement was posted and it indicated that applications would be accepted up to Friday, December 19, 1997.  Poma Tr. at Exhibit 7 thereto.  Plaintiff failed to submit an application for the position.  Poma Tr. at 80.  Plaintiff claims that she was not aware of the posting because she was out on maternity leave at the time the posting was made.  Poma Tr. at 80-82.  After completing her maternity leave, Plaintiff returned to work in February of 1998 and discovered that the Lead Inspector position had been filled.  Amended Complaint at ¶16.  Thus, any aggrievement that Plaintiff suffered occurred well prior to April 24, 1998 and her claims are simply untimely.  Moreover, such claims are barred unless Plaintiff can establish equitable tolling.  However, she cannot.  With respect to the November 1998 posting for the Lead Inspector position, Plaintiff filed an application in response to such posting.  Poma Tr. at 128-132 & Exhibits 12 & 13 thereto.  However, the City's Personnel Department found the Plaintiff's application failed to reflect the minimum requirements for the job.  Thus, Plaintiff submitted an application in response to the November 1998 posting but failed to do so in response to the December 1997 posting.  These events have nothing in common except that both involved the Lead Inspector position and, in both instances, Plaintiff was unqualified for the position.  Simply put, no facts are present in the record that would support an equitable tolling of

9

the statute of limitations. As a result, Plaintiff's Title VII and CFEPA claims regarding the December 1997 posting for the Lead Inspector position are barred by the applicable statute of limitations.

Also, to the extent that Plaintiff attempts to assert a hostile work environment claim, any events occurring prior to April 24, 1998 are barred by the applicable statute of limitations.

C.     Plaintiff Has Failed to Exhaust Her State Administrative Remedies.

Summary Judgment should enter in favor of the Defendant on Plaintiff's claims brought pursuant to CFEPA (Counts Four, Five, Six and Eight) because, to the knowledge of the undersigned, Plaintiff has not produced a Release of Jurisdiction from the Connecticut Commission on Human Rights and Opportunities ("CHRO").[2] Thus, Plaintiff has not exhausted her state administrative remedies.

Connecticut General Statutes §46a-100 provides, in relevant part: "Any person who has timely filed a complaint with the Commission on Human Rights and Opportunities . . . and who has obtained a release from the commission in accordance with section 46a-101, may also bring an action in the superior court . . . ." Connecticut General Statutes §46a-101(a) provides: "No action may be brought in accordance with section 46a-100 unless the complainant has received a release from the commission in accordance with the provisions of this section."

---

[2] Defendants are aware of a Release of Jurisdiction issued by the EEOC. However, Plaintiff has not produced a Release of Jurisdiction from the CHRO.

1.    <u>There is No Evidence of Discrimination in the Promotional Process</u>.

In this case, the only alleged adverse employment actions are the Defendant's failure to

promote her to the Lead Inspector position in December of 1997 and November of 1998.

Amended Complaint at ¶¶1, 16, 32.[3]

Because Plaintiff alleges that she was improperly denied the promotion and has no direct

evidence of illegal discrimination, she is first required to establish a prima facie case of

discrimination by showing:  (1) that she belongs to a protected class; (2) that she was qualified

for the position; (3) that she was denied the position; and (4) that the denial occurred under

circumstances giving rise to an inference of discrimination on the basis of membership in that

class. <u>Stern v. Trustees of Columbia University</u>, 131 F.3d 305, 311-12 (2d Cir. 1997); <u>Sioson v.</u>

<u>Knights of Columbus</u>, 160 F. Supp. 2d 316, 321 (D. Conn. 2001) ("The same standard applies to

both the CFEPA and Title VII claims brought in this cause of action."); <u>Sedotto v. Borg-Warner</u>

---

[3] In her deposition, Plaintiff thought that her lay-off in March of 1999 was also discriminatory. Poma Tr. at 156-57. However, a review of Plaintiff's CHRO complaint (which was filed on February 18, 1999—prior to the lay-off and which was not later amended) reveals that the lay-off was not addressed. Poma Tr. at Exhibit 4. Moreover, the Amended Complaint in this action does not mention the lay-off as a possible basis for the claim. <u>See e.g.</u>, Amended Complaint at ¶1. Therefore, Plaintiff has not exhausted her administrative remedies with respect to any claims regarding her lay-off since they were never filed with the CHRO and any such claims are barred by the statute of limitations. It appears that Plaintiff's primary argument regarding the March 1999 lay-off is that, had she received the promotion to the Lead Inspector position, she would not have been laid off from the Senior Clerk Typist position. Thus, the lay-off is not an adverse employment action but, rather, offered by the Plaintiff as evidence of Plaintiff's claimed backpay damages. Additionally, Plaintiff complains that she was denied an opportunity to attend a training session regarding lead inspection equipment (Amended Complaint at ¶¶27-31), such denial does not rise to the level of an adverse employment action. <u>See e.g.</u>, <u>Galabaya v. New York City Bd. of Ed.</u>, 202 F.3d 636, 640 (2d Cir. 2000). This is particularly so when one considers that, on the same day that she was denied an opportunity to attend a particular training, Plaintiff was allowed to attend a different training session. Poma Tr. at 116-118.

