UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ELENA POMA F/K/A ELENA AQUINO | : | CIVIL ACTION NO: |
| Plaintiff, | : | 3:02CV543 (MRK) |
| v. | : | |
| | : | |
| CITY OF HARTFORD/ | : | |
| HEALTH DEPARTMENT | : | |
| Defendants. | : | NOVEMBER 4, 2003 |
| | : | |

## DEFENDANT'S LOCAL RULE 56(A)1 STATEMENT OF FACTS NOT IN DISPUTE

Pursuant to D. Conn. L. Civ. R. 56, the Defendant, City of Hartford/Health Department, respectfully submits this Statement of Facts Not in Dispute in support of its Motion for Summary Judgment. The following facts are not in dispute:

1.      Plaintiff, Elena Poma, formerly known as Elena Aquino, is an Hispanic female and an employee of the Defendant City of Hartford. From December 30, 1996 until March 12, 1999, Plaintiff was employed as a Senior Clerk Typist in the City of Hartford's Health Department. Transcript of the February 13, 2003 Deposition of Elena Poma ("Poma Tr.") (attached hereto as Exhibit A) at 18, 20, 22, 52; Exhibits 1-3 to the Affidavit of Katherine McCormack ("McCormack Aff't."), which is attached hereto as Exhibit B.

2.      The City of Hartford ("City") is a municipality in Connecticut.  During the relevant time period (1996-1999), the City maintained a health department.  However, the City's health department was not a legal entity.

3.      During all relevant times, Katherine McCormack was the City's Director of Health.  McCormack Aff't. (Exhibit B) at ¶2.

4.      Kevin Hood was Plaintiff's supervisor in the City's Health Department. McCormack Aff't. at ¶3.

City of Hartford Policies & Procedures

5.      At all relevant times, the City of Hartford operated under a civil service system. Under the Charter of the City of Hartford, as it existed at the time, "the civil service of the city shall be divided into the unclassified and classified service."  All positions within the City were deemed to be part of the classified service unless explicitly excluded therefrom by the Charter. Charter of the City of Hartford (hereafter "Charter") (attached hereto as Exhibit C) at Ch. XVI §7 (p. 44); see also, Conn. Gen. Stat. §7-407 et seq. (allowing for adoption of merit systems by municipalities).

6.      Within the classified service, the Personnel Director was charged, inter alia, with holding competitive examinations for all original appointments and, whenever practicable, for promotions in the classified service.  Such examinations were "restricted to persons reasonably

qualified by education and experience to perform the duties of the position." Charter, Ch. XVI §2(a).

7.      The Charter empowered the Personnel Director to "prepare and recommend to the personnel board rules to carry out" the provisions of the Charter regarding the Department of Personnel. Charter, Ch. XVI §2(e). The City of Hartford's Personnel Board was charged with considering, adopting or amending rules proposed by the Personnel Director. Charter, Ch. XVI §5(b).

8.      Under the Charter, the Personnel Rules had "the force and effect of law. Among other things they shall provide for the method of holding competitive examinations; the method of certifying eligibles for appointment . . . ." Charter, Ch. XVI §6.

9.      The Personnel Rules and Regulations for the City of Hartford provided that: "All examinations for positions in the classified service shall be published by posting announcements in the Personnel Office, on official bulletin boards, and in such other places as the Director of Personnel deems advisable . . . . The announcements shall specify . . . the qualifications desirable for the performance of the work of the class; the time, place and manner of making application; the closing date for receiving application; and other pertinent information." Personnel Rules & Regulations, Rule V §1 (p. 5-1) (attached as Exhibit 1 to Affidavit of Susan Comstock, which is attached hereto as Exhibit D); see also, Poma Tr. at 83-84 (Personnel Department does the posting).

3

10.     Applications filed in response to the posting of a job announcement were required to be made on the forms provided by the Director of Personnel.  Personnel Rules & Regulations, Rule V §2 (p. 5-1).

11.     The Personnel Rules & Regulations provided:  "The Director of Personnel shall reject any application which indicates on its face that the applicant does not possess the minimum qualifications required for the position or who fails to file by the announced closing date for receiving applications unless prior to such date an extension has been publicly announced."  Personnel Rules & Regulations, Rule V §3 (p. 5-1).

12.     Once an applicant's application was deemed to meet the minimum qualifications for the position, that applicant would be eligible for a competitive examination.  Personnel Rules & Regulations, Rule VI §1 (p. 6-1); see also, Poma Tr. at 84 (Personnel Department does the testing).

13.     After testing, the names of eligible applicants were listed on an employment list for the position based on their test scores.  Personnel Rules & Regulations, Rule VII §2 (p. 7-1).

14.     In filling one vacancy in the classified service, the Personnel Department certified the top three names on the relevant employment list to the department head (the Director of the relevant department within the City).  Personnel Rules & Regulations, Rule VIII §4 (p. 8-1).

