Chapter XVI of this charter, shall appoint and remove all other members of the department (Sp. Laws 1947, Act No. 30, Ch. XII, § 1; Sp. Laws 1965, Act No. 156, § 3; Ord. No. 28-67, 11-7-67)

## Sec. 2. Duties.

It shall be the duty of the department of engineering to design, prepare specifications and estimates for and supervise the construction of all buildings, structures or works of every sort when and as required by the council, the city manager or any department or agency of the city, provided the city manager, with the approval of the council, may employ consulting architects in connection with the design and construction of any building. It shall make all surveys, maps, plans and drawings incident to the above or when required by the assessor, the commission on the city plan, the zoning board of appeals or other departments. The city engineer shall have custody of all maps of the city not specifically entrusted to other officials under the general statutes. He shall furnish a copy of any map, drawing or memorandum in his possession which may be required by the corporation counsel in the preparation of any opinion or the trial of any case.
(Sp. Laws 1947, Act No. 30, Ch. XII, § 2; Ord. No. 28-67, 11-7-67)

## CHAPTER XIV. HEALTH AND SOCIAL SERVICES*

### Sec. 1. Director of health.

There shall be a department of health, the head of which shall be the director of health. Subject to the provisions of Chapter XVI of this charter, he shall appoint and remove all officers and employees of the department. He shall be responsible for the efficiency, discipline and good conduct of the department. He shall be a physician and a graduate of a recognized school of public health, with at least five (5) years' experience in public health work. At the time of his appointment he need not be a resident of the city or the

---

*Editor's note—Formerly Chapter XIII. Renumbered by Act No. 641, § 6, Special Laws 1957, and retained as Chapter XIV by the Revised Charter 1967, Ord. No. 28-67, with a change in title from Health and Welfare to that set out above.

state. He shall have all the powers and duties conferred or imposed by the general statutes on directors of health of towns. He shall have power, after consultation with the public health council, to make rules and regulations for the preservation of the public health not inconsistent with the general statutes or the ordinances of the city. He shall be charged with the enforcement of all laws, ordinances, rules and regulations concerning the public health. He shall have power to declare any land or building in the city to be unfit for human habitation and issue orders concerning the occupancy of such land or building. If the owner thereof shall fail to comply properly with any such order, the director of health shall have power to proceed forthwith to cause to be done all work required to be done in compliance with the order and, if necessary, to demolish any structure or structures covered by such order, and the city shall have a lien on such building and land for the cost of such work or demolition, which lien, if for work done rather than for demolition, shall take precedence over any other lien on the premises recorded after the effective date of this act, including mortgage liens but excepting liens for real estate taxes, provided that the person entitled to such other lien shall have been given written notice of the city's intention to undertake said work at least ten (10) days prior to the commencement thereof, and the city may recover the cost of the work or demolition from the owner by appropriate proceedings on complaint of the director of health. The director of health shall have power to order the occupants of any land or building declared unfit for human habitation to vacate the same forthwith and the department of police when called upon by the director of health shall enforce such order. The director of health shall be, ex officio, the registrar of vital statistics for the Town of Hartford. The director of health, upon the advice of the public health council and with the approval of the city manager and the city council, may enter into agreements with the proper authorities of other cities and towns or health agencies to furnish or procure necessary health or medical services.
(Sp. Laws 1947, Act No. 30, Ch. XIII, § 1; Sp. Laws 1957, Act No. 321; Sp. Laws 1967, Act No. 436, § 1; Ord. No. 28-67, 11-7-67)

## Sec. 2. Public health council.

The director of health shall appoint, by and with the approval of the council, a public health council consisting of not more than six (6) persons, not fewer than two (2) of whom shall be physicians in the active practice of medicine in the City of Hartford, selected from a list of twice that number submitted by the Hartford County Medical Association. The public health council shall advise the director of health in the making of rules and regulations and in respect to any matters pertaining to his duties.
(Sp. Laws 1947, Act No. 30, Ch. XIII, § 2; Sp. Laws 1957, Act No. 239; Ord. No. 28-67, 11-7-67)

## Sec. 3. Department of social services.

There shall be a department of social services which shall consist of the division of social services, and the division of hospitals and institutions. The director of social services, who shall be a person skilled and experienced in welfare administration, shall be the head of the department of social services. He shall be responsible for the efficiency, discipline and good conduct of the department, and, subject to the provisions of Chapter XVI of this charter, shall appoint and remove all other officers and employees of the department, provided, in the case of employees of the division of hospitals and institutions, he shall do so after consultation with the head of that division.
(Sp. Laws 1947, Act No. 30, Ch. XIII, § 3; Ord. No. 28-67, 11-7-67)

## Sec. 4. Division of social services.

The division of social services shall consist of the director of social services and such other officers and employees as may be prescribed by ordinance. Except as otherwise provided in this charter, the director of social services as head of the division of social services shall have all the powers and duties relating to the poor and defective and dependent persons which now are or may hereafter be vested by law in the selectmen of towns. He shall be in charge of the administration of outdoor or general relief and of all other social service activities of the city except those assigned by this charter to the division of hospitals and institutions. He shall cause to be made all social

service investigations of patients in the municipal hospitals and institutions to determine their eligibility for free care therein and for other purposes. The director of social services shall have power to make all rules and regulations relating to the administration of the division not inconsistent with the general statutes and ordinances of the city. The director of social services, with the approval of the city manager and council, may enter into agreements with the proper authorities of other cities and towns or health agencies to furnish or procure the necessary medical or welfare services. He shall have such other powers and duties as may be provided by the general statutes or by ordinance.
(Sp. Laws 1947, Act No. 30, Ch. XIII, § 4; Sp. Laws 1957, Act No. 320; Ord. No. 28-67, 11-7-67)

## Sec. 5. Division of hospitals and institutions.

The division of hospitals and institutions shall consist of the superintendent of hospitals and institutions and of such other officers and employees as may be prescribed by ordinance. The superintendent of hospitals and institutions shall be a graduate of a recognized medical school or shall have completed a post-graduate course in hospital administration and shall have had at least three (3) years of successful supervisory experience in an accredited hospital. Under the supervision of the director of welfare he shall manage and control the municipal hospital, municipal isolation hospital, municipal home and any other like institutions now or hereafter established by the city.
(Sp. Laws 1947, Act No. 30, Ch. XIII, § 5; Ord. No. 28-67, 11-7-67)

# CHAPTER XV. DEPARTMENT OF PARKS AND RECREATION*

## Sec. 1. Department of parks and recreation.

There shall be a department of parks and recreation which shall consist of the director of parks and recreation and such other officers and em-

*Editor's note—Formerly Chapter XIV. Renumbered by Act No. 641, § 6, Special Laws 1957 and retained as Chapter XV without change by the Revised Charter 1967, Ord. No. 28-67.

ployees organized into such divisions and bureaus as may be prescribed by ordinance.
(Sp. Laws 1947, Act No. 30, Ch. XIV, § 1; Ord. No. 28-67, 11-7-67)

