have been payable hereunder immediately prior to making such adjustment;

(e) Any employee so eligible for the benefit stated in this subsection (z)(3) may continue on pay status after his or her last day of work to utilize accrued vacation time without affecting his or her eligibility to qualify for the benefit provided by this subsection (z)(3);

(f) In those instances where an employee's retirement prior to July 31, 1993 would cause an undue hardship to city operations, the city manager may grant a deferment to such employee which enables such employee to continue to work beyond July 31, 1993 and still be eligible to qualify for the benefits provided under this subsection (z)(3), provided however, that (subject to subparagraph (e) above) any such employee's last day of work occurs on or before December 31, 1993, and providing, further, that the provisions of section 3(a)(ii) of this Chapter in effect as of July 31, 1993 shall continue to control; and

(g) Any employee who chooses to take advantage of the benefits provided under this subsection (z)(3) shall be subject to (i) all of the terms and conditions respecting the same as set forth in this subsection (z)(3), as well as (ii) the provisions set forth in the remainder of this Chapter and any collective bargaining agreements, as applicable, except to the extent any such provisions conflict with this subsection (z)(3).

(h) Notwithstanding anything contained in this Chapter to the contrary, (including, but not limited to subparagraphs (a) through (g) above), no employe shall be entitled to receive a pension benefit in excess of the IRC Maximum Benefit applicable to such employee as of the date such em-

ployee first commences receiving benefits under this Chapter (the employee's "Benefit Determination Date") except as provided in subparagraphs (i) and (j) below. The term "IRC Maximum Benefit" shall have the same meaning ascribed thereto in subsection 3(b) of this Chapter.

(i) The IRC Maximum Benefit applicable to any employee shall be increased in the years following his or her Benefit Determination Date to reflect (i) any post-retirement increases which are made to the applicable limitations of Section 415 of the Internal Revenue Code of 1986 as amended from time to time ("Section 415") in such years, and (ii) any applicable adjustments or other changes which may be made to any applicable limitations imposed by Section 415 by virtue of any changes which are made to the provisions of Section 415 or the regulations promulgated thereunder.

(j) Effective January 1, 1995, any employee who has elected to receive the benefits provided under this subsection (z)(3) who, but for the operation of subparagraphs (h) and (i) above, would be entitled, in any year, to receive a benefit from the Municipal Employees Retirement Fund which is different than that actually payable to such employee thereby by reason of said subparagraphs (h) and (i), shall be entitled to receive the difference between the actual benefit such employee otherwise would have been entitled to receive but for the limitations imposed by subparagraphs (h) and (i) above and the benefit such employee actually is entitled to receive by virtue of the operation of said subparagraphs. Notwithstanding any provisions of this Charter to the contrary (including, without limitation, this subsection (z)(3)), any amounts paid or payable

to any employee by reason of this subparagraph (j) shall not be paid or payable from the Municipal Employees Retirement Fund, but, rather, only shall be paid and payable from, and subject to all of the terms and conditions governing, the Section 415(m) Fund and the provision of benefits therefrom pursuant to subsection 3(bb) of this Chapter.

(4)    Any nonbargaining unit employee of the Board of Education, and any non-certified employee of the Board of Education who is a member of a collective bargaining unit which has agreed to the provisions of this subsection (z)(4), (hereinafter, in this subsection, "an employee"), who (i) either is, or by operation of subparagraph (a) below, becomes, eligible to take an early or normal retirement between November 10, 1994 and December 30, 1994, both dates inclusive, and (ii) who takes an early or normal retirement with a last day of work between November 10, 1994 and December 30, 1994, both dates inclusive, shall be entitled to the following adjustments in both his or her eligibility to qualify for a pension and the calculation of his or her pension benefits if he or she so desires, subject, in each instance, to the provisions of subparagraph (b) below:

(a)    Said employee's eligibility to receive a normal or early retirement as well as the amount of said employee's pension benefit shall be determined as if said employee were five (5) years older and had five (5) more years of city service than actually is the case;

(b)    The maximum pension benefit which said employee shall be entitled to receive shall be the lesser of (i) seventy (70) percent of his or her final average pay, (ii) one hundred (100) percent of the product of fifty-two (52) times his or her final regular weekly salary, or (iii) the maximum amount which is permitted by law

without jeopardizing the tax favored status of the fund or interests therein;

(c)    The normal retirement allowance for each such employee shall amount to 2.5 percent of his or her final average pay for each whole year of service for his or her first twenty (20) years of continuous service, and two (2) percent of such employee's final average pay for each whole year of service thereafter, up to a maximum of seventy (70) percent of his or her final average pay;

(d)    Final average pay for each such employee will be computed on the basis of said employee's highest three (3) out of the last five (5) years of his or her gross earnings;

(e)    Any such employee who, after making the adjustments required by subparagraph (a) above, is age fifty-five (55) with at least fifteen (15) years of service but less than twenty-five (25) years of service shall be eligible to receive a pension based on the above formula but reduced by four (4) percent for each whole year the employee retires short of age sixty (60), which reduced pension shall remain in effect for the duration of the pension;

(f)    Any employee who, without regard to subparagraph (a) above, has completed twenty-five (25) years of service as of his or her last day of work, shall be eligible for a normal retirement with no age requirement and shall be entitled to the adjustments provided for in subparagraph (a) above, in both his or her eligibility to qualify for a pension and the calculation of his or her pension benefits if he or she so desires, subject in each instance to the provisions of subparagraph (b), above;

(g)    Any employee so eligible for the benefit stated in this section must utilize accrued vacation time prior to

his or her last day of work, such date being between November 10, 1994 and December 30, 1994, or be paid for such accrued vacation time upon retirement. Such accrued vacation time may not be utilized in order to continue said employee on pay status after his or her last day of work.

(h) In those instances where an eligible employee's retirement prior to December 31, 1994 would cause an extreme hardship to Board of Education operations, the Superintendent of schools may grant a deferment to such employee which enables such employee to continue to work beyond December 31, 1994 and still be eligible to qualify for the benefits provided under this subsection (z)(4), provided however, that any such employee's last day of work occurs on or before March 31, 1995; and

(i) Any employee laid off effective July 1, 1994 and who would be eligible as of June 30, 1994 for early or normal retirement under the terms and conditions set forth in this ordinance [subsection] shall be deemed eligible to retire under said terms and conditions, with a retirement date of July 1, 1994.

(j) Any employee who chooses to take advantage of the benefits provided under this subsection (z)(4) shall be subject to (i) all of the terms and conditions respecting the same as set forth in this subsection (z)(4), as well as (ii) the provisions set forth in the remainder of this Chapter and any collective bargaining agreements, as applicable, except to the extent any such provisions conflict with this subsection (z)(4).