12

<u>Protective Serv.s Corp.</u>, 94 F. Supp. 2d 251, 268 (D. Conn. 2000) ("It is well-settled that the same legal standards apply to claims under CFEPA as to claims under Title VII and the ADEA."). The burden on the plaintiff at this prima facie stage is low. <u>Cronin v. Aetna Life Ins. Co.</u>, 46 F.3d 196, 203-204 (2d Cir. 1995).

        a.      <u>Plaintiff Cannot Establish a Prima Facie Case</u>

      At this stage in the proceedings, the Defendant does not contest that Plaintiff is a member of a protected class and that she was denied the position of Lead Inspector. However, Defendant contends that Plaintiff was not qualified for the position and that Plaintiff was not denied the promotions under circumstances giving rise to an inference of discrimination.

      With respect to the December 1997 posting for the Lead Inspector position, Plaintiff did not know that the position was posted and, therefore, did not apply for the position. Poma Tr. at 80 & Exhibit 7 thereto.[4] Under the City's Personnel Rules and Regulations, most City jobs, including the Lead Inspector position, are deemed to be within the "Classified" service of the City. Exhibit 1 to the Affidavit of Susan Comstock, which is attached as Exhibit D, at Rule II §4; <u>see also</u>, Conn. Gen. Stat. §7-407 <u>et seq.</u> (allowing for adoption of merit systems by municipalities). "All appointments and promotions in the classified service of the City shall be made according to merit and fitness to be ascertained so far as practicable by competitive

---

[4] In addition, Plaintiff testified that she was never told when the posting would occur and was not promised a telephone call when the posting was made. Further, she testified that she was familiar with the posting process under the Personnel Rules and Regulations. Poma Tr. at 78-84.

13

examination." Rule VI at §1. Further, "All examinations for positions in the classified service shall be published by posting announcements in the Personnel Office, on official bulletin boards, and in such other places as the Director of Personnel deems advisable . . . ." Rule V §1. "Applications shall be made on forms provided by the Director of Personnel." Rule V §2. "The Director of Personnel shall reject any application which indicates on its face that the applicant does not possess the minimum qualifications required for the position or who fails to file by the announced closing date for receiving applications unless prior to such date an extension has been publicly announced." Rule V §3.

Because she failed to submit an application, Plaintiff was not eligible for consideration for the Lead Inspector position in 1997. Therefore, Plaintiff was neither qualified for the position (because she did not submit an application) nor did her rejection occur under circumstances giving rise to an inference of discrimination.

With respect to the November 1998 posting for the Lead Inspector position, Plaintiff filed an application with the City's Personnel department in response to the posting. Poma Tr. at 128-132 & Exhibits 12 & 13 thereto. Plaintiff's application was reviewed by Susan Comstock of the City's Personnel department. Comstock Aff't. (Exhibit D), at ¶¶6-7. Ms. Comstock determined that Plaintiff's application did not reflect the minimum qualifications for the position. Comstock Aff't. at ¶7. Prior to her review of Plaintiff's application, Ms. Comstock was not contacted by anyone in the City's Health department concerning Plaintiff's application. Comstock Aff't. at

14

¶10.  Based on her determination that the application did not meet the minimum qualifications

for the position, Ms. Comstock issued Plaintiff a letter informing her that she did not meet the

minimum qualifications for the position.  Comstock Aff't. at ¶8 & Exhibit 2 thereto; <u>see also</u>,

Poma Tr. at 135 & Exhibit 14 thereto.  Plaintiff admits that she had never met Susan Comstock

prior to receiving notification that her application did not reflect the minimum qualifications for

the position.  Poma Tr. at 135; <u>see also</u>, Comstock Aff't. at ¶9.