15.     The department head (or appointing authority) was authorized to select from among the three certified names, after an interview and any investigation, in filling the vacancy

4

in the classified service.  Personnel Rules & Regulations, Rule VIII §5 (p. 8-2); <u>see also</u>, Poma

Tr. at 84 (usually the department head conducts the interview and makes the selection).

      16.    The Charter prohibits discrimination on the basis of race and national origin.

Charter, Ch. XVI §12 (p. 45).  The Personnel Rules & Regulations prohibit discrimination on the

basis of race, national origin and sex.  Personnel Rules & Regulations, Rule XIV §4 (p. 14-1).

<u>The 1997 Posting</u>

      17.    On or about December 4, 1997, the City of Hartford posted a promotional

opportunity for the position of Public Health Sanitarian Inspector.  Poma Tr. at 79-80 & Exhibit

7 thereto.

      18.    A Public Health Sanitarian Inspector is also known as a "Lead Inspector."  Poma

Tr. at 53; Affidavit of Susan Comstock ("Comstock Aff't.") (attached as Exhibit D) at ¶5.

      19.    This posting stated that applications for the position would be accepted until

Friday, December 19, 1997.  Poma Tr. at Exhibit 7.

      20.    Plaintiff never submitted an application in response to this posting.  Poma Tr. at

80.

      21.    Plaintiff contends that she was unable to submit an application in response to this

posting because she was on maternity leave and was not aware that the position had been posted.

Poma Tr. at 80-82.

5

22.     Plaintiff returned to work in February of 1998, after her maternity leave, and discovered that the Lead Inspector position had been filled.  Amended Complaint at ¶16.

The 1998 Posting

23.     On or about November 25, 1998, the City of Hartford posted a promotional opportunity for the Public Health Sanitarian Inspector (or Lead Inspector) position.  Poma Tr. at 128-130 & Exhibit 12 thereto; Comstock Aff't. (attached as Exhibit D) at ¶5.

24.     The posting stated that applications would be accepted until Friday, December 18, 1998 and that the qualifications included graduation from high school, two years of college and two years of "responsible experience in the field of public health sanitation, involving public contact."  Poma Tr. at Exhibit 12.

25.     Plaintiff filed a timely application in response to the posting.  Poma Tr. at 131-32 & Exhibit 13 thereto.

26.     Plaintiff's application did not show the number of credits that she had accumulated towards a college degree and she did not supplement her application by submitting a college transcript reflecting her progress towards a degree.  Poma Tr. at 132.

27.     Plaintiff's application indicated that she had experience since December of 1996 as a Senior Clerk Typist in the Health Department.  Poma Tr. at Exhibit 13 (p. 2).

28.     Although the application indicated that Plaintiff had been employed in the Health Department since December of 1996, Plaintiff, as of the deadline for applications (December 18,

6

1998), had not completed two full years of service in the Health Department, since she did not start work in the Health Department until December 30, 1996. See, Poma Tr. at Exhibit 13 (p. 2) & Exhibit 1 to the McCormack Aff't. (Exhibit B) (indicating Plaintiff's start date in the Health Department).

29.    Plaintiff contends that she accompanied the City's Lead Inspectors on lead inspections since February of 1997. Poma Tr. at 132-33 & Exhibit 4 thereto (at ¶¶6-7); Amended Complaint at ¶12.

30.    Plaintiff admits that she accompanied Lead Inspectors on lead inspections for less than two years. Poma Tr. at 133.

31.    On or about December 29, 1998, Plaintiff received a letter from Susan Comstock of the Personnel Department, indicating that Plaintiff's application could not be considered for the position because the application reflected neither the minimum educational requirements nor the minimum experience requirements as stated on the job announcement. Poma Tr. at 134-35 & Exhibit 14 thereto; Comstock Aff't. at ¶8 & Exhibit 2 thereto.

32.    Plaintiff admits that, prior to receiving this letter, she had never met Susan Comstock. Poma Tr. at 135. Likewise, Susan Comstock has no recollection of ever meeting Ms. Poma prior to reviewing her application. Comstock Aff't. at ¶9.

33.    Prior to reviewing Ms. Poma's application, Susan Comstock did not consult with anyone regarding such application. Comstock Aff't. at ¶10.

34.     Prior to notifying Ms. Poma that her application did not reflect the minimum qualifications for the position and that, consequently, such application could not be considered, Susan Comstock did not consult with anyone outside of the Personnel Department regarding her determinations. Comstock Aff't. at ¶12.

35.     At the time that she reviewed Ms. Poma's application, Susan Comstock had no knowledge as to whether or not Ms. Poma was pregnant. Comstock Aff't. at ¶11.

Plaintiff's Lay-Off

36.     Plaintiff was laid off from her job as a Senior Clerk Typist in the Health Department as of March 12, 1999 due to a reduction in federal funds and because Plaintiff was the least senior Senior Clerk Typist in the Health Department. February 23, 1999 Letter from Katherine McCormack to Plaintiff (attached as Exhibit 2 to the McCormack Aff't. [Exhibit B]); see also, March 19, 1999 Memo from Katherine McCormack to Plaintiff (attached as Exhibit 3 to the McCormack Aff't.).