## Sec. 2. Director of parks and recreation.

The director of parks and recreation shall be the head of the department of parks and recreation. Subject to the provisions of Chapter XVI of this charter he shall appoint and remove all officers and employees of the department. He shall be responsible for the efficiency, discipline and good conduct of the department and for the care and custody of all property of the city used by the department. He shall have immediate supervision and management of all public grounds, parks, playfields and playgrounds of the city, both within and without its boundaries, except those under the jurisdiction of the department of education; all city cemeteries; all boulevards connecting parks; all buildings and other structures, recreational facilities, museums, zoological and other gardens, collections, observatories, monuments, statues, fountains, rest rooms, restaurants and refreshment stands situated on lands under his jurisdiction; and all concerts, entertainments and recreational activities carried on in the same; provided, on the recommendation of the city manager, the council may transfer the construction, reconstruction and maintenance of streets, boulevards, parkways, drives or walks under the jurisdiction of the department of parks and recreation from that department to the department of public works, and the care of street trees, shrubs and vines from the department of public works to the department of parks and recreation; and provided further the direction and control of any or all recreational activities may in like manner, with the approval of the board of education, be transferred to the board of education.
(Sp. Laws 1947, Act No. 30, Ch. XIV, § 2; Ord. No. 28-67, 11-7-67)

## Sec. 3. Rules and regulations.

On recommendation of the director of parks and recreation the council shall have power by ordinance to adopt all needful rules and regulations relating to the use of public grounds, parks, playfields, playgrounds and cemeteries, whether within or without the city, and for the preservation of orders, safety and decency therein. For the purpose of enforcing such rules and regulations all such public grounds, parks, playfields, playgrounds and cemeteries shall be under the police jurisdiction of the city. Any member of the police force of the city, or park employee appointed as a special policeman, shall have power to arrest without warrant in any such public grounds, parks, playfields, playgrounds and cemeteries any person who has violated any such rule or regulation or committed any offense therein, and the city and police court of the city shall have jurisdiction in all such cases.
(Sp. Laws 1947, Act No. 30, Ch. XIV, § 3; Ord. No. 28-67, 11-7-67)

**Editor's note**—City and police court functions were transferred to the circuit court, then to the common pleas court in 1974, and to the superior court in 1978.

## Sec. 4. Exemption from taxation.

All real and personal estate of the city used for park purposes within the limits of any other town shall be exempt from taxation.
(Sp. Laws 1947, Act No. 30, Ch. XIV, § 4; Ord. No. 28-67, 11-7-67)

# CHAPTER XVI. DEPARTMENT OF PERSONNEL*

## Sec. 1. Department of personnel.

There shall be a department of personnel the head of which shall be the director of personnel. He shall be a member of the classified service and shall be selected on the basis of merit and fitness after an open competitive examination as provided in section 4 of this chapter.
(Sp. Laws 1947, Act No. 30, Ch. XV, § 1; Ord. No. 28-67, 11-7-67)

## Sec. 2. Director of personnel, powers and duties.

The director of personnel shall have the following powers and duties:

(a) To hold competitive examinations for all original appointments and, whenever de-

*Editor's note—Formerly Chapter XV. Renumbered by Act No. 641, Special Laws 1957, and retained as Chapter XVI without change by the Revised Charter 1967, Ord. No. 28-67.

termined to be practicable in accordance with the provisions of this chapter, for promotions in the classified service; any such examinations shall be restricted to persons reasonably qualified by education and experience to perform the duties of the position;

(b) To maintain eligible lists based on such examinations for each class of position in the classified service and whenever a vacancy is to be filled to certify to the appointing officer the names of the three (3) persons standing highest on the eligible list applicable to the position concerned, unless there are fewer than three (3) persons on such eligible list, in which case he may certify the names of all persons on such list; or include them in a new list resulting from a new examination; and no appointment shall be made except from such list;

(c) To authorize in writing temporary appointments to vacancies in positions for which there is no eligible list, provided no such temporary appointment shall be for a longer period than three (3) months and shall not be subject to renewal;

(d) To give wide publicity through appropriate channels in each case to all announcements of competitive examinations;

(e) To prepare and recommend to the personnel board rules to carry out the provisions of this chapter;

(f) To maintain classification and pay plans based on the duties, authority and responsibility of positions in the city's service;

(g) To maintain a roster of all persons in the city's service, in which there shall be set forth as to each officer and employee:

(1) The class title of the position held,
(2) The salary or pay,
(3) Any changes in class title, pay or status, and
(4) Such other data as may be deemed desirable or useful to produce significant facts pertaining to personnel administration;

(h) To certify all payrolls for persons in the classified service. No payment for personal service to any person in the classified service of the city shall be made unless the payroll voucher bears the certification of the personnel director or his authorized agent that the persons mentioned therein have been appointed and employed in accordance with the provisions of this chapter;

(i) To assist in developing programs of training and education for persons in the municipal service;

(j) To investigate periodically the operation and effect of the personnel provisions of this charter and the rules promulgated thereunder and report annually his findings and recommendations to the city manager;

(k) To appoint and remove, subject to the provisions of this chapter, all employees of the department.

(Sp. Laws 1947, Act No. 30, Ch. XV, § 2; Sp. Laws 1957, Act No. 222; Ord. No. 28-67, 11-7-67)

## Sec. 3. Personnel board.

There shall be a personnel board consisting of two (2) electors of the city, appointed in accordance with the provisions of Chapter III hereof, and a third member who shall be that member of the classified service who shall have received the highest number of votes at an election to be held at a time and place at least one (1) month before the first Tuesday of December following the effective date of this section, to be determined by the city manager. He shall be elected to fill the position now held by the employee member of the board when that position shall become vacant. In the event a vacancy shall occur in this position, it shall be filled by a similar election, to fill the unexpired portion of the term. Vacancies in either of the other two (2) offices shall be filled as hereinabove set forth for the unexpired portion of the term. The two (2) elector members of the board shall be known to be in sympathy with the merit principle as applied to the civil service, shall neither hold nor be a candidate for any other public office or position, and shall not be a member of any local, state or national committee of a political party or an officer in any partisan club or

organization. The term of office shall be three (3) years. The director of personnel shall designate an employee of the department to act as secretary of the board, who shall keep records of all business and official actions. The members of the board shall serve without pay.
(Sp. Laws 1947, Act No. 30, Ch. XV, § 3; Ord. No. 21-65, 11-2-65; Ord. No. 28-67, 11-7-67)

### Sec. 4. Appointment of director.

Immediately after the first members of the personnel board have been appointed and qualified, and thereafter whenever a vacancy exists in the office of director of personnel, the personnel board shall appoint an examining committee of three (3) persons to examine the qualifications of all persons applying for appointment to the office of director of personnel. At least two (2) members of the examining committee shall be public personnel administrators or public personnel specialists of recognized standing, who need not be residents of the City of Hartford. As soon as practicable after its appointment the examining committee shall hold open competitive examinations for applicants for the position of director of personnel who need not at the time of taking the examination be residents of the city or of the State of Connecticut, and shall certify to the city manager the names of the three (3) persons rated highest in the competitive tests and found by the committee to possess the necessary qualifications for said position. The city manager shall then appoint one (1) of the persons so certified to be the director of personnel. Compensation of the members of the examining committee and payment of their necessary expenses shall be authorized by the personnel board.
(Sp. Laws 1947, Act No. 30, Ch. XV, § 4; Ord. No. 28-67, 11-7-67)

### Sec. 5. Powers and duties of personnel board.

It shall be the duty of the personnel board:

(a) To hear appeals from any action pertaining to classification, reclassification and allocation of positions and from any disciplinary action suspending, reducing or removing any officer or employee in the classified service, as hereinafter provided, and to report

in writing to the officer taking the action appealed from its findings and decisions therein;

(b) To consider the rules recommended by the director of personnel and to adopt or amend the same, but only after public hearing thereon, of which at least five (5) days' notice shall be given by advertisement once in a daily newspaper of general circulation in the city;

(c) To adopt or amend the classification plan recommended by the director of personnel;

(d) To investigate any or all matters relating to conditions of employment in the city and to make at least annually a report of its findings to the council;

(e) The council shall have the power to approve or disapprove the rules adopted by the personnel board, and, if not approved or disapproved by the council within two (2) regular meetings after their adoption, they shall be deemed approved.
(Sp. Laws 1947, Act No. 30, Ch. XV, § 5; Sp. Laws 1955, Act No. 112; Ord. No. 28-67, 11-7-67)

**Editor's note**—When the provisions of §§ 8 and 9, Ch. XVI were adopted referring to the classification plan and the pay plan, both of which provide for the recommendation of changes by the city manager, § 5(c), Ch. XVI was not changed. However, said subsection (c) has probably been superseded.