(aa) *Adjustments to certain Board of Education Employees Pension Benefits*

(1) Notwithstanding any other provisions in this Chapter to the contrary, the normal retirement allowance of all Qualified Board of Education Employees herein defined shall be adjusted in accordance with the provisions of this subsection. Such adjustment shall be made by multiplying the normal retirement allowance otherwise due such member by the factor set forth below adjacent to his or her Applicable Retirement Period.

| Employee Unit | Applicable Retirement Period (July 1—June 30) | Adjustment Factor |
|---|---|---|
| Local 2221, Hartford | 1992—1993 | 1.0106 |
| Federation of | 1993—1994 | 1.0330 |
| Paraprofessionals | 1994—1995 | 1.0560 |
| | 1995—1996 | 1.0681 |

Any Qualified Board of Education Employee who does not or cannot take a normal retirement allowance by retiring with a last day of work within an Applicable Retirement Period shall not be entitled to receive any adjustment to his or her normal retirement allowance hereunder.

(2) For purposed of this subsection, a "Qualified Board of Education Employee" shall mean any member who, (i) at any time during fiscal years 1992-1993 and/or 1993-1994 was a member of the bargaining unit listed in subparagraph (1) above, and (ii) is otherwise eligible to receive a normal retirement allowance within, and in fact retires from city service with a last day of work which falls within, an Applicable Retirement Period.

(3) For purposes of this subsection, a member's "Applicable Retirement Period" shall be any of the fiscal years designated in subparagraph (1) above in respect of the employee unit in or to which such member last belonged during Fiscal Years 1992-1993 or 1993-1994. (Ord. No. 22-94, 6-27-94)

(bb) *Section 415(m) Fund.*

(1) The provisions of this subsection (bb) shall apply to all nonbargaining unit city em-

ployees as well as all bargaining unit employees for whom the provisions of this subsection (bb) have been adopted by their collective bargaining agreement.

(2) Except as provided in this subsection (bb), no employee shall be entitled to receive a pension benefit in excess of the IRC Maximum Benefit applicable to such employee at the date such employee first commences receiving benefits under this Chapter (the employee's "Benefit Determination Date"). The term "IRC Maximum Benefit" shall have the same meaning ascribed thereto in subsection 3(b) of this Chapter.

(3) The IRC Maximum Benefit applicable to any employee shall be increased in the years following his or her Benefit Determination Date to reflect (i) any post-retirement increases which are made to the applicable limitations of Section 415 of the Internal Revenue Code of 1986 as amended from time to time ("Section 415") in such years, and (ii) any applicable adjustments or other changes which may be made to any applicable limitations imposed by Section 415 by virtue of any changes which are made to the provisions of Section 415 or the regulations promulgated thereunder.

(4) Effective January 1, 1995, any employee who, but for the operation of the limitations imposed on the level or amount of pension benefits which may be paid by a qualified plan pursuant to Section 415 as implemented by subsection 3(b) above and this section 3(bb) (together, the "Section 415 Limitations"), would be entitled, in any year, to receive a benefit from the Municipal Employees Retirement Fund which is different than that which actually is payable to such employee by reason of said Section 415 Limitations, shall be entitled to receive the difference between the actual benefit such employee otherwise would have been entitled to receive but for the Section 415 Limitations and the benefit such employee actually is entitled to receive by virtue of the operation

of said limitations. A separate retirement fund is hereby established for the purpose of providing the benefits payable pursuant to this subparagraph (4) pursuant to Section 415(m) of the Internal Revenue Code of 1986, as amended, which fund shall be known as the Section 415(m) Fund and shall be administered by the Pension Commission subject to and in accordance with the provisions of section 5 of this Chapter. Notwithstanding any provision of this Charter to the contrary (including, without limitation, this subsection (bb)), any amounts paid or payable to any employee by reason of this subparagraph (4) shall not be paid or payable from the Municipal Employees Retirement Fund but, rather, only shall be paid and payable from the Section 415(m) Fund. All benefits payable from the Section 415(m) Fund shall be subject to all of the terms and conditions that would apply thereto if they were paid from the Municipal Employees Retirement Fund; providing, however, that, in lieu of the provisions of subsection 3(k) of this Chapter, the City only shall be required to make such contributions to the Section 415(m) Fund in any year as may be determined from time to time by the Pension Commission to be necessary to provide the benefits payable therefrom in said year. No

benefits shall be paid from the Section 415(m) Fund except as provided in this subparagraph (bb).

(cc) *Pension benefits of all members represented by Local #760, International Association of Fire Fighters.*

(1) *Applicability.* Notwithstanding anything to the contrary set forth in any provision of Section 3 of this Chapter, any provision of the Municipal Code, or any collective bargaining agreement which is in existence on the effective date of this ordinance, any member of the municipal employees retirement fund who is represented by Local #760, International Association of Fire Fighters, who is in the active service of the city on or after the effective date of this ordinance, and who did not commence receiving a normal, disability, special disability or early retirement allowance prior to the effective date of this ordinance (hereinafter a "Current 760 Member") shall be entitled to receive, and only shall be paid, the pension and other retirement allowances provided below:

(2) *Membership.* All members of Local #760, International Association of Fire Fighters who entered the service of the city after April 30, 1947 are members of the municipal employees' retirement fund.

(3) *City Contributions.* The city shall pay annually into the fund such proportion of the pay of all members employed by the city as may be determined from time to time by the pension commission on sound actuarial principles to be necessary in addition to the contributions by members to provide future pension allowances based on service rendered by members. The pension commission shall make a complete actuarial study of the experience of the municipal employees' retirement fund at intervals of no more than five (5) years and shall thereupon readjust the contributions to be made by the city.

(4) *Employee Contributions.* Any employee who is a Current 760 Member shall con-

tribute to the fund eight percent (8%) of his or her total earnings, with said contributions being deducted at each pay period and credited to the member's account in the fund.

(5) *Vesting.* All pension benefits under the provisions of the municipal employees' retirement fund shall vest in each Current 760 Member after the completion of ten (10) whole years of continuous service, provided said member leaves his or her contributions in the fund. Vested members hired before July 1, 1984 shall receive a retirement allowance calculated in the same manner as a normal retirement allowance commencing on the date the member would normally have completed twenty (20) years of continuous service. Vested members hired on or after July 1, 1984 shall receive a retirement allowance calculated in the same manner as a normal retirement allowance commencing on the date such member would have completed twenty (20) years of continuous service or reached age forty-five (45), whichever is later. Any vested member shall receive at the time of separation from city service a statement by the appropriate city official indicating the date on which he or she shall first be entitled to receive a retirement allowance and the amount of said allowance.