Under the Personnel Rules, the Personnel Director is required to reject any application

that fails to reflect the minimum qualifications for the position.  Comstock Aff't. at Exhibit 1

thereto, Personnel Rules & Regulations, Rule II §4.  Consequently, Plaintiff's application was

rejected.  Because Ms. Comstock had not spoken to anyone in the Health Department regarding

Plaintiff or her application, Ms. Comstock had no basis upon which to illegally discriminate

against Plaintiff.  Ms. Comstock certainly had no interest in illegally discriminating against

Plaintiff—she had never met the Plaintiff.  Moreover, because Plaintiff's application did not

reflect the minimum qualifications for the position, Plaintiff was never tested or ranked in

comparison to the qualified applicants and her name was never forwarded to Ms. McCormack

for interview and selection.  Thus, employees in the Health Department never had the

opportunity to illegally discriminate against Plaintiff.  Therefore, Plaintiff cannot establish a

prima facie case of illegal discrimination and, consequently, summary judgment should enter in

favor of the Defendant.

b.    <u>Defendant Has Legitimate, Nondiscriminatory Reasons for the Decisions</u>.

In the event that the Court finds that Plaintiff has established her prima facie case, the burden of production shifts to the Defendant to articulate some legitimate, nondiscriminatory reason for the adverse employment action. <u>Farias v. Instructional Systems, Inc.</u>, 259 F.3d 91, 98 (2d Cir. 2001). "The defendant is not required to prove that the articulated reason actually motivated its actions." <u>Farias</u>, 259 F.3d at 98.

The Defendant articulates the following legitimate, nondiscriminatory reasons: With respect to the 1997 Lead Inspector position, Plaintiff never filed an application in response to the posting. Thus, under the Personnel Rules and Regulations, she could not be considered for the Lead Inspector position. With respect to the 1998 Lead Inspector position, Ms. Comstock, an employee of the City's Personnel Department, determined that Plaintiff's application failed to reflect the necessary educational and experience qualifications for the position. Therefore, under the City's Personnel Rules and Regulations (Rule II §4), Ms. Poma's application could not proceed further in the process.

c.    <u>Plaintiff Cannot Produce Evidence Sufficient to Support a Finding of Discrimination</u>.

"If the defendant bears its burden of production the presumption [of discrimination] drops out of the analysis . . . and the defendant 'will be entitled to summary judgment . . . unless the plaintiff can point to evidence that reasonably supports a finding of prohibited discrimination.'"

Farias, 259 F.3d at 98 (citations omitted). "Further, [i]f the plaintiff's evidence was barely sufficient to make out a prima facie case, it may not be sufficient to establish discrimination after the defendant has proffered a neutral rationale." Stern, 131 F.3d at 312 (citations omitted).

Evidence sufficient to establish the minimal prima facie case combined with evidence of falsity of the employer's proffered reason for the employment decision may not be sufficient to satisfy the plaintiff's burden. James v. New York Racing Ass'n., 233 F.3d 149, 155-57 (2d Cir. 2000). In other words, if Plaintiff can offer proof that Defendant's stated reasons for not promoting her were false, a genuine issue of material fact is not necessarily created. Indeed, proof of the falsity of a defendant's stated non-discriminatory reasons does not mean that the true reason was illegal discrimination based on sex. Thus, the Second Circuit "mandates a case-by-case approach, with a Court examining the entire record to determine whether the plaintiff could satisfy his 'ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff.'" Schnabel v. Abramson, 232 F.3d 83, 90 (2d Cir. 2001) (citations omitted). Thus, "the way to tell whether a plaintiff's case is sufficient to sustain a verdict is to analyze the particular evidence to determine whether it reasonably supports an inference of the facts plaintiff must prove—particularly discrimination."

17

James, 233 F.3d at 157.[5]  In analyzing that evidence, "a court is not to second-guess the defendant's judgment as long as it is not for a discriminatory reason." Cunliffe v. Sikorsky Aircraft Corp., 9 F. Supp. 2d 125, 132 (D. Conn. 1998).

In this case, Plaintiff can present no evidence to suggest that she was denied a promotional opportunity as a Lead Inspector on the basis of her race, gender, ethnicity or pregnancy or in retaliation for filing a complaint of discrimination.  In 1997, Plaintiff failed to apply for the Lead Inspector position.  In 1998, Plaintiff filed an application for the Lead Inspector position but the Personnel department (not the Health department) determined that her application failed to reflect, on its face, the minimum qualifications for the position.  Therefore, Plaintiff's application never progressed to the point where Plaintiff's training and experience would have been ranked, in comparison with qualified applicants, or to the point where the names of the top three candidates were submitted to the appointing authority or to the point where interviews for the position were conducted.  In short, the City's Health department never had the opportunity to illegally discriminate against Plaintiff with regard to the 1997 and 1998 Lead Inspector promotional opportunities.