The CHRO Complaint

37.     On February 18, 1999, Plaintiff filed her complaint with the Connecticut Commission on Human Rights and Opportunities ("CHRO"). Poma Tr. at 64 & Exhibit 4 thereto.

38.     Plaintiff did not obtain a Release of Jurisdiction from the CHRO.

8

<u>Plaintiff's Allegations Regarding Racial Harassment</u>

39.    Plaintiff is not claiming that she was sexually harassed.  Poma Tr. at 75-77.

40.    Katherine McCormack spoke to Kevin Hood regarding Plaintiff not being at her desk and socializing for an extended period of time.  Transcript of the June 19, 2003 Deposition of Katherine McCormack ("McCormack Tr.") (relevant portions of which are attached hereto as Exhibit E) at 30-31, 48.

41.    Mr. Hood communicated these concerns to Plaintiff.  Poma Tr. at 30-31; Amended Complaint at ¶24.

42.    According to Plaintiff, Ms. McCormack overheard Plaintiff speaking, in Spanish, with a co-worker, Mathilde Bello, but said nothing directly to Plaintiff.  Poma Tr. at 30-32, 35-36.

43.    At a later time, Plaintiff was again conversing with Ms. Bello in Spanish when she was approached by Mr. Hood who told her that this was what Ms. McCormack was talking about.  Poma Tr. at 31-32, 35-36; Amended Complaint at ¶25.

44.    On the same day that Mr. Hood spoke to Plaintiff, Plaintiff and Ms. Bello met with Mr. Hood to express concern over Mr. Hood's comments.  Poma Tr. at 36-37.

45.    After her meeting with Mr. Hood, Plaintiff went to the City's Personnel Department and filed a complaint against Mr. Hood.  Poma Tr. at 38, 46 & Exhibit 2 thereto; Amended Complaint at ¶26.

9

46.    Plaintiff claims to have never received the results of the Personnel Department's investigation. Poma Tr. at 47-48 & Exhibit 3 thereto. Additionally, Plaintiff claims that she left one voice mail message for Godfred Ansah, Personnel Administrator/EEO Officer, and cannot recall undertaking any other efforts to follow up on her complaint. Poma Tr. at 48-51.

47.    Plaintiff was never disciplined as a result of these two conversations with Ms. Bello. Poma Tr. at 44-45, 54-55; McCormack Aff't. at ¶4.

48.    On or around October 27, 1998, Owen Humphries, who was Plaintiff's superior, sent Plaintiff a note requesting her to call to attend a training session on the lead inspection equipment used by Hartford Lead Inspectors ("RMD-XRF Training"). Poma Tr. at 110-111 & Exhibit 10 thereto.

49.    Plaintiff submitted a request to attend the RMD-XRF Training to her supervisor, Kevin Hood, and Mr. Hood denied such request, noting that such training did not fall within her job description. Poma Tr. at 112-114 & Exhibit 11 thereto.

50.    According to Plaintiff, on the same day that her request for RMD-XRF Training was denied, Mr. Hood granted her permission to attend a lead abatement training. Poma Tr. at 116-117.

51.    Plaintiff attended the lead abatement training. Poma Tr. at 117.

52.    In Plaintiff's opinion, the RMD-XRF Training was not better than the lead abatement training. Poma Tr. at 118.

10

53.    According to Plaintiff, the then-Deputy Director of Health for the City informed Plaintiff that she could not authorize the RMD-XRF Training because the Lead Inspector position was open and granting Plaintiff the opportunity to attend the RMD-XRF Training would provide Plaintiff with an unfair advantage over other applicants.  Amended Complaint at ¶31.

54.    Plaintiff never filed a grievance over the denial of the RMD-XRF Training, nor did she file any other complaint.  Poma Tr. at 124, 128.

55.    Plaintiff has never filed a grievance while employed by the City.  Poma Tr. at 124.

DEFENDANT,
CITY OF HARTFORD/HEALTH DEPARTMENT

By: _Joseph W. McQuade_

Joseph W. McQuade
Federal Bar No. ct12121
jmcquade@kemlaw.com
Kainen, Escalera & McHale, P.C.
21 Oak Street, Suite 601
Hartford, CT  06103
Tel.: (860) 493-0870
Fax: (860) 493-0871
Its Attorneys

11

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing Defendant's Motion for Summary Judgment was sent via first class U.S. mail on this the 4th day of November 2003 to:

> Francis A. Miniter, Esq.
> Christine E. Corriveau, Esq.
> Miniter & Associates
> 147 Charter Oak Avenue
> Hartford, CT  06106

_Joseph W. McQuade_
Joseph W. McQuade

11181

12