### Sec. 6. Rules.

The rules adopted in accordance with the provisions of this chapter shall have the force and effect of law. Among other things they shall provide for the method of holding competitive examinations; the method of certifying eligibles for appointment; the establishment, maintenance, consolidation and cancellation of eligible lists; administration of the classification plan and the pay plan and methods of promotion and the application of service ratings thereto; probationary periods of employment; transfer of employees within the classification plan; hours of work, vacations, sick leaves and other leaves of absence; overtime pay; the order and manner in which layoffs shall be effected, and suspensions and dismissals and appeals therefrom; and such other rules as may be necessary to provide an adequate and system-

atic procedure for handling the personnel affairs of the city.
(Sp. Laws 1947, Act No. 30, Ch. XV, § 6; Ord. No. 28-67, 11-7-67)

### Sec. 7. Classified and unclassified service.

The civil service of the city shall be divided into the unclassified and the classified service. The unclassified service shall comprise:

(a) Officers elected by the people and persons appointed to fill vacancies in elective offices;

(b) Members of boards and commissions and other officers appointed by the council;

(c) The heads of departments appointed by the city manager, except the city assessor and director of personnel and not more than one (1) confidential secretary in each department;

(d) Employees of the board of education;

(e) The executive secretary to the city manager;

(f) The corporation counsel, assistant corporation counsels and special counsel appointed by the corporation counsel;

(g) The assistant city treasurer;

(h) The judges, prosecutors, clerks and messengers of the city and police court;

(i) The medical and dental staff of city hospitals and institutions, and the medical and dental staff in the department of health;

(j) Patient or inmate help in city charitable, penal and correctional institutions;

(k) Persons employed in a professional or scientific capacity to make or conduct a temporary and special inquiry, investigation or examination;

(l) Supernumeraries in the police and substitutes in the fire departments in the employ of the city at the effective date of this charter.

The classified service shall comprise all positions not specifically included by this section in the unclassified service and all appointments and promotions therein shall be made according to merit and fitness to be ascertained so far as practicable by competitive examinations. No member of the classified service shall be suspended for more than thirty (30) days, reduced in rank or pay, or removed except after notice in writing of the grounds of the proposed disciplinary and an opportunity to be heard thereon by the personnel board at a hearing which may be public at his option and at which he may be represented by counsel, to be held not less than five (5) nor more than ten (10) days after the service of such notice at a time to be specified therein. The decision of the personnel board either sustaining, reversing or modifying the disciplinary action appealed from shall be final.
(Sp. Laws 1947, Act No. 30, Ch. XV, § 7; Sp. Laws 1957, Act No. 238; Ord. No. 28-67, 11-7-67)

**Editor's note**—City and police court functions were transferred to the circuit court, then to the common pleas court in 1974, and then to the superior court in 1978.

### Sec. 8. Classification plan.

The director of personnel shall prepare and maintain an up-to-date record of the authority, duties and responsibilities of each position in the classified service, provided the classification of positions according to similarity of authority, duties and responsibilities, hitherto adopted by the board of finance and in force at the effective date of this charter, shall remain in effect until altered in accordance with the provisions of this chapter. Changes in the classification plan shall be recommended by the city manager from time to time and shall become effective when approved by the personnel board. The class titles set forth in the classification plan shall be used to designate such positions in all official records, documents, vouchers and communications, and no person shall be appointed to or employed in a position in the classified service under any class title which has not been recommended by the city manager and approved by the board as appropriate to the duties to be performed. The classification plan shall include the normal lines of promotion from one (1) class to another. Employees affected by the allocation or reallocation of a position to a class or by any changes in the classification plan shall be afforded an opportunity to be heard thereon by

the personnel board after filing with the director
a written request for such hearing.
(Sp. Laws 1947, Act No. 30, Ch. XV, § 8; Res. of
11-5-63; Ord. No. 28-67, 11-7-67)

### Sec. 9. Pay plan.

There shall be a pay plan consisting of a salary
range for each class in the classification plan. Each
such range shall be determined with due regard
to the salary ranges for other classes and to the
relative difficulty and responsibility of character-
istics duties of positions in the class, the min-
imum qualifications required, the prevailing rate
paid for similar employment outside the city ser-
vice, and any other factors that may properly be
considered to have a bearing upon the fairness or
adequacy of the range, provided that the pay plan
in force at the effective date of this charter shall
remain in effect until amended in accordance with
the provisions of this chapter. The city manager
shall, from time to time, recommend to the council
changes in the pay plan which shall take effect
when adopted by ordinance and no amendment
shall be made in the pay plan by the council un-
less the same shall have been first referred to the
city manager for his opinion.
(Sp. Laws 1947, Act No. 30, Ch. XV, § 9; Res. of
11-5-63; Ord. No. 28-67, 11-7-67)

### Sec. 10. Promotions.

Vacancies in higher positions in the classified
service of the city shall, as far as practicable, be
filled by promotion from lower classes upon the
basis of competitive tests, including a consider-
ation of service ratings, provided, in case the per-
sonnel board on the recommendation of the di-
rector of personnel so direct, such positions shall
be filled by competitive tests open not only to mem-
bers of the classified service but also to all other
qualified persons.
(Sp. Laws 1947, Act No. 30, Ch. XV, § 10; Ord. No.
28-67, 11-7-67)

### Sec. 11. Present employees to retain posi-
### tions.

All persons holding permanent positions in the
service of the city, including employees of any
board or commission, at the effective date of this

charter, whose positions are included in the clas-
sified service by the terms of this chapter, shall
immediately become members of the classified ser-
vice and retain such positions until promoted,
transferred, reduced or removed in accordance
with the provisions of this chapter. All other em-
ployees of the city at the effective date of this
charter, whose positions are not abolished thereby,
shall retain such positions pending action by the
council or the appropriate officer charged by this
charter with powers of appointment and removal.
The supernumeraries employed in the police de-
partment and the substitutes employed in the fire
department at the effective date of this charter
shall continue to enjoy priority in appointments
as regular members of their respective depart-
ments without competitive examination, provided
they satisfy such minimum qualifications as may
be established for membership in such depart-
ments.
(Sp. Laws 1947, Act No. 30, Ch. XV, § 11; Ord. No.
28-67, 11-7-67)