(6) *Final Average Pay.* Final average pay for all Current 760 Members shall be calculated on the basis of the employee's weekly rate of pay immediately preceding the start of retirement multiplied by fifty-two (52), plus the "total amount of holiday pay" for an employee who regularly performs fire fighting duties and receives the additional twelve (12) hours pay for each holiday for the fifty-two (52) week period immediately preceding the start of retirement. "Weekly rate of pay" means the employee's normal total gross weekly pay including college incentive pay and the five percent (5%) "additional compensation", if applicable. "Weekly rate of pay" does not include private job (PJ) earnings,

overtime earnings, standby pay or the five percent (5%) additional compensation provided to Deputy Chiefs assigned as shift commander. Said "weekly rate of pay" shall be used in calculating final average pay even when an employee is on a reduced or non-pay status. The "total amount of holiday pay" means the employee's normal total gross holiday pay. Said "total amount of holiday pay" shall be used in calculating final average pay even when an employee is on a reduced or non-pay status. In the event an employee experiences a reduction in rank, "weekly rate of pay" is based upon the final rate of pay, immediately preceding the start of retirement at his or her highest growth step of the highest rank held by the employee within two (2) years prior to retirement.

(7) *Normal Retirement.*

    (a) *Eligibility.* Any Current 760 Member who was hired before July 1, 1984 shall be eligible to retire and to receive a normal retirement allowance upon completion of twenty (20) years of continuous service. Any such member who was hired on or after July 1, 1984 shall be eligible to retire and to receive a normal retirement allowance upon completion of at least twenty (20) years of continuous service or upon attainment of the age of forty-five (45), whichever is later.

    (b) *Allowance.* The normal retirement allowance for a Current 760 Member who was hired before July 1, 1984, shall amount to two and one half percent (2.5%) of final average pay for each whole year of service for the first twenty (20) years of continuous service and two percent (2%) of final average pay for each whole year thereafter. The normal retirement allowance for a Current 760 Member hired on or after July 1, 1984 shall amount to two and one half percent (2.5%) of final average pay for each whole year of service for the first twenty

(20) years of continuous service and two percent (2%) of final average pay for each whole year of service thereafter to a maximum of seventy percent (70%) of final average pay.

(8) *Early Retirement*

    (a) *Eligibility.* Any Current 760 Member shall be eligible for early retirement and to receive an early retirement allowance upon completion of ten (10) years of continuous service by or at any time after his or her fiftieth (50th) birthday.

    (b) *Allowance.* Any Current 760 Member and who chooses to take early retirement may, in lieu of the refund of such member's contributions, elect to have his or her early retirement allowance calculated in accordance with one of the below options:

        (1) To receive an immediate early retirement allowance which shall be determined by the pension commission and which shall be actuarially equivalent to the retirement allowance which the member would have received if the member had left his or her contributions in the fund until the date the member would have first become eligible for a normal retirement allowance; or

        (2) To receive an immediate early retirement allowance equal to the amount of retirement allowance the member would have received if the member had left his or her contributions in the fund until the date the member would have first become eligible for a normal retirement allowance reduced by two percent (2%) for each whole year by which the date of the member's termination of service falls short of the date on which the member would have first become eligible for a nor-

mal retirement allowance, with proration for any fraction of a year.

(c) *Alternate Early Retirement Allowance.* Any Current 760 Member hired on or after July 1, 1984, who has completed twenty (20) years of continuous service but who has not reached age forty-five (45) shall be eligible for early retirement and to receive an immediate early retirement allowance which shall amount to two percent (2%) of such member's final average pay for each whole year of service.

(9) *Retirement for Disability.*

(a) *Service Connected Permanent and Total Disability.* Any Current 760 Member shall be eligible for retirement and to receive a disability retirement allowance, irrespective of length of service, if he or she becomes permanently and totally disabled from engaging in any gainful employment provided that such disability is shown to the satisfaction of the pension commission to have arisen out of and in the course of employment as defined in the Worker's Compensation Act. The amount of such service connected permanent and total disability allowance shall be determined as one hundred percent (100%) of the member's final average pay as defined in this subsection, less any amount or amounts received under the Worker's Compensation Act.

(b) *Non-Service Connected Permanent and Total Disability.* Any Current 760 Member shall be eligible for retirement and to receive a disability retirement allowance if he or she becomes permanently and totally disabled from engaging in any gainful employment provided the member has completed five (5) years of continuous service. The amount of said

non-service connected permanent and total disability allowance shall be computed in the same manner as a normal retirement allowance and shall amount to two and one half percent (2.5%) of final average pay for each whole year of service for the first twenty (20) years of continuous service, and two percent (2%) for each whole year of continuous service thereafter, except that a minimum allowance equal to twenty five percent (25%) of final average pay is provided.

(c) *Service Connected Special Disability.* Any Current 760 Member shall be eligible to receive, irrespective of length of service, a special disability retirement allowance if the member suffers a permanent disability which prevents the member from performing the full duties of his or her class but does not prevent the member from engaging in other gainful employment provided that such disability is shown to the satisfaction of the pension commission to have arisen out of and in the course of employment as defined in the Worker's Compensation Act. The amount of said service connected special disability allowance shall be determined as fifty percent (50%) of the member's final average pay, plus two percent (2%) for each year of continuous service in excess of twenty (20) years of continuous service, if any.

If a Current 760 Member has completed less than fifteen (15) years of continuous service at the time the disability arises, the initial special disability allowance shall be reduced by any income from gainful employment which, together with the special disability allowance, exceeds one hundred percent (100%) of the current rate of pay for an employee of the same or corresponding job classification held by the employee at

the time of retirement. For purposes of this subsection, any amount or amounts received under the Worker's Compensation Act shall not constitute income from gainful employment.

(d) *Non-Service Connected Special Disability.* Any Current 760 Member shall be eligible to receive a special disability retirement allowance if the member suffers a permanent disability which prevents the member from performing the full duties of his or her class but does not prevent the member from engaging in other gainful employment provided that the member has completed ten (10) years of continuous service at the time the disability arises. The amount of said non-service connected special disability allowance shall be computed in the same manner as a normal retirement allowance and shall amount to two and one half percent (2.5%) of final average pay for each whole year of service for the first twenty (20) years of continuous service, and two percent (2%) for each whole year of continuous service thereafter, except that a minimum allowance equal to twenty five percent (25%) of final average pay is provided.

If a Current 760 Member has completed less than fifteen (15) years of continuous service at the time the disability arises his or her non-service connected special disability allowance is determined each year by reducing his initial allowance by the same specified percentage of the excess, if any, of the member's earnings from gainful employment over the amount of income which a Social Security beneficiary is entitled to earn without causing a reduction in his Social Security benefits.

(e) *Applications.* Applications for allowances payable to disabled members shall be filed within one year after the incurring of the disability, which shall be the date the member is notified that it has been medically determined that the member has suffered a disability which will prevent him or her from performing the full duties of his or her class.

(f) *Disability Statements.* Every member retired on account of disability under any provision of this subsection shall, by March 31st, of each year, file with the pension commission a sworn statement of all earnings received by the member from employment of any kind during the year ending on the 31st of December preceding the filing of such statement, or, if no such earnings have been received, a sworn statement to that effect. If any member shall fail to make the report required herein, the payment of his or her disability retirement allowance shall be suspended until such report has been filed.