---

[5] The Second Circuit has determined that the Supreme Court's opinion in Reeves v. Sanderson Plumbing Prod.s, Inc., 530 U.S. 133 (2000) does not overrule and, in fact, is in harmony with, Second Circuit precedent in this area, as set forth in Fisher v. Vassar College, 114 F.3d 1332 (2d Cir. 1997), cert. denied, 522 U.S. 1075 (1998).  James, 233 F.3d at 155-57; Schnabel, 232 F.3d at 89-91.

18

While Plaintiff may quibble with Ms. Comstock's determinations regarding what is reflected on the face of her application,[6] there is no evidence in the record to suggest that Ms. Comstock had any knowledge regarding Plaintiff or her pregnancy status. After all, they had not met. Likewise, there is no evidence in the record to suggest that Ms. Comstock's determinations with respect to the face of Plaintiff's application were influenced by anyone. In short, Plaintiff does not have any evidence, direct or circumstantial, that she was discriminated against on the basis of her race, ethnicity, sex or pregnancy or that she was retaliated against for filing a complaint of discrimination with respect to the Lead Inspector promotional opportunities. Therefore, Plaintiff cannot make out a prima facie case of either illegal discrimination or retaliation. Consequently, summary judgment should enter in favor of the Defendant.

---

[6] The question of whether Plaintiff's application, in fact, reflected the minimum qualifications for the position is immaterial to the resolution of this motion. Nonetheless, there is no question that Plaintiff's application failed to reflect the minimum qualifications for the position. The posting stated that the qualifications included graduation from high school, two years of college and two years of "responsible experience in the field of public health sanitation, involving public contact." Poma Tr. at Exhibit 12. A review of Plaintiff's application reveals that the application failed to reflect the number of credits earned towards a degree and Plaintiff failed to attach a transcript to her application. Thus, Plaintiff's application failed to demonstrate completion of two years of college course work. Further, the application reveals that Plaintiff served as a Senior Clerk Typist in the Health Department since 12/96. Work as a Senior Clerk Typist does not qualify as "responsible experience." Moreover, Plaintiff started her employment as a Senior Clerk Typist on December 30, 1996. Thus, by December 18, 1998 (the final day on which applications for the position were accepted), Plaintiff had not completed two full years of service in the Health Department. Moreover, even if one were to accept the dubious contention that Plaintiff's tagging along with Lead Inspectors on lead inspections constituted "responsible experience," Plaintiff claims that she did not start tagging along with the Lead Inspectors until February of 1997. Thus, Plaintiff had less than two years of experience tagging along with Lead Inspectors at the time she applied for the Lead Inspector position.

19

2.     Plaintiff Has Not Established an Actionable Hostile Work Environment Claim.

Defendant contends that Plaintiff has not pled a hostile work environment claim, based on either race or sex. See, Amended Complaint. However, in her deposition, Plaintiff testified that, while she is not asserting a hostile work environment claim based on sex, she is asserting a hostile work environment based on race. Poma Tr. at 74-77. However, Plaintiff cannot point to sufficient evidence to suggest that she experienced a hostile work environment.

The Supreme Court has explained that "in order to be actionable under the statute, a sexually objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." Faragher v. City of Boca Raton, 524 U.S. 775, 787 (1998); Williams v. County of Westchester, 171 F.3d 98, 100 (2d Cir. 1999) ("In order to recover on a claim of a racially hostile work environment in violation of Title VII, the plaintiff must establish that his workplace was permeated with instances of racially discriminatory conduct such as 'discriminatory intimidation, ridicule and insult [citation omitted] such that the 'environment would reasonably be perceived, and is perceived, as hostile or abusive.'"); Hanson v. Cytec Industries, 2002 U.S. Dist. LEXIS 6086 at *16 (D. Conn. March 8, 2002) (Plaintiff must show that "the conduct creating that atmosphere actually constituted discrimination because of race."). A hostile work environment exists when "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and

20

create an abusive working environment." Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993). In making this determination, courts are instructed to look at all of the circumstances, including the frequency of the alleged discriminatory conduct, its severity, whether it was physically threatening or humiliating, or a mere offensive utterance and whether it reasonably interferes with the employee's work performance. Faragher, 524 U.S. at 787-88; Harris, 510 U.S. at 23. "Simple teasing, offhand comments and isolated incidents" do not amount to discriminatory changes in the terms and conditions of employment. Faragher, 524 U.S. at 788. "Properly applied, [these standards] will filter out complaints attacking 'the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing.'" Id. In short, conduct must be extreme to amount to a change in the terms and conditions of employment. Id.