### Sec. 12. Prohibited practices.

No person in the classified service of the city or
seeking admission thereto shall be appointed, pro-
moted, reduced, removed or in any way favored or
discriminated against because of his race, his na-
tional origin or his political or religious opinions
or affiliations. No person shall willfully or cor-
ruptly make any false statement, certificate, mark,
rating or report in regard to any test, certifica-
tion, promotion, reduction, removal or appoint-
ment held or made under the provisions of this
chapter, or in any manner commit or attempt to
commit any fraud preventing the impartial exe-
cution thereof or of the rules and regulations made
in accordance therewith. No officer or employee
in the classified service of the city shall continue
in such position after becoming a candidate for
election to any public office. No person shall ei-
ther directly or indirectly, pay, render or give any
money, service or other valuable thing to any
person for or on account of or in connection with
any test, appointment, promotion, reduction or re-
moval in which he is concerned. No person shall,
orally, by letter, or otherwise, solicit or be in any
manner concerned in soliciting any assessment,
subscription or contribution for any political party

or political purpose whatever from any person holding a position in the classified service of the city shall make any contribution to the campaign funds of any political party or any candidate for public office or take any part in the management affairs or campaign of any political party further than in the exercise of his rights as a citizen to express his opinion and to cast his vote. Any person who by himself or with others willfully or corruptly violates any of the provisions of this section shall be fined not more than five hundred dollars ($500.00) or imprisoned not more than six (6) months or both. Any person who is convicted under this section shall for a period of five (5) years be ineligible for appointment to or employment in a position in the city service and shall, if he be an officer or employee of the city, immediately forfeit the office or position he holds.
(Sp. Laws 1947, Act No. 30, Ch. XV, § 12; Ord. No. 28-67, 11-7-67)

### Sec. 13. Powers of personnel board to conduct investigations.

For the purpose of the administration of the provisions of this chapter each member of the personnel board shall have the power to administer oaths and the board may, by majority vote, compel the attendance of witnesses and the production of books and papers. Any person disobeying the subpoena of the personnel board shall be fined not more than one hundred dollars ($100.00) or imprisoned not more than thirty (30) days or both.
(Sp. Laws 1947, Act No. 30, Ch. XV, § 13; Ord. No. 28-67, 11-7-67)

### Sec. 14. Veterans' preference.

(a) Any person who has served in time of war in the army, navy, maring corps, coast guard or air force of the United States and has been honorably discharged therefrom shall be entitled to have added to his rating in any examination for initial employment in the classified service ten (10) points on a scale of one hundred (100) if he is eligible for disability compensation or pension from the United States through the veterans' administration, or five (5) points on a scale of one hundred (100) if he is not so eligible, provided he is within the age limit specified for appointment to the position or class of position for which the examina-

tion is held, physically capable of performing the duties of such position and attains in the examination without such added points the minimum rating prescribed for passage of such examination.

(b) Any employee in the classified service whose employment has been interrupted in time of war in the army, navy, marine corps, coast guard or air force of the United States and has been honorably discharged therefrom shall be entitled one (1) time to have added to his rating in any examination held under the provisions of this chapter ten (10) points on a scale of one hundred (100) if he is eligible for disability compensation or position from the United States through the veterans' administration, or five (5) points on a scale of one hundred (100) if he is not so eligible, provided he is within the age limit specified for appointment to the position or class of position for which the examination is held, physically capable of performing the duties of such position and attains in the examination without such added points the minimum rating prescribed for passage of such examination.
(Sp. Laws 1947, Act No. 30, Ch. XV, § 14; Ord. No. 28-67, 11-7-67)

## CHAPTER XVII. PENSIONS*

### Sec. 1. Retirement allowances for present city employees.

The rights of all persons in the service of the city actually receiving or entitled to receive, prior to the effective date of this act, pensions or retirement allowances under the retirement system for city employees, the police benefit fund or the firemen's relief fund, as provided in sections 233, 234 and 235 of "An Act Revising the Charter of the City of Hartford," approved June 24, 1941, as amended, are expressly validated and the city shall continue to pay such pensions or allowances in accordance with the respective provisions of said sections. All persons in the service of the city prior

*Editor's note—Formerly Chapter XVI. Renumbered by Act No. 641, § 6, Special Laws 1957, and retained as Chapter XVI by Revised Charter 1967, Ord. No. 28-67.

Cross reference—See "Pensions" in the Appendix to Charter.

CHARTER

to the effective date of this Charter who were actually contributing to the retirement system for city employees, the police benefit fund or the firemen's relief fund, shall, unless they voluntarily withdraw from the same, continue to be members thereof, and the provisions of said sections 233, 234 and 235, as amended, shall remain in full force and effect for their benefit, but said sections shall not be applicable to any person entering the service of the city subsequent to the effective date of this Charter.

(Sp. Laws 1947, Act No. 30, Ch. XVI, § 1; Ord. No. 28-67, 11-7-67)

## Sec. 2. Pension commission.

There shall be a pension commission of three (3) members none of whom shall hold any other office in the city government and one (1) of whom shall be a fellow or associate of either the Actuarial Society of America or the American Institute of Actuaries, appointed by the city manager, one (1) each year for a term of three (3) years commencing on the first Monday of February. Vacancies shall be filled by the city manager for the unexpired portion of the term. The city treasurer shall act as secretary of the commission and the personnel director shall attend all meetings of the commission but neither shall have a vote. The commission shall continue to administer the retirement system for city employees as provided in section 233 of "An Act Revising the Charter of the City of Hartford," approved June 24, 1941, as amended, and shall succeed to all the powers and duties of the board of police commissioners as trustees of the police benefit fund and of the board of fire commissioners as members of the board of trustees of the firemen's relief fund. The commission shall administer the municipal employees' retirement fund hereinafter established. In addition to the three (3) voting members, there shall be one (1) nonvoting member of the commission elected by members of the municipal employees' retirement fund.

(Sp. Laws 1947, Act No. 30, Ch. XVI, § 2; Ord. No. 28-67, 11-7-67)

## Sec. 3. Municipal employees' retirement fund.

There shall be a municipal employees' retirement fund.

(a) (i) *Membership.* All persons who are members of the municipal employees' retire-

ment fund on July 1, 1968, all persons entering the classified service of the city subsequent to said July 1, 1968, as full-time permanent employees, all employees of the board of education, except teachers, and (subject to paragraph (y) below) those other unclassified employees of the city who so elect, except teachers, shall be members of the municipal employees' retirement fund. Any other employee of the city, except a teacher, who is a member of the retirement system for city employees, the police benefit fund or the firemen's relief fund may become a member of such fund upon application and withdrawal from the retirement system for city employees, the police benefit fund or the firemen's relief fund, as the case may be, upon such conditions as to the payment of arrears of contributions as the pension commission may require.

(ii) *Definitions.* Except as otherwise provided by or required under any applicable collective bargaining agreement, as used in Section 3(b) of this Chapter, the following terms shall have the meanings ascribed thereto below, unless, and then only to the extent, a different meaning is specifically provided with respect to any such terms within the context of said section:

(1) "Nonbargaining unit employee" shall mean and include all nonbargaining unit general government employees of the city as well as all nonbargaining unit employees of the Hartford Public Library;

(2) "Nonbargaining unit city employee" and "nonbargaining unit employee of the city" shall mean and include only those nonbargaining unit general government employees of the city;

(3) "General government employee" shall mean only those employees of the city (including the Civic Center) who are not (a) a sworn police officers of firefighters, (b) Board of Education employees, or (c) Hartford Public Library employees;

(4) A member's "final average pay" shall be based upon his or her gross earn-

ings only to the extent that the provisions of this Chapter specifically provide for his or her final average pay to be calculated in that manner.

(5) (A) Commencing August 1, 1993, a member's "gross earnings" with respect to any year of service shall mean and include all amounts payable by the city directly to such member for services rendered by such member to the city (including, but not limited to, any and all of its agencies, commissions, boards, offices and departments) within such time period which amounts shall include, but not necessarily be limited to, such member's basic salary, payments for or in lieu of overtime, longevity pay, and retroactive pay increases, as and to the extent each is attributable to such services, but, except as provided in subsection (B) below, shall not include either any amounts paid for services rendered in some other time period or any payments made to a member upon and by reason of his or her termination of employment (including, but not limited to any and all severance payments and lump sum payments for accrued vacation and sick time).