(10) *Survivorship Benefits.* Survivorship benefits are payable to the member's surviving spouse and qualified dependent children. For purposes of this subsection, the term "surviving spouse" shall mean the spouse of a member who shall have been married to and living with the member at the time of the member's death, if the member dies while in active service, or who shall have been married to the member prior to retirement and who shall have been married to and living with the member at the time of the member's death, if the member dies after retirement. For purposes of this subsection, the term "qualified dependent children" shall mean any unmarried children under the age of eighteen (18), or over the age of eighteen (18) if physically or mentally incapacitated from engaging in gainful employment.

(a) *Service Connected Cause of Death.* If a Current 760 Member dies before retirement from a cause arising out

CHARTER

of and in the course of employment, as defined in the Worker's Compensation Act, the member's surviving spouse shall receive a survivor's allowance equal to fifty percent (50%) of the member's final average pay at the time of death, payable monthly until the surviving spouse's death or remarriage. If said member leaves qualified dependent children, each such child shall receive a survivor's allowance equal to ten percent (10%) of the member's final average pay, payable monthly until the child reaches age eighteen, marries or dies, whichever comes first. If the member leaves no surviving spouse, then each such surviving qualified dependent child shall receive fifteen percent (15%) of the member's final average pay, payable monthly until the child reaches age eighteen, marries or dies, whichever comes first. The total annual survivor's allowances payable under this subsection to a surviving spouse and children shall not exceed seventy five percent (75%) of the member's final average pay. In addition, the total annual survivor's allowances payable under this subsection, plus Worker's Compensation payments, if any, shall not exceed one hundred percent (100%) of the member's final average pay at the time of death. If a member dies after the member retires with a service connected disability allowance, the above survivor's benefits are payable to the member's survivors so long as they qualify for weekly Worker's Compensation benefits, the amounts of such allowances being based on the member's final average pay at the time of his retirement. Any allowances paid under this subsection shall be in lieu of the refund of the member's contributions, except that, if the total allowances paid under this subsection, should be less than the refund of contributions

which would otherwise have been paid, than [then] the excess of said refund over said allowances shall be paid in accordance with the provisions of this subsection governing the refund of contributions.

(b) *Non-Service Connected Cause of Death.* If a Current 760 Member dies before retirement from a cause other than one arising out of and in the course of employment, as defined in the Worker's Compensation Act, the member's surviving spouse shall receive a survivor's allowance equal to twenty five percent (25%) of the member's earnings during his last twelve (12) months of employment at full salary, payable monthly until the surviving spouse's death or remarriage. If said member leaves qualified dependent children, the first such child shall receive, until age eighteen (18), marriage or death, whichever comes first, a monthly survivor's allowance of One Hundred Dollars ($100.00). In addition, each additional qualified dependent child shall receive, until age eighteen (18), marriage or death, whichever comes first, a monthly survivor's allowance of Fifty Dollars ($50.00). Any survivor's allowance or allowances provided to qualified dependent children shall be payable to the surviving spouse if the children are in his or her care, or otherwise to the guardian of the children. The total annual survivor's allowances payable to the surviving spouse and qualified dependent children shall not exceed one hundred percent (100%) of the member's final average pay at the time of his death or retirement.

(11) *Refund of Member Contributions.* Any Current 760 Member leaving the employment of the city before becoming eligible for retirement may withdraw, on request to the pension commission, the total of all

contributions to the fund made by him or her without interest. If the member is not vested, such request for a refund of contributions must be made within ten (10) years of separation from city service, or the member's contributions shall revert to the fund. In the case of the death of a member, the member's contributions, less any retirement allowances paid to the member, and less any survivors allowances paid to a surviving spouse and/or qualified dependent children, shall be paid from the fund on the order of the pension commission to the beneficiary or beneficiaries, if any, named by such member. If no named beneficiaries survive the member or his or her eligible survivors, than [then] the refund shall be made to the executors or administrators of such member or his or her spouse, as the case may be, except that, if the amount is less than one thousand dollars (1,000.00), the refund may be made, at the option of the pension commission, in accordance with the terms of Section 45-266 of the General Statutes or any amendment thereto. A member can designate his or her contributions beneficiary by completing a form which may be obtained and filed in the City Treasurer's office.

(12) *Continuity of Service.* For purposes of determining the eligibility of Current 760 Members to receive retirement allowances, periods of absence of not more than ninety (90) days in any one (1) calendar year shall not be considered as breaking continuity of service. Periods of absence of more than ninety (90) days by reason of a leave of absence granted by the council, or where the absence is occasioned by disability involving the regular attendance of a physician, shall not be considered as breaking continuity of service. Any period of absence shall not be included in determining the amount of any retirement allowance provided herein. After any period of absence which is considered to break continuity of service, a returning member must complete ten (10) years of continu-

ous service before becoming otherwise eligible for any retirement allowance. A member returning from such a period of absence who has previously withdrawn his or her contributions from the fund, may repurchase his or her prior service credits by repaying said contributions plus interest.

(13) *Assignments prohibited.* Any assignment by a member, beneficiary or spouse of any allowance or benefit payable under the terms of this subsection shall be void. Each such allowance and benefit shall be for the support of the member, beneficiary or spouse entitled thereto and shall be exempt from the claims of creditors of such member, beneficiary or spouse, provided, if the provisions of this subsection are contrary to the laws governing a particular set of circumstances, as to that set of circumstances, any allowance or benefit payable hereunder shall be exempt to the maximum extent permitted by law.

(14) *Service Credit.* "The pension includes credit for all service, including any period of military or related service during World War II, for which the member has paid the required contribution to MERF Fund. It also includes credit for his period of service in the Armed/Forces or during the Korean Conflict, from June 27, 1950 to October, 1953, provided he was employed by the city at the time of entry into such service."

(15) *Military Service Credit.* Any Current 760 Member who served in the active service of any branch of the armed forces of the United States during any part of the times set forth in Section 27-103 of the General Statutes may purchase credit for up to four (4) years of that military service. Such credit shall be purchased at the rate payable at the time of the member's entry into city service, with interest at the rate of seven percent (7%) per annum. The period of such service for which the member receives credit shall be counted for the purpose of computing the amount

CHARTER

of his or her retirement allowance, provided such member shall have completed ten (10) years of continuous service or fifteen (15) years of active aggregate service with the City of Hartford, or shall be retired prior thereto due to disability incurred in the course of his or her employment. This provision shall not be used to establish eligibility for retirement allowances but shall be used as additional service credits for members who are qualified or become qualified for normal or disability retirement allowances. Each additional year of credited service purchased pursuant to this subsection shall be equal to two and one half percent (2.5%) of final average pay. Employees hired on or after July 1, 1984 shall not be permitted by the terms of this subsection to exceed the seventy percent (70%) maximum of their final average pay.