Plaintiff's alleged claim revolves around two instances in which she was spoken to regarding personal conversations. Amended Complaint at ¶¶24-25. With regard to the first conversation, Plaintiff alleges that her immediate supervisor, Kevin Hood, informed her that the City's Director of Health, Katherine McCormack, had mentioned to him that she had observed Plaintiff and a co-worker, Mathilde Bello, spending too much time talking about personal things. Amended Complaint at ¶24. With regard to the second conversation, Mr. Hood again approached Plaintiff while she was conversing with Ms. Bello and stated, "This is what Katherine was talking about." Amended Complaint at ¶25. Plaintiff believes that the reason that

21

she was spoken to was that the conversations occurred in Spanish. Amended Complaint at ¶¶24-25; Poma Tr. at 41-42. She also insists that she and Ms. Bello were discussing their work, as opposed to personal business, in Spanish. Poma Tr. at 32. However, Plaintiff was never formally disciplined as a result of her conversations with Ms. Bello. Poma Tr. at 44-45, 55.[7]

Plaintiff's allegations regarding these instances in which she was spoken to do not rise to the level of conduct required to support a claim of a hostile work environment. See e.g., Reed v. State of Connecticut, Dept. of Transportation, 161 F. Supp. 2d 73, 84-85 (D. Conn. 2001) (plaintiff who was not informed of civil rights workshops, even after requesting to be so informed, and was forced to work with outdated computer equipment did not adduce sufficient evidence that would lead a reasonable person to conclude that he was subjected to an abusive work environment). First, there is no evidence to suggest any hostility towards Plaintiff. Plaintiff was told to avoid excessive talking with co-workers during the workday.[8] Plaintiff was not formally disciplined as a result of these incidents. In short, these incidents barely qualify as unpleasant. Certainly, they do not amount to "discriminatory intimidation, ridicule and insult." See, Williams, 171 F.3d at 100. Second, there is insufficient evidence to suggest that Plaintiff was spoken to because of her race. Plaintiff's contention is that she was singled out because she

---

[7] As a result of this incident, Plaintiff filed an internal complaint with the City's Personnel Department. Dr. Godfred Ansah determined that there was no evidence of illegal discrimination involved in either of these incidents. Poma Tr. at 45-51 and Exhibits 2 & 3 thereto.

[8] Plaintiff acknowledges that it is a common practice in the American workplace for a supervisor to tell an employee to get back to work. Poma Tr. at 41.

22

and her co-worker were speaking Spanish. Poma Tr. at 42. However, according to Plaintiff's complaint, Plaintiff was advised that she spent too much time talking about personal things with her co-worker. Amended Complaint at ¶24. Moreover, because proficiency in the Spanish language is not confined to members of any particular race or national origin, the mere fact that a conversation occurred in the Spanish language is not evidence of race or national origin discrimination. Even viewing the evidence in the light most favorable to Plaintiff, there is no evidence of any racial animus. Finally, there is absolutely no evidence of racial epithets or comments.

   In addition, Plaintiff complains that she was denied a training opportunity. Amended Complaint at ¶¶27-31. According to her Amended Complaint (at ¶31), Plaintiff was told by the Deputy Director of Health that because a posting for the Lead Inspector position was open, "granting the plaintiff the opportunity to attend the training would not be fair to the other applicants because such would grant the Plaintiff an unfair advantage." In her deposition, Plaintiff testified that on the same day that Mr. Hood denied her request to attend this particular training (the "RMD-XFR Training"), he allowed her to attend a different lead abatement training session. Poma Tr. at 116-118. In Plaintiff's opinion, the lead abatement training that she attended was not any better than the RMD-XRF Training that she was not allowed to attend.

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing Defendant's Memorandum of Law in Support of Defendant's Motion for Summary Judgment was sent via first class U.S. mail on this the 4th day of November 2003 to:

> Francis A. Miniter, Esq.
> Christine E. Corriveau, Esq.
> Miniter & Associates
> 147 Charter Oak Avenue
> Hartford, CT  06106

_____
Joseph W. McQuade

11031

25