(B) Commencing August 1, 1993, any member whose final average pay is based upon his or her "gross earnings" over a stated period of time shall have his or her "gross earnings" adjusted to account for any lump sum payments made to such member for accrued vacation and sick time upon his or her termination of employment by, and only by, adjusting such member's final average pay period such that the last day of that period corresponds to what such member's last day of work would have been had such member continued to work be-

yond his or her actual last day of work for that period of time equal to his or her creditable accrued vacation and sick time; providing however, that nothing herein shall be construed to permit or require the adjustment of the length of time included within a member's final average pay period. Thus, expressed as a formula, and subject to the foregoing provisos, a member whose final average pay is based on "gross earnings" shall have his or her final average pay period adjusted as follows:

$$\text{final average pay period} = \begin{array}{c} \text{last day of} \\ \text{last day} \\ \text{of work} \end{array} + \begin{array}{c} \text{creditable accrued} \\ \text{vacation and} \\ \text{sick time} \end{array}$$

(6) Unless, and then only to the extent, this chapter provides that a member's final average pay is to be based upon his or her "gross earnings" over a stated period of time, a member's "final average pay" shall not include any amounts paid to such member upon or by reason of his or her termination of employment with the city either for accrued sick time or as a severance payment.

(7) "Final average pay period" for each member shall mean those total number of such member's final years of service from which some subset thereof is to be used for purposes of determining such member's final average pay. Thus, for example, if a member is entitled to have his or her pension benefit calculated on the basis of his or her highest two (2) of his or her last five (5) years of gross earnings, then such member's final average pay period is such five (5) year period. Except as otherwise provided in subsection (a)(ii)(5)(B) above, a member's final average pay period shall end on the day prior to his or her effective date of retirement.

(8) Commencing on August 1, 1993, a member's "last day of work" prior to retirement shall be that date desig-

nated by the city as the last day on which he or she was expected to provide services to the city, which, in any case, shall not include any period of time that an employee is carried on the city's books and records as an employee to account for the lump sum payment of accrued vacation time to such member in connection with his or her termination of employment with the city. A member's bone fide absence from work on any date under and in accordance with the city's personnel rules and/or such member's collective bargaining agreement, as applicable, shall not be considered a basis for determining that such member was not expected to provide services to the city on such date.

(9) (A) "Creditable accrued vacation and sick time" shall mean the sum of a member's creditable accrued vacation time and creditable accrued sick time.

(B) "Creditable accrued vacation time" shall mean that period of time between the day following a member's last day of work and the date upon which such member's last day of work would have occurred had such member remained an active employee and received payments for his or her accrued vacation on a weekly [basis] as opposed to a lump sum basis, both dates inclusive.

(C) "Creditable accrued sick time" shall mean that period of time commencing with the member's effective date of retirement, for which such member would continue to receive his or her basic weekly pay if such member were to receive amounts paid thereto for accrued sick time upon his or her termination of employment on a weekly basis, as opposed to in a lump sum, without regard to whether any

days in such time period are or have been designated holidays for active employees.

(D) The "effective date of retirement" for each member shall be the day after the period of time following such member's last day of work which is equal to his or her creditable accrued vacation time.

(E) For purposes of this subsection, a member's "basic weekly pay" shall mean the gross wages that a member would be paid per week based upon the rate of pay used to calculate the lump sum amounts paid to a member on account of accrued vacation and sick time upon his or her termination of employment.

(Ord. No. 60-93, 10-25-93)

(b) *Normal retirement.* Effective November 1, 1985, for nonbargaining unit policemen and firemen and effective July 1, 1986, for all bargaining unit policemen and firemen, normal retirement for employees hired before July 1, 1984, shall be after twenty (20) years of continuous service and normal retirement for employees hired on or after July 1, 1984, shall be after twenty (20) years of continuous service or at age forty-five (45) whichever is later. The normal retirement date for other members shall be the day following his or her sixty-fifth (65th) birthday, if employed in any other capacity. Any member shall be eligible for retirement and to receive a normal retirement allowance on or after his or her normal retirement date, provided such employee has completed at least ten (10) years of continuous service with the city. Also, any member who is not represented by a bargaining unit, and who is not a policeman or a fireman, or is represented by Local 1716, Council #4, AFSCME, AFL-CIO, Local 566 Council #4, AFSCME, AFL-CIO, Local 818, Building and Ground Supervision, Local 3534, Hartford Federation of Educational Personnel, and the School Crossing Guards Association shall be eligible for retirement and to receive a normal retirement allowance at any time after his or her sixtieth (60th) birthday, provided he or she has completed at least twenty-five (25) years of continuous service.

Normal retirement for members of Local 2221, Hartford Paraprofessionals shall be at age sixty (60) with twenty (20) years of continuous service or at age sixty-five (65) with ten (10) years of continuous service. Any member of the Hartford Federation of Public School Secretaries with at least twenty-five (25) years of service and at least fifty-five (55) years of age, or a member with at least ten (10) years of service and at least sixty (60) years of age will be eligible for normal retirement.

At any time after a member becomes eligible for retirement and to receive a normal retirement allowance, as provided in the preceding paragraph, the actual date of his retirement shall be established by an application on a prescribed form signed by the member, or by an application signed by both his appointing officer and either the city manager, or the superintendent of schools for employees of the board of education. Payment of his normal retirement allowance shall be subject to the approval of the pension commission as to his eligibility and the amount of his allowance.

For any member, except all policemen and firemen, the normal retirement allowance shall amount to one (1) percent of that portion of the employee's average earnings on which social security taxes were paid by the city for the full number of years included in the computation of his primary social security benefit, and two (2) percent of the balance of his final average pay, multiplied by the number of years of his service. Final average pay shall mean the average annual rate of pay for the highest five (5) years of his earnings during the last ten (10) years of service immediately preceding his retirement.

Effective November 1, 1985, for all nonbargaining unit policemen and firemen and effective July 1, 1986, for all bargaining unit policemen and firemen employed prior to July 1, 1984, the normal retirement allowance shall amount to 2.5 percent of final average pay for each whole year of service for the first twenty (20) years of continuous service and 2.0 percent of final average pay for each whole year of service thereafter and for those employed on or after July 1, 1984, the normal retirement allowance shall be the same as those hired prior to July 1, 1984, except normal retire-

ment shall be after twenty (20) years of continuous service or at age forty-five (45), whichever is later, retirement allowance shall amount to 2.5 percent of final average pay for each whole year of service for the first twenty (20) years of continuous service and 2.0 percent of final average pay for each whole year of service thereafter to a maximum of seventy (70) percent of final average pay, and final average pay will be computed on the basis of the employee's highest five (5) of the last ten (10) years of regular earnings, exclusive of overtime and private duty pay, added to a figure for overtime and private duty which is based on the employee's total overtime and private duty hours averaged over the employee's last twenty (20) years service or actual years of service, whichever is less. Final average pay for all policemen and firemen hired prior to July 1, 1984, shall be computed on the same basis as final average pay for policemen and firemen is computed on the date of the adoption of this ordinance.

Effective July 1, 1986, for all bargaining unit policemen and firemen and November 1, 1985, for all nonbargaining unit policemen and firemen, pension benefits shall vest after ten (10) years of continuous service. Any policeman or fireman who leaves the service of the city after his or her pension has vested will be entitled to collect a pension benefit commencing on the date he or she would have reached his or her normal retirement date.