Employees hired on or before April 27, 1992, must complete the purchase of military service credits before April 27, 1993, provided, however, that employees who complete the purchase after April 27, 1993 may do so with a two percent (2%) per year penalty. All other employees must complete the purchase of military service credits within one (1) year of completion of the employee's probationary period, provided, however, that employees who complete the purchase of military service credits after one (1) year may do so with a two percent (2%) per year penalty. If Section 27-103 of the General Statutes is amended to include additional conflicts, employees may purchase said additional military time within one (1) year from the effective date of the amendment, provided, however, that employees who complete the purchase after one (1) year may do so with a two percent (2%) per year penalty. Any purchases period of military service credit which is less than a year, may be added to city service in order to make a complete year.

(16)  *Sick Leave Exchange.* A Current 760 Member may, upon retirement, and prior to any sick pay formula reduction, exchange a portion of his or her accumulated sick leave for up to four (4) years of additional pension service credit for the purpose of computing the amount of the member's retirement allowance. Such additional service credits shall not be used for establishing eligibility for retirement benefits, but shall be used as additional service credit for employees who are qualified or become qualified for normal or disability retirement benefits. Additional service credit may be purchased from accumulated sick leave at the rate of twenty (20) days of accumulated sick leave for each year of pension service credit, and such credit must be purchased in whole years only. Each additional year of service credit acquired pursuant to this subsection shall amount to two and one half percent (2.5%) of final average pay. Employees hired on or after July 1, 1984 shall not be permitted by the terms of this subsection to exceed the seventy percent (70%) maximum of their final average pay.

(17)  *Transfers from other departments.* Any employee who transfers to the Fire Department from other city departments and who becomes represented by Local #760, International Association of Fire Fighters, shall receive coverage under the provisions of the municipal employees' retirement fund as such provisions relate to other Current 760 Members, provided that employees so transferred shall be eligible for normal retirement allowances under their new coverage upon completion of twenty (20) years of service with the city and provided further that such employees must complete at least ten (10) years of service in the Fire Department and, at the time of transfer, must pay into the fund a sum of money equal to the difference between what the employee has paid into the fund and what the employee would have paid into the fund had his entire service been with the Fire Department, together with interest thereon as determined by the pension commission.

(18)  *Transfers from the municipal employees' retirement fund.* Any Current 760 Member leaving the employment of the City of Hartford or other covered employment

HARTFORD MUNICIPAL CODE

may transfer, if he is eligible for such transfer to the employees' retirement system of the federal government of the United States, or the retirement system of a state or any political subdivision thereof within the United States, which is being operated on an actuarial basis with contributions made during the active service of new members which are computed to be sufficient to provide the reserves needed to cover the retirement benefits payable on their account. Such transfer may not become effective, however, unless an appropriate agreement of reciprocity is executed. Upon approval of the pension commission, the actuarial reserve for the member's annuity benefit, as determined by the pension commission shall be transferred to the retirement system under which the employee will be covered in his new position.

(19) *Transfers to the municipal employees' retirement fund.* Any person who has not attained his sixtieth birthday and who is a member of the employees' retirement system of the federal government of the United States or the retirement system of a state or any political subdivision thereof within the United States which is being operated on an actuarial basis with contributions being made during the active service of new members which are computed to be sufficient to provide the reserves needed to cover the retirement benefits payable on their account may, upon approval of the pension commission, transfer his membership to the municipal employees' retirement fund upon accepting employment with the City of Hartford; provided, however, such transfer may not become effective unless an appropriate agreement of reciprocity is executed. In order to transfer credit for such prior service, the member shall pay or cause to be paid into the municipal employees' retirement fund the amount of money required, as determined by the pension commission to purchase in full such credited service. In no event shall there be any

city contributions made toward the purchase of such service. Whenever such employee enters the municipal employees' retirement fund, he must elect within thirty (30) days of entrance into said fund to purchase credit for such prior service. If the pension commission approves the payment of money due on an extended payment basis, interest at a rate to be determined by the pension commission, but not exceeding six and one-half percent (6.5%) per annum, may be charged. No credit under the municipal employees' retirement fund shall be granted, however, for any period of prior service for which the employee is either receiving a retirement benefit or has retained a vested benefit.

(20) *Effect of repeal.* In case of the repeal of this subsection [(cc)], the liability of the city to members of the municipal employees' retirement fund shall be limited to the amount of their respective contributions thereto, provided all retirement allowances vested by retirement shall be paid in full in accordance with the provisions of this section.

(21) *Limitation on credited service.* Notwithstanding any other provision of this subsection [(cc)] or of this article, any credited service earned, given or purchased by a Current 760 Member may not be used for qualifying that member for retirement benefits before normal retirement age and at least five (5) years of actual city service.

(22) *Disputes.* Any dispute pertaining to benefits or allowances provided in this subsection shall not be subject to the grievance procedure.

(dd) *Amendments required to conform to Section 401(a) of the Internal Revenue Code of 1986, as amended (the "Code") and related provisions.* The provisions of this subparagraph (dd) shall control, notwithstanding any provision of this chapter to the contrary:

(i) As required under Section 401(a)(1) and (2) of the Code, no part of the corpus or income of the fund may be used for, or diverted to, purposes other than for the exclusive benefit of its members and their beneficiaries prior to the satisfaction of all liabilities of the fund thereto; it being the intent of this chapter that all contributions which have been and hereafter may be made to the fund shall be made for the purpose of distributing the corpus and income of the fund to such members and their beneficiaries in accordance with the terms governing the payment of benefits from the same. For purposes of this subparagraph (dd), the terms "beneficiary" and "beneficiaries" shall mean and include (a) qualified surviving spouses, (b) any alternate payees under any domestic relations orders which are determined by the commission to constitute qualified domestic relations orders in accordance with regulations adopted by the commission with respect to such matters, and (c) such other persons as lawfully constitute beneficiaries pursuant to Section 3(j) of this chapter or other proper authority.

(ii) As required by Section 401(a)(9) of the Code, effective July 1, 1997, any member who is eligible to receive any benefit payments from the fund shall commence receiving the same no later than his or her Required Beginning Date; likewise, any member who is not eligible to receive any benefit payments from the fund or who, although eligible, prefers to withdraw his or her contributions to the fund in lieu of receiving any benefits, shall commence receiving the same no later than on his or her Required Beginning Date. For purposes of this subparagraph (dd)(1), a member's "Required Beginning Date" shall mean the April 1 following the calendar year in which the member attains age 70 1/2 or April 1 following the calendar year in which the member retires, whichever is later.