Any provision of this Chapter to the contrary notwithstanding effective on the date of adoption of this ordinance, all nonbargaining unit policemen and firemen shall contribute to the fund eight (8) percent of his or her total earnings and on January 1, 1986, all bargaining unit policemen and firemen shall contribute to the fund eight (8) percent of his or her total earnings. Such contributions shall be deducted at each pay period and credited to his or her account.

Any member of the retirement system for city employees under the provisions of Section 233 of "An Act Revising the Charter of the City of Hartford," approved June 24, 1941, as amended, who becomes a member of the municipal employees' retirement fund on or after July 1, 1968, shall be entitled to receive a retirement allowance com-

puted under the terms of this section or under the terms of said Section 233 of "An Act Revising the Charter of the City of Hartford," whichever is greater.

Any provision of this chapter to the contrary notwithstanding, any nonbargaining unit employee who is actively employed by the city on or after August 1, 1993, shall be eligible for retirement and to receive a normal retirement allowance upon completion of at least twenty-five (25) years of continuous service regardless of his or her age or upon completion of at least ten (10) years of continuous service by or at any time after his or her sixtieth (60th) birthday. The normal retirement allowance shall amount to two (2) percent of final average pay for each year of service to a maximum of seventy (70) percent of final average pay and final average pay will be computed on the basis of the employee's highest five (5) of the last ten (10) years of his or her gross earnings. Any employee who is age fifty-five (55) with at least ten (10) years of service but less than twenty-five (25) years of service shall be eligible to receive a pension based on the above formula but reduced by four (4) percent for each whole year the employee retires short of age sixty (60). Said reduced pension shall remain in effect for the duration of the pension. Any disability under section 3(e) or disability allowance under section 3(f) shall be computed as provided above and shall be subject to the limitations of said sections 3(e) and 3(f). Commencing January 1, 1987, all nonbargaining unit employees shall contribute to the fund a total of four (4) percent of the employee's earnings on which social security taxes are paid and seven (7) percent of the balance of the employee's earnings to be deducted at each pay period and credited to his or her account in the fund. This contribution shall be in lieu of any contributions required under the provisions of sections 3(k) and 3(q) of this chapter. Commencing July 1, 1988, any nonbargaining unit employee may elect to have his or her final average pay computed on the basis of the employee's highest two (2) of the last five (5) years of his or her gross earnings. Any nonbargaining unit employee who elects to have his or her final average pay computed on the basis of the employee's highest two (2) of the last five (5) years of his or her gross earnings shall make such election by filing a notice thereof with the city treasurer on or before November 1, 1988, or within thirty (30) days of his or her commencement of employment as a city employee, whichever is later. Any nonbargaining unit employee who makes such election shall contribute to the fund an additional one (1) percent of the employee's earnings above the four (4) percent of the employee's earnings on which social security taxes are paid and the seven (7) percent of the balance of the employee's earnings to be deducted at each pay period and credited to his or her account in the fund.

Normal retirement for all members of Local #2221, Hartford Federation of Paraprofessionals, Local 1018, Hartford Federation of Corridor Supervisors, Local 3534, Hartford Federation of Technical Support Personnel, Local 1018 A/B, Hartford Federation of School Health Professionals, Local 818, Building and Ground Supervisors, Hartford Education Support Personnel, Hartford School Support Supervisors Association, and all nonbargaining unit employees of the board of education employed on or after the date of adoption of this ordinance [October 10, 1990], shall be at age fifty-five (55) with at least twenty-five (25) years of service or age sixty (60) with at least ten (10) years of service. The normal retirement allowance shall amount to two (2) percent of final average pay for each year of service to a maximum of seventy (70) percent of final average pay, and final average pay will be computed on the basis of the employee's highest five (5) of the last ten (10) years of his or her gross earnings. Any employee who is age fifty-five (55) with at least ten (10) years of service but less than twenty-five (25) years of service shall be eligible to receive a pension based on the above formula but reduced by four (4) percent for each whole year the employee retires short of age sixty (60). Said reduced pension shall remain in effect for the duration of the pension. Any disability or disability allowance shall be computed as provided above and shall be subject to the limitations of sections 3(e) and 3(f). All employees covered by this paragraph shall contribute to the fund a total of four (4) percent of the employee's earnings on which social security taxes are paid and seven (7) percent of the balance of the employee's earnings to be deducted at each pay period and credited to his or her account in

the fund. This contribution shall be in lieu of any previous contributions required. (Ord. No. 18-94, 6-13-94)

Commencing September 1, 1988, for all members of Local 1018 A/B, Hartford Federation of School Health Professionals, normal retirement shall be at age fifty-five (55) with at least twenty-five (25) years of service or age sixty (60) with at least ten (10) years of service. The normal retirement allowance shall amount to two (2) percent of final average pay for each year of service. Commencing July 12, 1993, final average pay will be computed on the basis of an employee's highest three (3) years of the last five (5) years of his or her gross earnings. Any employee who is age fifty-five (55) with at least ten (10) years of service but less than twenty-five (25) years of service shall be eligible to receive a pension based on the above formula but reduced by four (4) percent for each whole year the employee retires short of age sixty (60). Said reduced pension shall remain in effect for the duration of the pension. Any disability or disability allowance shall be computed as provided above and shall be subject to the limitations of Sections 3(e) and 3(f). Commencing September 1, 1988, all bargaining unit employees shall contribute to the fund a total of four (4) percent of the employee's earnings on which social security taxes are paid and seven (7) percent of the balance of the employee's earnings to be deducted at each pay period and credited to his or her account in the fund. This contribution shall be in lieu of any previous contributions required.

Effective September 11, 1989, for all members of the Hartford Federation of School Secretaries the normal retirement allowance shall amount to two (2) percent of the employee's final average pay per whole year of service to a maximum of seventy (70) percent of the final average pay. The final average pay will be computed on the basis of the employee's highest five (5) of the last ten (10) years of his or her gross earnings.

If any nonbargaining unit city employee retires from city service as a member of the unclassified service and his or her last day of work falls on or between September 26, 1989 and July 31, 1993, and, at such time, he or she is either an elected official or an appointee of one or more elected officials (hereinafter a "term-limited employee"), then such member's gross earnings in his or her final year of service shall include all amounts payable to such member upon his or her retirement on account of unused vacation and sick time as if such amounts all were earned and paid on and as of his or her last day of work, so long as, but only to the extent, that inclusion of such amounts in such member's gross earnings does not result in such member receiving an annual pension benefit in excess of the lesser of (i) his or her actual regular earnings in the twelve months preceding such member's last day of work prior to such member's retirement (i.e., all of such member's actual earnings payable in such time period exclusive of any lump sum payments for accrued sick or vacation time payable upon termination of such member's employment with the City), or (ii) the IRC Maximum Benefit.

If any nonbargaining unit city employee (other than term-limited employee) retires from city service and his or her last day of work falls on or between July 13, 1990 and July 31, 1993, then such employee's gross earnings shall include all amounts payable to such member upon his or her retirement on account of unused vacation time prior to his or her effective date of retirement and shall also include all amounts payable to such member upon his or her retirement on account of unused sick time (hereinafter, "lump sum payment") as if such lump sum sick pay was earned and paid on and as of his or her last day of work, so long as, but only to the extent, that inclusion of such amounts in such member's gross earnings does not result in such member receiving an annual pension benefit in excess of the lesser of (i) his or her actual regular earnings in the twelve (12) months preceding such member's last day of work prior to such member's retirement (i.e., all of such member's actual earnings payable in such time period exclusive of any lump sum payments for accrued sick or vacation time payable upon termination of such member's employment with the city), or (ii) the IRC Maximum Benefit.