(iii) Notwithstanding anything to the contrary which is set forth in this chapter, no member shall be entitled to receive a pension benefit in excess of the maximum amount which is permitted under the Code in order for both the fund, and its members' interests therein, to retain the tax favored treatment provided by the Code thereto (herein, the "IRC Maximum Benefit"). Without limiting the generality of the foregoing:

(a) as required by Section 401(a)(16) of the Code (and except as otherwise provided in that section in respect of ancillary benefits and/or rollover contributions, if any, as apply to any member), no member shall be entitled to receive any benefit from the fund if, when expressed as an 'annual benefit' as provided in Code Section 415(b)(2), such annual benefit is greater than the Maximum Allowable Annual Benefit, as herein defined, as the same may be adjusted by the Secretary of the Treasury from time to time pursuant to Section 401(a)(16) of the Code; and

(b) as required by Section 401(a)(17) of the Code, the total amount of compensation paid to any employee in any year which may be taken into account in the calculation of any benefit which may be due to any member or any of his or her beneficiaries shall not exceed the Maximum Allowable Annual Compensation, as herein defined, as the same may be adjusted by the Secretary of the Treasury from time to time pursuant to Section 401(a)(17)(B) of the Code.

For purposes of this subparagraph (dd)(3[iii]), the term "Maximum Allowable Annual Benefit" shall mean the maximum annual benefit which may be paid to a member from a qualified trust pursuant to Sections 401(a)(16) and 415(b)(2) of the Code, while the term "Maximum Allowable Annual Compensation" shall mean the maximum annual compensation which may be taken into account in the context of calculating any benefit due to any member of a qualified trust pursuant to Section 401(a)(17) of the Code. As provided in the Code, effective with the plan year commencing July 1, 2002, the Maximum Allowable Annual Benefit payable to any member during any plan year is $160,000, while the Maximum Allowable Annual Compensation which may be included in the calculation of any member's benefit is $200,000.

(iv) Actuarial assumptions. As required by Section 401(a)(25) of the Code, whenever any benefit otherwise payable under this chapter is required to be determined on the basis of actuarial equivalency, the analysis used in establishing that benefit shall be based upon assumed mortality rates as set forth in the "UP-94 Mortality Table Projected by Scale AA to 2011" with compounded interest at the rate of eight percent (8%) per annum.

(v) Effective January 1, 1993, except to the extent that any contributions (and interest on those contributions, if any) are required to be paid to a member or a beneficiary pursuant to Subparagraph (dd)(ii) above in conformance with Code Section 401(a)(9), any member or beneficiary who elects to be paid any member's contributions (and interest on those contributions, if any) in lieu of receiving any benefits from the fund may elect to have such contributions (and interest on those contributions, if any) paid directly to another qualified retirement plan, subject to and in accordance with the terms of this subparagraph (dd)(v). Any such distribution shall be effected on behalf of a mem-

ber or a beneficiary if he or she specifies the qualified retirement plan to which such distribution is to be made in writing (in such form and within such time period as may be prescribed by the commission). Any contributions (and interest on those contributions, if any) with respect to which any member or beneficiary makes the election provided by this subparagraph (dd)(v) shall be distributed thereto in the form of a direct trustee-to-trustee transfer to the qualified retirement plan so specified. For the purposes of these direct rollover provisions, a qualified retirement plan shall mean (A) a qualified defined benefit or defined contribution plan, an individual retirement account, effective January 1, 2002, an annuity contract described in section 403(b) of the Code and an eligible plan under section 457(b) of the Code which is maintained by a state, political subdivision of a state (or any agency or instrumentality of a state or political subdivision of a state), which (B) effective January 1, 2002, in any case, agrees to separately account for amounts transferred into such plan from this plan, as contemplated by Code Section 401(a)(31)(C).

(vi) As contemplated by Section 457(e)(17) of the the of the Code, effective July 1, 2002, any member who is a participant in the city's Deferred Compensation Plan maintained under Section 457 of the Code (the "City's 457 Plan") may transfer all or any portion of the amounts held in his or her account in such plan to the fund in order to pay for any pension service credit which said member otherwise is eligible to, and has elected to, purchase with the fund to the extent the Code and the provisions governing the City's 457 Plan permit such a transfer to be made from that plan for that purpose; it being the intent of this provision that the fund shall accept such transfers for such purposes as permitted under Code Sections 401(a)(31)(E) and 457(e)(17). Any transfer of moneys from the City's 457 Plan which is received by the fund for said purpose shall be separately accounted for

by the commission based on the extent to which such sums otherwise would or would not be includable in the member's gross income if they were distributed from the City's 457 Plan directly to the member.

(vii) The provisions set forth in subsections (v) and (vi) above are intended to reflect certain provisions of the Economic Growth and Tax Relief Reconciliation Act of 2001 ("EGTRRA"). These provisions are intended as good faith compliance with the requirements of EGTRRA and are to be construed in accordance with EGTRRA and any guidance issued thereunder. These provisions shall supersede any other provisions governing the fund to the extent those other provisions are inconsistent with the terms set forth in subsections (v) and (vi) above.

(ee) *Pension rights upon reemployment by the city after periods of service in the uniformed services.*

(i) For purposes of this subparagraph (ee), the following terms shall have the meaning ascribed thereto below:

(1) "Service in the uniformed services" has the same meaning ascribed to that phrase in the Uniformed Services Employment and Reemployment Rights Act of 1994, as amended ("USERRA"), 38 U.S.C. Section 4301 et seq., and means the performance of duty on a voluntary or involuntary basis in a uniformed service under competent authority and includes (without expansion or imitation) active duty, active duty for training, initial active duty for training, inactive duty training, full-time National Guard duty, and a period for which a person is absent from a position of employment for the purpose of an examination to determine the fitness of the person to perform any such duty.

(2) The term "uniformed services" has the same meaning ascribed to that phrase in USERRA and includes (without expansion or imitation) service in: any branch of the Armed Forces of the United States; the Army National Guard and the Air National Guard; the commissioned corps of the Public Health Service; and any other category of service designated as uniformed service by the President of the United States in the time of war or national emergency.

(3) "Qualified USERRA Service" consists of any service in the uniformed services by any member for or by reason of which the city is required under USERRA to permit said member to provide pension service credit or other rights with the fund upon his or her reemployment with the city. In no event shall Qualified USERRA Service include Disqualified USERRA Service.

(4) "Disqualified USERRA Service" means any service in the uniformed services from or for which a member (A) left on other than honorable conditions (including, but not limited to, under or with a dishonorable or bad conduct discharge), or (B) was dismissed or dropped from the rolls pursuant to 10 U.S.C. Sections 1161 (a) or (b).

(5) A member's "Effective USERRA Earnings" shall be (A) the total earnings (including, but not limited to, overtime pay, private duty pay, holiday pay, sick leave and vacation pay, and shift differential pay) the member would have received but for his or her being absent during the period of his or her Qualified USERRA Service, or (B) in the event that the pension commission cannot determine that amount with reasonable certainty, the product of (i) such member's USERRA Effective Weekly Rate of Pay, times (ii) the number of weeks and parts thereof during which said member was absent performing Qualified USERRA Service.