Notwithstanding anything to the contrary which is set forth in this Chapter, no member shall be entitled to receive a pension benefit in excess of the maximum amount which is permitted under

the Internal Revenue Code of the United States from time to time (the "Code") in order for both the fund, and its members' interests therein, to retain the tax favored treatment provided by the Code thereto (herein, the "IRC Maximum Benefit").

The provisions set forth in subparagraphs (1) and (2) below, shall apply to all members of Local #2221, Hartford Federation of Paraprofessionals who retire after January 25, 1993:

(1) The normal retirement allowance for such members shall amount to 2.5 percent of final average pay for each whole year of service for the first twenty (20) years of continuous service, and two (2) percent of final average pay for each whole year of service thereafter, up to a maximum of seventy (70) percent of final average pay; and

(2) Final average pay for such members will be computed on the basis of an employee's highest three (3) out of the last five (5) years of his or her gross earnings.

Any member of Local #2221, Hartford Federation of Paraprofessionals who, but for having been furloughed at any time during the 1992—1993 school year, would have completed an entire year of service by June 30, 1993, shall be entitled to contribute such additional amounts to the fund as such member would have contributed had such member not been furloughed (without interest) and thereby be credited with such additional year of service, providing that such member pays such amounts to the fund on or before the earlier of (i) December 31, 1993, or (ii) his or her effective date of retirement.

All members of Local #2221, Hartford Federation of Paraprofessionals, Local #1018-C, Hartford Federation of School Secretaries, Local #1018, Hartford Federation of Corridor Supervisors, Local #3534, Hartford Federation of Technical Support Personnel, Local #1018 A/B, Hartford Federation of School Health Professionals, Local #818, Building and Ground Supervisors and all nonbargaining unit employees of the Board of Education who were furloughed for one (1) day during the 1990-91 school year shall not lose credit for such day for purposes of this chapter.

Notwithstanding any other provision of this Chapter to the contrary, any member who is determined by the Pension Commission to be eligible to receive any of the benefits provided under this Chapter who, on or after the date such benefits become payable, is entitled to and in fact does contribute to the fund by reason of his or her election or appointment to, or employment in, a position with the City (including, but not limited to, any of its agencies, departments, boards or commissions) shall not be entitled to collect such benefits during the period he or she holds such position; providing, however, that this restriction shall not apply in respect of any benefits to the extent they were first payable on or before (the effective date hereof). Any benefits which otherwise would be payable to any member under this Chapter but for the restrictions set forth in this paragraph shall be paid thereto (without interest) at such time when such member no longer holds a position by reason of which he or she is entitled to contribute to the fund.

No member shall be deemed to have retired, or to otherwise then be eligible to qualify for any benefits otherwise payable under this Chapter, as and to the extent he or she is employed by the City or any of its agencies, departments, boards or commissions in a position for which he or she applied, received and offer, or was accepted, prior to the date on which such benefits otherwise would first be payable; providing, however, that nothing in this sentence shall constitute a basis for denying any member any benefits to the extent they first became payable prior to (the effective date hereof). In no event shall the level of any benefits payable to any member by reason of his or her participation in the fund prior to qualifying for and electing to receive any benefits under this Chapter be increased as a result of his or her renewed participation in the fund at any time after he or she has made such election.

The following provisions will apply to all nonbargaining unit sworn police officers and firefighters who are in the employ of the city on or after December 31, 1996:

1. Any provisions of this Chapter or the Municipal Code to the contrary notwithstanding, all nonbargaining unit sworn police officers and firefighters who were not em-

ployed as sworn police officers or firefighters on or before December 31, 1996, shall be entitled to receive, and only shall be paid, such of those pension and other retirement benefits as are provided to nonbargaining unit city employees pursuant to this Chapter (hereinafter, "Nonbargaining Pension Benefits"). All nonbargaining unit sworn police officers and firefighters who became sworn police officers or firefighters prior to January 1, 1997, also may elect to receive Nonbargaining Pension Benefits by notifying the City Treasurer of their desire to do so on or before March 31, 1997, or within thirty (30) days of the commencement of his or her employment as a nonbargaining unit sworn police officer or firefighter, whichever is later. Any nonbargaining unit sworn police officer or firefighter who elects to or otherwise is entitled to receive Nonbargaining Pension Benefits shall be provided with such benefits in lieu of any other pension or retirements benefits to which they otherwise would be entitled under this Chapter or the Municipal Code and only in accordance with the provisions of this paragraph and otherwise with the eligibility criteria and other terms and conditions affecting the provision of benefits to nonbargaining unit city employees as are set forth elsewhere in this chapter.

2. Any contributions to the fund which have been made by any nonbargaining unit sworn police officer or firefighter prior to the time when he or she elects to or otherwise becomes entitled to receive Nonbargaining Pension Benefits shall remain in the fund and be applied toward the Nonbargaining Pension Benefits to be provided to such employee hereunder. Thereafter, and subject to the provisions of subparagraph 3 below, any nonbargaining unit sworn police officer or firefighter who elects to or otherwise is entitled to receive Nonbargaining Pension Benefits shall make such contributions to the fund in the same manner and on the same terms as are required of, and shall be entitled to earn interest on any contributions which have been or thereaf-

ter are made to the fund in the same manner and on the same terms as apply to, nonbargaining unit city employees; providing, however, that no such employee shall be entitled to receive any additional or different interest on any contributions which were made prior to his or her making the aforesaid election at any time prior thereto other than such interest, if any, which was then required to be provided in respect thereof. Nothing herein shall be deemed to preclude a member or his or her beneficiaries, if any, from withdrawing or otherwise being paid any of such member's contributions as provided in this Chapter upon termination of his or her employment or otherwise.

3. Any nonbargaining unit sworn police officer or firefighter who elects to or otherwise is entitled to receive Nonbargaining Pension Benefits also shall have the option (a) to have his or her final average pay computed on the basis of the highest two (2) of the last five (5) years of his or her gross earnings ("Option A"), as well as (b) to receive credit in the calculation of his or her retirement allowance for any periods of time that he or she served in the armed forces of the United States pursuant to Section 3(w) of this Chapter for which he or she previously has not made contributions to the fund ("Option B"), so long as, in either case, he or she notifies the City Treasurer of his or her desire to exercise such option (and, in the case of Option B above, also makes the contributions required under Section 3(w) of this Chapter) on or before March 31, 1997, or within thirty (30) days of the commencement of his or her employment as a nonbargaining unit sworn police officer or firefighter, whichever is later. Any employee who exercises Option A above shall thereafter contribute to the fund one (1) percent of his or her earnings above the four (4) percent of the employee's earning on which social security taxes are (or would otherwise be) paid and the seven (7) percent of the balance of the employees earnings, to be deducted at each pay period and credited to his or her account in the fund.

*(bi) Pension benefits for all bargaining unit and nonbargaining unit police officers:*

I.  All present retirement and survivor benefits of persons who became sworn police officers prior to July 1, 1987, shall remain in effect except as follows:

1.  The employee contribution to the pension fund will be eight (8) percent of total earnings.

2.  Service retirements for those employees hired before July 1, 1984, will be based on two and one-half (2.5) percent of final average pay for each whole year of service for the first twenty (20) years of continuous service and two (2.0) percent of final average pay for each whole year of service thereafter.

3.  Normal retirement for employees hired before July 1, 1984, shall be after twenty (20) years of continuous service. Employee pension benefits vest after ten (10) years of continuous service.

4.  An employee who vests his or her pension and leaves the service of the city will be entitled to collect a pension benefit commencing on the date he or she would have reached his or her normal retirement date.