(6) A member's "USERRA Effective Weekly Rate of Pay" shall equal the quotient of (A) the member's total earnings during his or her USERRA Measuring Period, divided by (B) the number of weeks and parts thereof in the member's USERRA Measuring Period.

(7) A member's "USERRA Measuring Period" shall mean that period of time, expressed in weeks, but not exceeding fifty-two (52) weeks in length, during which the member was employed by the city immediately prior to his or her USERRA Commencement Date.

(8) A member's "USERRA Commencement Date" is that day following his or her last day of employment with the city before he or she began his or her Qualified USERRA Service.

(9) "USERRA Reemployment Date" means that date on which a member is first reemployed by the city pursuant to or otherwise in accordance with USERRA after having performed any Qualified USERRA Service.

(ii) Effective December 12, 1994, any member who leaves the service of the city in order to serve in any of the uniformed services shall have the opportunity to purchase pension service credit with the fund for his or her Qualified USERRA Service upon reemployment by the city pursuant to, or otherwise in accordance with, USERRA. A member's eligibility to obtain pension service credit and/or any other rights under this subparagraph (ee) shall be established by such documentary and/or other evidence as is reasonably required for that purpose by the pension commission consistent with the requirements of 38 U.S.C. Section 4312(f).

(iii) Upon approval by the commission, any member seeking to obtain pension service credit with the fund for his or her Qualified USERRA Service shall pay the fund such amounts as are equivalent to those which the member would have contributed in the form of employee contributions during the period of his or her Qualified USERRA Service had the member, during that period of time, been employed by the City and paid his or her Effective USERRA Earnings as herein defined.

(iv) Any contributions required to be made by any member pursuant to this subparagraph (ee) may be paid in a lump sum, or, a the option of the member, in various increments, prior to the expiration of the Prescribed Time Period. For purposes of this provision, the "Prescribed Time Period" in which any contributions must be paid shall equal the lesser of (A) three (3) times the period of the member's Qualified USERRA Service, or (B) five (5) years, commencing, in either case, with the member's USERRA Reemployment Date. No contributions which are required to be made by any member pursuant to this subparagraph (ee) will be "picked up" and paid by the city of Hartford pursuant to the provisions of Section 3(y) of this Chapter.

(v) The period of any Qualified USERRA Service for which pension service credit is purchased by any member pursuant to this subparagraph (ee) shall be combined with those periods of the member's continuous service occurring immediately before and after the member's Qualified USERRA Service, and, as combined, deemed to constitute one (1) period of continuous city service for all purposes under this chapter. Additionally, and regardless of whether any member has purchased pension service credit under this subparagraph (ee), any period of absence during which any member has provided Qualified USERRA Service (A) shall not cause any member to suffer any "break" in his or her continuity of service, and (B) shall be included in the computation of the member's continuous city service for the purpose of establishing any vested (i.e. nonforfeitable) rights to any benefits,

as well as his or her eligibility to receive any benefits, which the member otherwise has accrued (or thereafter accrues) under this chapter. Except as otherwise provided in the preceding sentence, no member shall receive pension service credit or other rights under or in connection with the fund for any period of his or her Qualified USERRA Service (and no period of such service shall therefore be included in the computation of any member's city service) unless, and then only if and to the extent, he or she purchases pension service credit therefor in accordance with this subparagraph (ee). Without limiting the generality of the foregoing, no member shall be entitled to purchase or otherwise be given pension service credit for any period before or after his or her Qualified USERRA Service during which he or she has, but fails to exercise or delays in exercising, his or her reemployment rights under USERRA.

(vi) The provisions of this subparagraph are intended to implement, and only implement, the requirements of USERRA. Accordingly, no right or benefit not otherwise required to be provided to any member with regard to his or her rights and/or benefits in or with respect to the fund shall be deemed to be conferred hereby. Likewise, in the event any provision of this subparagraph (ee) conflicts with or is otherwise in contravention of the requirements of USERRA, the provisions of USERRA shall control. The rights and benefits conferred by this subparagraph (ee) shall be in addition to any other rights or benefits any member has or may obtain to purchase pension service credit for the period of any military service under any other provision governing the accrual or payment of benefits of or from the fund, providing, however, that no member shall be entitled to obtain pension service credit (expressed in terms of partial or whole years of service) under any of said provisions for any period of military or other service to the extent he or she has purchased and been awarded pension service credit for such service under this subparagraph (ee).

(vii) Nothing in this subparagraph (ee) shall be deemed to entitle any member to receive a retirement allowance in excess of that amount which may be specified to be, or which operates as, a maximum limit on the amount of any benefit which may be paid to such member pursuant to any other provisions of this chapter. In the event that any such member's retirement allowance would exceed any such limit if he or she was given credit for any Qualified USERRA Service purchased thereby, the fund shall refund such member the amount of his or her contributions applicable to thereto with interest at the rate of three (3) percent per annum from the date such contributions were fully paid until they are refunded by the pension commission.

(Sp. Laws 1947, Act No. 30, Ch. XVI, § 3; Sp. Laws 1957, Act No. 347, § 1; Ord. of 12-8-58; Ord. No. 28-67, 11-7-67; Ord. No. 24-68, 6-24-68; Ord. No. 25-68, 6-24-68; Ord. No. 26-68, 6-24-68; Ord. No. 27-68, 6-24-68; Ord. No. 28-68, 6-24-68; Ord. No. 46-68, 9-23-68; Ord. No. 47-68, 9-23-68; Ord. No. 48-68, 9-23-68; Ord. No. 16-69, 6-2-69; Ord. No. 20-70, 6-22-70; Ord. No. 21-70, 6-22-70; Ord. No. 24-71, 6-28-71; Ord. No. 29-71, 8-18-71; Ord. No. 14-72, 5-8-72; Ord. No. 20-73, 11-13-73; Ord. No. 19-74, 4-22-74; Ord. No. 21-74, 7-8-74; Ord. No. 28-79, 11-13-79; Ord. No. 15-80, 8-12-80; Ord. No. 1-82, 1-4-82; Ord. No. 2-82, 1-4-82; Ord. No. 3-82, 1-4-82; Ord. No. 4-82, 1-4-82; Ord. No. 22-83, 6-27-83; Ord. No. 23-83, 9-12-83; Ord. No. 24-83, 9-12-83; Ord. No. 3-84, 2-14-84; Ord. No. 28-84, 7-9-84; Ord. No. 35-84, 10-22-84; Ord. No. 37-85, 11-25-85; Ord. No. 35-86, 10-14-86; Ord. No. 36-86, §§ 1, 2, 10-27-86; Ord. No. 37-86, 10-27-86; Ord. No. 27-88, 6-13-88; Ord. No. 62-88, 9-27-88; Ord. No. 75-88, 12-12-88; Ord. No. 76-88, 12-12-88; Ord. No. 77-88, 12-12-88; Ord. No. 78-88, 12-12-88; Ord. No. 5-89, 2-27-89; Ord. No. 6-89, 2-27-89; Ord. No. 7-89, 2-27-89; Ord. No. 8-89, 2-27-89; Ord. No. 16-89, 4-10-89; Ord. No. 17-89, 4-10-89; Ord. No. 18-89, 4-10-89; Ord. No. 105-89, 10-23-89; Ord. No. 106-89, 10-23-89; Ord. No. 111-89, 12-28-89; Ord. No. 112-89, 12-28-89; Ord.