5.  Effective upon signing, an employee may purchase up to four (4) years of military service time for service in the Armed Forces of the United States for periods of service, any of which occurred during the periods set forth in Section 27-103 of the General Statutes of the State of Connecticut, at the rate payable at the time of entry into city service, with interest at the rate of seven (7) percent per annum. The period of such service for which the employee receives credit shall be counted for the purpose of computing the amount of his or her retirement allowance provided such employee shall have completed ten (10) years of continuous service or fifteen (15) years of active aggregate service with the City of Hart-

ford or shall be retired prior thereto, due to disability incurred in the course of his or her employment.

6.  Effective July 1, 1986, employees hired on or after July 1, 1984, will be entitled to a service pension identical to employees hired before July 1, 1984, with the following exceptions:

    A.  Normal retirement after twenty (20) years of continuous service or at age forty-five (45), whichever is later.

    B.  Retirement benefit based on two and one-half (2.5) percent of final average pay of each whole year of service for the first twenty (20) years of continuous service and two (2) percent of final average pay for each whole year of service thereafter to a maximum of seventy (70) percent of final average pay.

    C.  Final average pay will be computed on the basis of the employee's highest five (5) of the last ten (10) years of regular earnings, exclusive of overtime and private duty pay, added to a figure for overtime and private duty hours averaged over the employee's last twenty (20) years service or actual years of service whichever is less.

7.  Effective July 1, 1986, an employee with less than fifteen (15) years of continuous service who suffers a permanent partial disability arising out of and in the course of employment as defined in the Worker's Compensation Act and who is eligible for a special disability allowance as provided for in the municipal employees retirement fund will have such special disability allowance reduced by any income from gainful employment which, together with the special disability allowance, exceeds one hundred (100) percent of the current rate of pay for an employee of the same or corresponding job classification held by the employee at the time of such retirement.

II.    Effective July 1, 1987, for all persons who became sworn police officers on or after July 1, 1987, the following retirement and service benefits shall be in effect:

    1.   The employee contribution rate to the pension fund will be five (5) percent of total earnings.

    2.   Service retirements will be based upon two (2) percent of final average pay for each whole year of service to a maximum of seventy (70) percent of final average pay.

3. Normal retirement age shall be age fifty-five (55) with at least twenty-five (25) years of service.

4. Employees who retire prior to the time specified in paragraph 3 herein, will receive pension benefits reduced by four (4) percent for each whole year by which the early retirement precedes the employee's normal retirement age, with proration for a fraction of a year of continuous service or, employees may elect early retirement between the ages of fifty-five (55) and sixty (60) with ten (10) years of continuous service.

5. Final average pay will be computed on the basis of the employee's highest three (3) of the last five (5) years of regular earnings, exclusive of overtime and private duty pay, added to a figure for overtime and private duty which is based on the employee's total overtime and private duty hours averaged over the employee's last twenty-five (25) years of service or actual years of service whichever is less.

6. Social security benefits shall not be included in this plan.

7. Effective upon signing, an employee may purchase up to four (4) years of military service time for service in the Armed Forces of the United States for periods of service, any of which occurred during the periods set forth in Section 27-103 of the General Statutes of the State of Connecticut, at the rate payable at the time of entry into city service, with interest at the rate of seven (7) percent per annum. The period of such service for which the employee receives credit shall be counted for the purpose of computing the amount of his or her retirement allowance provided such employee shall have completed ten (10) years of continuous service or fifteen (15) years of active aggregate service with the City of Hartford or shall be retired prior thereto, due to disability incurred in the course of his or her employment.

III. Effective July 1, 1988, for all persons who became sworn police officers prior to July 1, 1987, all present retirement and survivor benefits shall remain in effect except as follows:

1. The employee contribution to the pension fund will be eight (8) percent of total earnings.

2. Service retirements for those employees hired before July 1, 1984, will be based upon 2.65 percent of final average pay for each whole year of service for the first twenty (20) years of continuous service and, the following table for each whole year of continuous service thereafter to a maximum of seventy (70) percent of final average pay.

| Year | Percentage |
|------|-----------|
| 21 | 56% |
| 22 | 58% |
| 23 | 60% |
| 24 | 62% |
| 25 | 64% |
| 26 | 65% |
| 27 | 66% |
| 28 | 67% |
| 29 | 68% |
| 30 | 69% |
| 31 | 70% |

3. Normal retirement for employees hired before July 1, 1984, shall be after twenty (20) years of continuous service. Employee pension benefits vest after ten (10) years of continuous service.

4. An employee who vests his or her pension and leaves the service of the city will be entitled to collect a pension benefit commencing on the date he or she should have reached his or her normal retirement date.

5. An employee may purchase up to four (4) years of military service time for service in the Armed Forces of the United States for periods of service, any of which occurred during the periods set forth in Section 27-103 of the General Statutes of the State of Connecticut, at

HARTFORD MUNICIPAL CODE

the rate payable at the time of entry into city service, with interest at the rate of seven (7) percent per annum. The period of such service for which the employee receives credit shall be counted for the purpose of computing the amount of his or her retirement allowance provided such employee shall have completed ten (10) years of continuous service or fifteen (15) years of active aggregate service with the City of Hartford or shall be retired prior thereto, due to disability incurred in the course of his or her employment.

6. Final average pay will be computed on the basis of the employee's highest three (3) of the last five (5) years' earnings.

7. Employees hired on or after July 1, 1984, who became sworn police officers prior to July, 1987, will be entitled to a service pension identical to employees hired before July 1, 1984, with the following exceptions:

   A. Normal retirement after twenty (20) years of continuous service or age forty-five (45), whichever is later.

   B. Final average pay will be computed on the basis of the employee's highest three (3) of the last five (5) years of regular earnings, exclusive of overtime and private duty pay, added to a figure for overtime and private duty which is based on the employee's total overtime and private duty hours averaged over the employee's last twenty (20) years service or actual years of service, whichever is less.

8. An employee with less than fifteen (15) years of continuous service who suffers a permanent partial disability arising out of and in the course of employment as defined in the Workers' Compensation Act and who is eligible for a special disability allowance as provided for in the municipal employees retirement fund will have such special disability allowance reduced by any income from gainful employment which, together with the special disability allowance, exceeds one hundred (100) percent of the current rate of pay for an employee of the same corresponding job classification held by the employee at the time of such retirement.

9. In lieu of the provisions of III, 2 hereinabove all nonbargaining unit sworn police officers who have reached a retirement benefit of seventy (70) percent or more of their final average pay as of July 1, 1988, shall receive a four (4) percent increase to their service retirement credit existing under I, 2 above on July 1, 1988. On their next anniversary date of continuous service following July 1, 1988, they shall receive an additional two-percent increase to their service retirement credit. After receipt of this two-percent increase such members shall be at the maximum percentage of final average pay to be used for retirement purposes.

(bii) Final average pay for all bargaining unit and non-bargaining unit firemen retiring after July 1, 1987 will be computed on the basis of the employee's highest three (3) of the last five (5) years total annual earnings. Total annual earnings include private jobs, overtime, and longevity pay, if applicable.

(biii) The provisions set forth in subparagraphs (1), (2), (3) and (4) below shall apply to all non-bargaining unit city employees whose effective date of retirement is on or after July 1, 1994.

(1) Any such non-bargaining unit city employee shall be eligible for retirement and to receive a normal retirement allowance upon completion of at least twenty (20) years of service regardless of his or her age. The normal retirement allowance for such non-bargaining unit city employees shall amount to 2.5 percent of final average pay for each whole year of service up to a maximum of 80 percent of final average pay; and

(2) Final average pay for such non-bargaining unit city employees will be computed on the