No. 113-89, 12-28-89; Ord. No. 114-89, 12-28-89; Ord. No. 115-89, 12-28-89; Ord. No. 68-90, 10-9-90; Ord. No. 42-91, 7-8-91; Ord. No. 2-92, 1-13-92; Ord. No. 3-92, 11-13-92; Ord. No. 31-92, 6-22-92; Ord. No. 36-92, 7-21-92; Ord. No. 38-92, 9-14-92; Ord. No. 1-93, 1-4-93; Ord. No. 3-93, 1-25-93; Ord. No. 14-93, 6-14-93; Ord. No. 15-93, 6-14-93; Ord. No. 17-93, 6-14-93; Ord. No. 23-93, 7-12-93; Ord. No. 25-93, 7-12-93; Ord. No. 26-93, 7-12-93; Ord. No. 34-93, 8-9-93; Ord. No. 33-94, 9-26-94; Ord. No. 5-95, 5-22-95; Ord. No. 6-95, 5-22-95; Ord. No. 1-97, 1-13-97; Ord. No. 6-97, 3-24-97; Ord. No. 7-97, 3-24-97; Ord. No. 22-97, 11-24-97; Ord. No. 50-98, 10-6-98; Ord. No. 51-98, 10-6-98; Ord. No. 52-98, 10-6-98; Ord. No. 62-98, 12-14-98; Ord. No. 4-99, 1-25-99; Ord. No. 10-00, 4-24-00; Ord. No. 22-02, 6-10-02; Ord. No. 23-02, 6-10-02; Ord. No. 24-02, 6-24-02)

### Sec. 4. Statement of earnings by employees retired on account of disability.

Every employee of the city retired on account of disability under any provisions of this chapter shall, by March 31st of each year, file with the pension commission a sworn statement of all earnings received by him or her from employment of any kind during the year ending on the thirty-first of December preceding the filing of such statement, or, if no such earnings have been received, a sworn statement to that effect. If any employee shall fail to make the report required above, the payment of his retirement allowance shall be suspended until such report has been filed.
(Sp. Laws 1947, Act No. 30, § 4; Ord. No. 28-67, 11-7-67; Ord. No. 6-93, 2-22-93)

### Sec. 5. Administration.

(a) For purposes of this section, the following terms shall have the meaning ascribed thereto below:

(i)  "Savings accounts" shall mean any of such deposits in or accounts with (including, without limitation, certificates of deposit issued by) any banking institutions as referenced in C.G.S. Sections 45a-203 (a)(2) and (3).

(ii)  "Equity investments" shall mean and include any and all securities, real property and other investments (including, without limitation, common stocks, and shares of (or units in) any closed or open-end investment companies or trusts) except the following: (A) cash and cash-equivalent securities, (B) savings accounts, (C) any corporate or government bonds, (D) mortgages, or (E) other fixed-income instruments or securities;

(iii)  A "qualified custodian" shall be any state bank, trust company, state bank and trust company or national banking association located in the states of Connecticut or New York or in the commonwealths of Massachusetts or Pennsylvania which is a member of the Federal System and whose capital, surplus and undivided profits in the aggregate are not less than fifty million dollars;

(iv)  "Administrative expenses" shall mean and include (A) the salaries of all personnel hired by the pension commission, (B) that portion of the salaries, benefits and other compensation of those other city officials and employees who provide services to the funds to the extent their duties are fairly allocable to performing such work as determined by the pension commission, and (C) the cost and expense of all goods and services (other than investment expenses) which are procured on the funds' behalf; and

(v)  "Investment expenses" shall mean and include (A) the cost and expense of any and all custodial arrangements and investment advisory, consultant and management services, and (B) any and all costs and expenses such as brokerage fees and commissions which are typically added to, or subtracted from, the purchase price, or proceeds realized from the disposition, of any investment.

(b) In addition to its other responsibilities hereunder, the pension commission shall administer any and all of the city's other retirement and savings plans and benefits, which, together with

CHARTER

the funds, shall be known as the city's retirement system. It shall appoint a plan administrator of, and, with the approval of the corporation counsel, a general counsel for, the system. It also shall appoint a chief investment officer and, subject in all cases to the provisions of subparagraphs (e) and (j) below, may appoint and remove such other employees as it deems necessary or desirable to carry out its responsibilities hereunder. At the pension commission's election, the general counsel may serve either as an employee or, pursuant to subparagraph (h) below, an independent contractor, and, if and so long as he or she serves as an employee, also as the plan administrator. Except as otherwise provided in this section, the pension commission shall have the sole authority for determining the titles, qualifications, duties, compensation and terms of office or employment of each official or employee which is appointed by it. All such personnel who are employed by the pension commission shall, however, be members of the Fund and entitled to the same retirement and insurance benefits as nonbargaining unit employees of the city in the unclassified service, and, at the discretion of the pension commission, other benefits similar to nonbargaining unit employees of the city in the unclassified service; providing that all the employer contributions required to fund or otherwise purchase or pay for such benefits, as well as the salaries and any other compensation payable to such personnel, shall be paid from the income of the funds. The pension commission shall be the sole authority capable of removing any employee which it has appointed from office. The pension commission shall only exercise such authority after (i) an employee has been served with written notice of the pension commission's intent to consider removing him or her therefrom, containing a clear statement of the grounds for such removal and of the time and place, not less than ten (10) days after the service of such notice, at which he or she will be given the opportunity to be heard thereon, and (ii) such hearing is then concluded. After such hearing, which shall be public at the option of such employee, the action of the pension commission shall be final. The pension commission may suspend any such employee from duty for not more than thirty (30) days pending such final action at any time after the aforesaid notice has

been served thereon. The pension commission shall select, appoint, retain and discharge any employees within its jurisdiction only in accordance with the standard of care set forth in subparagraph (e) below.

(c) The plan administrator shall be the head of the retirement system and, in that capacity, shall have responsibility for implementing the administration of the provision of benefits from the funds, including, without limitation, the calculation and payment thereof, and shall perform such other duties relative to the funds as may be prescribed by the pension commission. Such duties may include, without limitation, providing such assistance to the city treasurer in the performance of any of his or her duties under this section as is required by the pension commission.