No changes shall be made in the nature or level of any pension benefits provided to any members of the funds, or to the qualifications for membership, unless the plan administrator is first given an opportunity to comment on the impact any proposed changes would have on the interpretation, administration or other matters affecting he provision of benefits from the funds, any of which comments shall be provided in writing within ten (10) days of the city manager's written request therefor or such additional period of time as is reasonably required in the circumstances. The general counsel shall represent the pension commission and the system in all legal proceedings affecting the same and provide such advice and counsel to the pension commission, plan administrator and city treasurer in connection with the system as the pension commission directs, providing, however, that no claims which are made or actions which are brought by or against, or which otherwise affect, the system, or any one or more of its plans or funds, or any person or body acting on their behalf shall be compromised without the approval of each of the pension commission, corporation counsel and the city council.

(d) The city treasurer shall have the care and custody of all of the assets in all of the pension funds and, with the approval of the pension commission and subject to the other provisions of this section, shall have power to invest and reinvest the same in securities, real property and other investments permissible by law for the investment of trust funds pursuant to the Connecticut Uniform Prudent Investor Act, Public Act 97-140; providing, however, that no more than sixty percent (60%) of the assets of any fund shall be invested in equity investments, at any one time. For purposes of making the foregoing calculations only, assets shall be taken at book value (carrying value) rather than market value, and assets held by insurance companies on behalf of any fund, including actuarial reserves for annuity contracts, shall be included within the fixed dollar portion of the account. Any investment which was made prior to April 27, 1998, and any investment which complies with the provisions of this section in effect at the time it is made, may be retained even though its purchase otherwise would be prohibited hereunder unless the standard of care set forth in subparagraph (e) below requires its sale or other disposition.

(e) The city treasurer, plan administrator and the pension commission shall be fiduciaries of the system and, in that capacity, shall fulfill their duties hereunder with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent person acting in like capacity and familiar with such matters would then use in the conduct of an enterprise of like character and purpose. Without limiting the generality of the foregoing, the city treasurer, plan administrator and the pension commission shall discharge their duties:

(i) Solely in the interests of, and for the purpose of providing benefits to, participants and beneficiaries of the applicable fund or plan consistent with the other provisions of this chapter and applicable law;

(ii) Impartially, taking into consideration any differing interests of various participants and beneficiaries within each fund and plan;

(iii) By diversifying the investments of the assets of the funds so as to minimize the risk of large losses unless under the circumstances it is clearly prudent not to do so;

(iv) Except to the extent they may be paid by the city as contemplated by subparagraphs (g) and (i) below, incurring and paying all reasonable and appropriate expenses of administering the funds and plans; and

(v) In accordance with a good faith interpretation of the terms of this chapter and other applicable law.

(f) Circumstances which shall be considered by the city treasurer, pension commission and any other fiduciaries when investing and managing any funds' assets also shall include, but not be limited to the following, to the extent relevant thereto:

(i)  General economic conditions;

(ii) The possible effect of inflation or deflation;

(iii) The expected tax consequences, if any, of investment decisions, strategies and distributions;

(iv) The role that each investment or course of action plays within a fund's overall portfolio, which, except as otherwise provided in this section, may include financial assets, interests in closely held enterprises, tangible and intangible personal property and real property;

(v) The expected total return from income and the appreciation of capital;

(vi) Related trusts and other income and resources of the participants and beneficiaries;

(vii) Needs for liquidity, regularity of income and preservation or appreciation of capital;

(viii) An asset's special relationship or special value, if any, to the purposes of the fund;

(ix) The size and actuarial funding status of the fund; and

(x) The nature and estimated duration of the fund.

The fiscal integrity and economic well being of the city being of primary significance in its ability to ultimately fulfill its obligations to financially support the funds, the city treasurer and the pension commission, also may, when possible and consistent with their other fiduciary duties imposed hereunder and applicable law, consider whether the investment of any assets of, or expenditure of any income from, any fund will enhance or promote the general welfare of the city and its residents.

(g) The city treasurer, with the approval of the pension commission, may provide by contract with any qualified custodian for the care and custody of any or all securities and other assets of the pension funds by such custodian, or for investment advice with respect to such funds, or for both such care and custody and investment advice. Any securities held by the city treasurer or any qualified custodian also may, in turn, be deposited in a clearing corporation subject to and in accordance with the provisions of Section 45a-208 of the connecticut General Statutes. Subject to approval by the pension commission, each of the city treasurer and plan administrator also may procure such other goods and services (including, but not limited to, the services of investment counsel, investment advisors, investment managers, actuaries, and pension benefit administrators) as may be reasonably required by them in connection with the efficient and effective administration of, or investment of any of the assets in, the funds. Subject to approval by the pension commission and the corporation counsel, the general counsel also may procure additional legal and other services as may be reasonably required in connection with his or her representation of the funds.

(h) The selection of and award of contracts to any persons or entities which are to provide any goods or services to any plan or fund shall be governed by the standard of care set forth in subparagraph (e) above, but shall not be subject to the provisions of Chapter VIII, Sections 8-11 or Chapter XVI of this Charter. The charges for all goods and services which are procured pursuant to subparagraph (g) above, together with any and all other administrative expenses, shall be paid from the income of the funds, except to the extent that any appropriations have been made therefor.

(i) Any person or entity (including, but not limited to, any qualified custodian) which is contracted to invest, or direct or manage the investment of, any assets of the funds shall be, and shall specifically acknowledge in writing that such advisor is, (i) a fiduciary of the assets of the fund(s) for which such advisor has agreed to provide such services, (ii) registered as an investment company or investment adviser in good standing under the Investment Company and Advisers Acts of 1940, as amended, unless exempt from such registration, (iii) subject to the same limitations and standards governing the investment and reinvestment of such assets as apply to the city treasurer and the pension commission under or by reason of this section (unless, and then only to the extent, with respect to the standard set forth in subparagraph (e)(iii) above, the city treasurer, with the

pension commission's approval, agrees that such is not the case), and (iv) in compliance, and that such advisor will comply, with all applicable laws and regulations governing the investment of the assets of the funds. Any duty or responsibility which is imposed or otherwise pertains to the investment of the assets of any fund hereunder shall apply, without limitation, to the selection, acquisition, retention and disposition of each security or other investment vehicle which is, or is to be, held by such fund; provided, however that any investment decisions respecting individual assets shall be evaluated not in isolation, but in the context of the entire portfolio of the fund of which they constitute a part and as a portion of an overall investment strategy for such fund which is consistent with the requirements of this section; and, provided, further, that the city treasurer and the pension commission shall not be liable for any specific investments which are made by any investment advisor, custodian or other fiduciary so long as said person or entity is selected, appointed and retained (and the performance of such person or entity is therefore reviewed), and any assets of the fund for which the same is delegated investment responsibility are allocated, in accordance with the standards and limitations otherwise set forth in this section. Except as otherwise provided by the city treasurer or the pension commission, the limitations placed on the percentage of any fund's assets which may be invested in equity investments as set forth in subparagraph (d) above shall be calculated on the basis of all of the assets in a fund as opposed to any portions thereof for which the city treasurer retains, or any investment managers or custodians may be delegated, investment responsibility hereunder.

(j) On or before the thirtieth day prior to the date set by the city manager for submitting budget requests in any year, the city treasurer, after consultation with the plan administrator, shall provide the pension commission with the city treasurer's recommended budget for all of the administrative expenses to be incurred in connection with the administration of the funds in the ensuing fiscal year. Each such budget shall identify (i) the amounts anticipated to be required to be paid for all administrative expenses in the ensuing year, (ii) the nature and source of all such expenses, (iii) the source of revenue (including, without limitation, soft dollars) which are anticipated to be used to pay such expenses, and (iv) the extent to which any of the foregoing differs from both the current and prior year's budgeted and actual expenses. At the time set by the manager for making budget requests, the pension commission shall submit estimates of the sums necessary to be appropriated for the ensuing fiscal year for the purpose of meeting the obligations of the city under the provisions of this chapter, and an estimate of the appropriation necessary to meet the expenses of the commission in the performance of its duties during such year. The pension commission shall have sole authority to establish its budget each year, providing, however, that none of its expenses shall be paid from the city's general fund except within the amounts appropriated by the council therefor. Additionally, except as clearly may be required to fulfill the city treasurer's, plan administrator's and/or pension commission's duties pursuant to the standard of care set forth in subparagraph (e) above, the cumulative amount of any administrative expenses which are to be paid from the income of the funds in any fiscal year shall not exceed the total of such expenses reflected in the city treasurer's recommended budget for, or one percent (1%) of the carrying value of the funds as of the first day of, said year, whichever is less.

(k) The pension commission shall adopt a statement of investment policies and objectives for each fund which includes, without limitation, the following: (i) the desired rate of return for the fund as a whole; (ii) the desired rate of return and acceptable levels of risk for each asset class within the fund; (ii) the asset allocation goals for the fund; (iv) the guidelines which will apply to the selection and retention of custodians and investment managers for the fund; and (v) information on the types of reports which will be used to evaluate investment performance for the fund. The pension commission shall review such statement, and either change it or reaffirm or, at least once each year.

(l) The city treasurer, with the approval of the pension commission, may provide part or all of the pensions to which retired employees of any class, as determined by the rules of the commis-

sion, are entitled by contracting with one (1) or more life insurance companies authorized to do business in the State of Connecticut for the payment of annuities to such employees, and the purchase of an annuity for any employee shall satisfy the pension obligations of the city to such employee to the extent of the annuity payments made under such contract.

(m) The pension commission shall have the power to make rules and regulations for the purpose of carrying out the provisions of this chapter.
(Sp. Laws 1947, Act No. 30, Ch. XVI, § 5; Sp. Laws 1957, Act No. 641; Sp. Laws 1959, Act No. 496; Sp. Laws 1965, Act No. 234; Ord. No. 28-67, 11-7-67; Ord. No. 14-69, 5-12-69; Ord. No. 6-98, 4-27-98; Ord. No. 10-99, 4-26-99; Ord. No. 11-99, 4-26-99; Ord. No. 12-99, 4-26-99)

## CHAPTER XVIII. OTHER CITY OFFICERS AND BOARDS*

### Sec. 1. Board of education.

There shall be a board of education of nine (9) members. It shall have all the powers and duties conferred and imposed by law on boards of education in respect of the control and management of schools except as otherwise provided in this Charter. In addition to its other powers it shall fill vacancies on the board of education from whatever cause arising by majority vote of the board provided the vacancy shall be filled by appointment of a person of the same political party as his predecessor. Said person shall serve until the next regular municipal election, at which election a successor shall be elected. It shall be the duty of the board of education to submit its budget estimates to the city manager at the same time as other departments of the city and in the form required by him. The action of the city manager, the mayor and council on such requests shall relate to their total only and the board of education shall have authority to expend in its discretion the sum appropriated for its use, provided, if it receives an appropriation greater or less than its original request it shall forthwith revise its estimates of expenditure in accordance therewith and report at the conclusion of the city's fiscal year its actual in comparison with its estimated expenditures.
(Sp. Laws 1947, Act No. 30, Ch. XVII, § 1; Res. of 11-5-63; Ord. No. 28-67, 11-7-67)

### Sec. 2. Selectmen.

The selectmen shall have only such powers and duties as are conferred or imposed by the constitution and laws of the state in respect of the making of voters. The selectmen shall receive such compensation for the time actually spent in the performance of their duties as may be prescribed by ordinance.
(Sp. Laws 1947, Act No. 30, Ch. XVII, § 2; Ord. No. 28-67, 11-7-67)

### Sec. 3. Registrars of voters.

The registrars of voters shall have such powers and duties as are conferred or imposed on them by the General Statutes and the provisions of this Charter.
(Sp. Laws 1947, Act No. 30, Ch. XVII, § 3; Ord. No. 28-67, 11-7-67)

### Sec. 4. Corporation counsel.

(a) There shall be a corporation counsel who shall be appointed by the council as of the first Monday of January, 1948, and biennially thereafter. He shall be an elector of the city and an attorney of at least five (5) years' practice. He shall be the legal advisor of the council, the city manager, and all other departments, officers, boards, commissions or agencies of the city in all matters affecting the interests of the city, and shall upon request furnish them with a written opinion on any question of law involving their respective powers and duties. He shall appear for and protect the rights of the city in all actions, suits or proceedings brought by or against it or any of its departments, officers, boards, commissions or agencies. He shall have power, with the approval of the city manager, to appeal from orders, decisions or judgments in such cases, and, with the approval of the council, to compromise and settle any claims by or against the city. He

---

*Editor's note—Formerly Chapter XVII. Renumbered by Act No. 641, § 6, Special Laws 1957, and retained as Chapter XVII by the Revised Charter 1967, Ord. No. 28-67.

may, in his discretion, compromise and settle bonds to the city given in the city and police court after forfeiture in the same manner that state's attorneys may compromise and settle bonds for the state. He shall prepare or approve all forms of contracts or other instruments to which the city is a party or in which it has an interest. He shall attend in person or assign one (1) of his assistants to attend all meetings of the council. He shall have power, within the limitations of the appropriation therefor, to employ counsel to aid him in special matters, and, subject to the provisions of Chapter XVI of this Charter to appoint and remove such other employees of his office as may be prescribed by ordinance.

(b) In addition to such other personnel as may be provided by ordinance, the corporation counsel shall appoint such full-time assistants as shall be provided by ordinance, each of whom shall be an elector of the City of Hartford and who shall have been a member of the bar of the State of Connecticut for at least three (3) years prior to his appointment. Each shall be a member of the classified service and subject to all the provisions of Chapter XVI, sections 7, 8, 9, 12 and 14, except that the corporation counsel may waive the requirement of competitive exam.
(Sp. Laws 1947, Act No. 30, Ch. XVII, § 4; Sp. Laws 1967, Act No. 61; Ord. No. 28-67, 11-7-67)

    Editor's note—City and police court functions, were transferred to the circuit court, then to the common pleas court in 1974 and to the superior court in 1978.

### Sec. 5. Regional affairs commission.

There shall be a regional affairs commission to consist of the mayor, two (2) members of the council no more than one (1) of whom shall be a member of the same political party, and no less than four (4) nor more than eight (8) additional members, a bare majority of which shall be electors of the city and all of whom shall serve for a term of two (2) years. The city manager shall serve as an ex officio member of the commission. Members of the commission shall serve without compensation, but shall be reimbursed for just and necessary expenses incurred in performance of their duties. The commission shall choose one (1) of its own number to be chairman and shall adopt rules for the conduct of its business consistent with this

charter. Meetings of the commission may be called by the mayor, the council, the chairman, or any three (3) members of the commission, but the commission shall meet no less than four (4) times annually. The commission shall make recommendations to the council concerning regional affairs. Regional affairs shall mean relations with the towns of the capital region as defined by the Connecticut Development Commission under the general statutes.
(Ord. No. 28-67, 11-7-67)

## CHAPTER XIX. PLANNING AND ZONING*

### Sec. 1. Commission on the city plan.

There shall be a commission on the city plan to consist of seven (7) electors appointed in accordance with Chapter III hereof, provided the citizen members of the commission on the city plan in office at the effective date of this charter shall continue in office until the first Monday in February following the expiration of the term for which he was appointed. On the first Monday in February, 1968, there shall be appointed two (2) members to serve for six (6) years, and one (1) member to serve for five (5) years, on the first Monday in February, 1970, two (2) members to serve for five (5) years, on the first Monday in February, 1972, two (2) members to serve for four (4) years, and on the first Monday in February, 1973, one (1) member to serve for four (4) years, and every first, second and third year thereafter two (2) members to serve for four (4) years and every fourth year thereafter one (1) member to serve for four (4) years. The city manager, the city engineer and the director of public works shall also be members of the commission on the city plan, without voting privileges. The commission shall choose one (1) of its own number to be chairman and shall adopt rules for the conduct of its business consistent with this charter. Subject to the provisions of Chapter XVI of this charter the city manager shall appoint a secretary and such other regular employees as may be prescribed

---

*Editor's note—Formerly Chapter XVIII. Renumbered by Act No. 641, § 6, Special Laws 1957, and retained as said chapter by the Revised Charter 1967, Ord. No. 28-67.

by ordinance, and may with the approval of the council within the limits of the appropriation therefor employ planners, engineers, architects or other technical assistants. The members of the commission shall serve without compensation.
(Sp. Laws 1947, Act No. 30, Ch. XVIII, § 1; Ord. No. 28-67, 11-7-67)

### Sec. 2. Duty of plan.

It shall be the duty of the commission on the city plan to prepare and recommend from time to time plans for the development of the city or any portion thereof which may include:

(a) The general location and character of streets, bridges, boulevards, esplanades, squares, parks, playgrounds, playfields, aviation fields, parking spaces, public buildings and the facilities and terminals of public utilities whether publicly or privately operated; and

(b) Proposed regulations as to the use and occupancy of land and buildings. The commission shall make or cause to be made a map or maps of the city or any portion thereof illustrating such plans of development.

(Sp. Laws 1947, Act No. 30, Ch. XVIII, § 2; Ord. No. 28-67, 11-7-67)

### Sec. 3. Duties in relation to capital budget.

The commission shall prepare and revise annually a program of public improvements for the ensuing five (5) years and shall submit annually to the city manager, at such time as he shall direct, its recommendations with estimates of cost of such projects to be undertaken in the ensuing fiscal year and in the full five-year period.
(Sp. Laws 1947, Act No. 30, Ch. XVIII, § 3; Ord. No. 28-67, 11-7-67)

### Sec. 4. Certain ordinances to be referred to commission on the city plan.

Every ordinance or resolution of the council relating to the location of any street, bridge, boulevard, esplanade, square, park, playground, playfield, aviation field, parking space, public building, to the facilities or terminal of any public utility or to the establishment or change in the boundaries

of or regulations governing any zone as hereinafter provided, shall be at once referred to the commission on the city plan and final action shall not be taken on any such ordinance or resolution until the commission shall have reported thereon, provided the council may establish by ordinance a period of not less than sixty (60) days within which the commission shall file its report with the city clerk and if no report is filed within such period the approval of the commission shall be assumed.
(Sp. Laws 1947, Act No. 30, Ch. XVIII, § 4; Ord. No. 28-67, 11-7-67)

### Sec. 5. Subdivision control.

No map or plan of any land within the city showing any proposed street or any proposed extension or change in the established layout of any existing street shall be received by the city clerk for filing or recording in his office unless such map or plan shall have endorsed thereon the approval of the commission on the city plan. The council shall, by ordinance, establish the conditions on which such approval shall be granted or withheld and the action to be taken by officers of the city in regard to such map or plan.
(Sp. Laws 1947, Act No. 30, Ch. XVIII, § 5; Ord. No. 28-67, 11-7-67)

### Sec. 6. Zoning.

Subject to the provisions of section 4 of this chapter the council shall have power to regulate by ordinance the height, number of stories and size of buildings and other structures; the percentage of the area of the lot that may be built upon, the size of years, courts and other open spaces; the density of population; and the location and use of buildings, structures and land for trade, industry, residence or other purposes; and in so doing may divide the city into zones of such number, shape and area as may be best suited to carry out the purposes of this section. Such regulations shall be uniform within each zone for each class of building or structure and shall be made in accordance with a comprehensive plan and shall be designed to lessen congestion in the streets; secure safety from fire, panic and other dangers; promote health and the general welfare; provide adequate light and air; prevent the overcrowding of land; avoid undue concentration of population and facilitate the adequate provision for transportation, water, sewerage, schools, parks and other public requirements. Such regulation shall be made with reasonable consideration as to the character of the zone and its peculiar suitability for particular uses and with a view to conserving the value of buildings and encouraging the most appropriate use of land throughout the city. The council shall also provide by ordinance for the manner in which such regulations and the boundaries of such zones shall be respectively enforced and the conditions under which exceptions or variations may be granted by the zoning board of appeals.
(Sp. Laws 1947, Act No. 30, Ch. XVIII, § 6; Ord. No. 28-67, 11-7-67)

### Sec. 7. Changes in regulations and zone boundaries.

Subject to the provisions of section 4 of this chapter such regulations and the boundaries of any zone established in connection therewith may be amended or repealed by ordinance, but no change of zone boundary shall be made so as to include less than the entire area fronting on the same street in one (1) block, but this change in boundaries of such frontage need not include such portions of corner lots as may be within one hundred fifty (150) feet of the street line of the intersecting streets which bound the block, and in blocks where the frontage on the same street exceeds twelve hundred (1,200) feet the change in boundaries need not include more than eight hundred (800) continuous feet thereof. Changes involving lesser areas than the above may be made where the change consists of the inclusion of the balance of the frontage on the same street in any one (1) block in the same zone in which the major portion of such frontage is already included. In determining the bounds of a block for the purpose of this section, the right-of-way of a railroad, the Park River or its north or south branches, the boundary of a public park and the city boundary line may be treated as intersecting streets. If a protest shall be filed with the city clerk against such change, signed by the owners of twenty (20) percent or more of the total area of the lots included in such proposed change or of the total area of lots any point in which is within one hun-

dred fifty (150) feet of the boundary of such area, the council shall not adopt the ordinance making such change by less than seven (7) affirmative votes. The foregoing provisions shall not apply to a comprehensive revision of the zoning ordinance. (Sp. Laws 1947, Act No. 30, Ch. XVIII, § 7; Ord. No. 28-67, 11-7-67)

### Sec. 8. Conflicting regulations.

If the regulations made under authority of this chapter shall require a greater width or size of yards, courts or other open spaces, or a lower height of building or less number of stories, or require a greater percentage of lot area to be left unoccupied, or impose other and higher standards than shall be required in any statute or in any ordinance or regulation not so made, the provisions of the regulations made under the authority of this chapter shall govern. If the provisions of any statute or of any ordinance or regulation not so made shall require a greater width or size of yards, courts or other open spaces, or a lower height of building or less number of stories, or require a greater percentage of lot area to be left unoccupied, or impose other and higher standards than are required by the regulations made under authority of this chapter, the provisions of such statute or ordinance or regulation not so made shall govern.
(Sp. Laws 1947, Act No. 30, Ch. XVIII, § 8; Ord. No. 28-67, 11-7-67)

### Sec. 9. Zoning board of appeals.

There shall be a zoning board of appeals consisting of five (5) members appointed in accordance with Chapter III hereof, one (1) each year for a term of five (5) years commencing on the first Monday in February, provided the members of the board in office at the effective date of this charter shall each continue to hold office until the first Monday in February following the expiration of the term for which he was appointed. The board shall serve without compensation. It shall choose one (1) of its number to be chairman, adopt rules for its procedure, and meet at the call of the chairman and at such other times as the board may determine. The city manager shall assign an employee of the department of licenses and inspections to act as its secretary and such other employees as may be necessary to assist it in the performance of its duties. It shall have power, within the limits of the appropriation therefor, to employ such assistance as may be necessary in keeping the minutes of its hearings and of its proceedings. All meetings of the board shall be open to the public and it shall keep minutes of its proceedings showing each order, decision or requirement or other official action of the board and the vote of each member on each question, and if a member is absent or fails to vote that fact shall be indicated. The minutes and files of the board shall be public records and open to inspection. The chairman of the board and in his absence the acting chairman shall have the power to administer oaths and compel the attendance of witnesses. Any person who fails to obey a lawful subpoena of said chairman or acting chairman shall be fined not more than one hundred dollars ($100.00) or imprisoned not more than thirty (30) days or both. (Sp. Laws 1947, Act No. 30, Ch. XVIII, § 9; Ord. No. 28-67, 11-7-67)

### Sec. 10. Appeals to the zoning board of appeals.

Any person or persons severally or jointly aggrieved by any order, requirement or decision of an administrative official in the enforcement of any ordinance adopted pursuant to the provisions of this chapter may appeal to the zoning board of appeals by filing a notice of appeal specifying the grounds thereon within fifteen (15) days of the making of the order, requirement or decision complained of, with the secretary of the board and with the official making such order, requirement or decision. The board may, in its discretion, extend the time for filing the notice of appeal. The filing of the notice of appeal shall stay all proceedings in the action appealed from unless the officer from whose order, requirement or decision the appeal shall have been taken shall certify to the board that by reason of facts stated in the certificate a stay would in his opinion cause imminent peril to life or property, in which case proceedings shall not be stayed otherwise than by a restraining order granted by a court of record on notice to such official and on due cause shown. The board shall fix a reasonable time for the hearing of any appeal and shall give notice to the parties and

decide the same within a reasonable time. At such hearing any party may appear in person or by agent or attorney. The board may reverse or affirm, wholly or partly, or may modify the order, requirement or decision appealed from, and shall make such order, requirement or decision as in its opinion ought to be made in the premises, and shall have the powers of the officer from whose order, requirement or decision the appeal was taken, provided the affirmative vote of four (4) members shall be necessary to reverse or modify the order, requirement or decision appealed from. If there shall be difficulty or unreasonable hardship in carrying out the strict letter of the ordinance upon which the order, requirement or decision appealed from was based, the board shall have authority in passing upon such appeal to vary or modify the application, either permanently or for a specified length of time, of any of the provisions of such ordinance relating to the use, construction or alteration of buildings or structures or the use of land, so that the spirit of such ordinance shall be observed, public safety and welfare secured and substantial justice done.
(Sp. Laws 1947, Act No. 30, Ch. XVIII, § 10; Ord. No. 28-67, 11-7-67)

### Sec. 11. Power to modify regulations.

The zoning board of appeals shall have power to decide special questions when authorized by ordinance. It may, on petition after public notice and hearing and subject to appropriate conditions and safeguards, determine and vary in harmony with their general purposes and intent the application of the regulations established by any ordinance enacted under the authority of the provisions of this chapter in such specific cases as may be listed therein but only if there shall be difficulty or unreasonable hardship in carrying out the strict letter of the ordinance and so that the spirit of the ordinance shall be observed, public welfare and safety secured and substantial justice done.
(Sp. Laws 1947, Act No. 30, Ch. XVIII, § 11; Ord. No. 28-67, 11-7-67)

### Sec. 12. Appeals from the zoning board of appeals.

Any person or persons severally or jointly aggrieved by any decision of the zoning board of appeals or any official charged with the enforcement of any order, requirement or decision of said board may take an appeal to the Court of Common Pleas for Hartford County in like manner and with like effect as provided for appeals from zoning boards of appeals by section 8-8 of the general statutes as amended except that notice of such appeal shall be served upon the corporation counsel of the city.
(Sp. Laws 1947, Act No. 30, Ch. XVIII, § 12; Ord. No. 28-67, 11-7-67)

### Sec. 13. Violation, punishment and remedies.

Zoning regulations as provided in this chapter shall be enforced by the director of the department of licenses and inspections and such other employees of the department as he may designate for the purpose. Violations of such regulations shall be punished and such other remedies shall be available as provided in section 8-12 of the general statutes and any amendments thereto.
(Sp. Laws 1947, Act No. 30, Ch. XVIII, § 13; Ord. No. 28-67, 11-7-67)

## CHAPTER XX. MISCELLANEOUS PROVISIONS*

### Sec. 1. Special acts repealed.

Except as specifically retained in force in this charter all portions of "An Act Revising the Charter of the City of Hartford," approved June 24, 1941, and all acts amendatory thereof and all other special acts relating to the City of Hartford to the extent that their provisions are in conflict with those of this charter, are repealed.
(Sp. Laws 1947, Act No. 30, Ch. XX, § 1; Ord. No. 28-67, 11-7-67)

---

*Editor's note—Chapter XX of Act No. 30, Special Laws 1947, was renumbered Chapter XXI, by § 6 of Act No. 641, Special Laws 1957. This chapter was again renumbered Chapter XX by the Charter Revision 1967, Ord. No. 28-67, approved by the voters on November 7, 1967, which eliminated Chapter XX, City and Police Court, same being superseded by the Circuit Court of Connecticut, Title 51, General Statutes. Circuit court functions were transferred to the common pleas court in 1974; common pleas court functions were transferred to the superior court in 1978.

### Sec. 2. Present ordinances and rules effective.

All ordinances of the city and all rules, regulations and orders legally made by any department, board, commission or officer of the city, in force at the effective date of this charter and not inconsistent herewith, shall remain in force until amended, repealed or superseded as provided herein.
(Sp. Laws 1947, Act No. 30, Ch. XX, § 2; Ord. No. 28-67, 11-7-67)

### Sec. 3. Constitutionality.

In case any portion of this charter shall at any time be found to be unconstitutional such finding shall not affect the remainder thereof, but as to such remainder this charter shall remain in full force and effect until amended or repealed.
(Sp. Laws 1947, Act No. 30, Ch. XX, § 4; Ord. No. 28-67, 11-7-67)

### Sec. 4. Effective dates of the provisions of this charter.

The provisions of this amended charter shall take effect as follows:

(a) Those of Chapter III, proposed section 1 concerning compensation of councilmen and proposed section 2 concerning interim compensation of the mayor shall take effect on the first day of April, 1968.

(b) Those of Chapter III, proposed sections 1 and 2, except as above provided; Chapter IV, proposed sections 1 and 2 and omissions in part of present section 3 of said chapter; Chapter VI, proposed sections 2, 8, 9 and 10; and Chapter XVIII, proposed section 1 concerning appointment of successors to the board of education shall take effect on the thirtieth day of June, 1969.

(c) Those of Chapter III, proposed sections 3(a) and 12(d) shall take effect on the first Tuesday of December, 1969.

(d) All other provisions shall take effect upon approval by the electors of the city.
(Ord. No. 28-67, 11-7-67; Ord. No. 28-69, 5-21-69; Sp. Laws 1969, Ch. 140)

## LEGISLATIVE ACTS PERTAINING TO THE CITY OF HARTFORD OTHER THAN SPECIFIC CHARTER AMENDMENTS

## APPENDIX TO CHARTER*

## IN GENERAL

### Sec. 1. Date of unlocking voting machines.

The town and city clerk of the City of Hartford is authorized after a municipal primary election to permit the keys of the voting machines to be taken, or any voting machine to be unlocked and its seal to be broken, after a period of five (5) days from such election.
(Sp. Laws 1955, Act No. 353)

### Sec. 2. Reserved.

Editor's note—The act (No. 332 of the Special Laws of 1945) from which section 2 (which dealt with destruction of certain records by the town and city clerk) was derived has been repealed.

### Sec. 3. Batterson Park—Disposal of portion authorized, 1957.

[a] The City of Hartford, upon the recommendation of the city manager and with the affirmative vote of at least six (6) members of the court of common council taken after a public hearing on said recommendation, is authorized to lease or otherwise similarly dispose of, with or without compensation and without the necessity of seeking competitive bids, all or any part of Batterson Park no longer needed for park purposes to any corporation or institution organized or operating for recreational, educational or similar charitable purposes.
(Sp. Laws 1957, Act No. 475)

---

*Editor's note—This Appendix to Charter contains Acts of the Legislature of the State of Connecticut pertaining to the City of Hartford which are not specific charter amendments. The Acts have been arranged according to subject matter and assigned arbitrary numbers for indexing purposes. The source of each provision is cited in parentheses following each section. The titles, amendatory language and general repealing clauses of each Act have been omitted, and the catchlines have been supplied by the editors. Material in brackets has been added where necessary for clarity.

[b] The City of Hartford, acting through its board of park commissioners, is authorized to transfer and convey or otherwise dispose of the following portions of Batterson Park in the Town of Farmington whenever such board of park commissioners shall determine that such portions of land are not suitable for park purposes: Two (2) parcels butting on the north side of Farmington Cutoff; two (2) parcels abutting on the northwesterly side of the right-of-way of the Conecticut Company situated north of Farmington Avenue; one (1) parcel abutting on the north side of Tunxic Road.
(Sp. Laws 1947, Act No. 292)

### Sec. 4. Same—Disposal of all or portions authorized, 1967.

Notwithstanding the provision of section 10 of Chapter VIII of Number 30 of the Special Acts of 1947, the City of Hartford is authorized to transfer, convey, exchange, lease or otherwise dispose of land now known as Batterson Park or any portion thereof, provided any such transfer, conveyance, exchange, lease or other disposition is made on the recommendation of the city manager and, after a public hearing, is authorized and approved by an affirmative vote of at least seven (7) members of the court of common council.
(Sp. Laws 1967, Act No. 48)

### Sec. 5. Brainard Field, disposal.

Notwithstanding the provision of section 10 of Chapter VIII of Number 30 of the Special Acts of 1947, the City of Hartford is authorized to transfer, convey, exchange, lease or otherwise dispose of land now known as the North and South Meadows, including all of Brainard Field or any portion thereof not required for use as an airport facility or training station, provided any such transfer, conveyance, exchange, lease or other disposition is made on the recommendation of the city manager and after a public hearing, is authorized and approved by an affirmative vote of at least six (6) members of the court of common council.
(Sp. Laws 1955, Act No. 74)

### Sec. 6. Conveyance to Young Italian-American Association.

*Section 1.* Notwithstanding the provisions of section 10 of Chapter VIII of Number 30 of the Special Acts of 1947, the City of Hartford is authorized to transfer and convey a certain parcel of land approximately one hundred seventy-five (175) feet frontage and two hundred (200) feet deep situated on the westerly side of Wethersfield Avenue, Hartford, which land is located in the rear of the premises known as No. 680 Franklin Avenue in said Hartford, to the Young Italian-American Association upon recommendation of the city manager and approval by the court of common council.

*Section 2.* Said land shall be sold for a fair and reasonable market price to be determined after an appraisal has been made by three (3) disinterested real estate appraisers. Said land, with any building to be constructed thereon, shall be taxable by the City of Hartford.
(Sp. Laws 1959, Act No. 328)

### Sec. 7. Conveyance to Veteran Volunteer Firemen's Corporation.

*Section 1.* Not withstanding the provisions of section 10 of Chapter VIII of Number 30 of the Special Acts of 1947, the City of Hartford is authorized to transfer and convey the land and building known as No. 680 Franklin Avenue, Hartford, to The Veteran Volunteer Firemen's Corporation of the City of Hartford, Connecticut, upon recommendation of the city manager and approval by the court of common council.

*Section 2.* Said land, with building thereon, shall be sold for a fair and reasonable market price to be determined after an appraisal has been made by three (3) disinterested real estate appraisers. Said land, with building thereon, shall be taxable by the City of Hartford, unless exempted by law.
(Sp. Laws 1959, Act No. 457)

### Sec. 8. Conveyance of land to Rau-Locke Post No. 8, The American Legion.

Notwithstanding the provisions of section 10 of Chapter VIII of Number 30 of the Special Acts of 1947, the City of Hartford is authorized to transfer and convey a certain parcel of land lying on the westerly side of Wethersfield Avenue, further bounded and described as follows: Beginning at a point in the westerly line of Wethersfield Avenue, which point is the intersection of said westerly

line of Wethersfield Avenue and the southerly line of Hooker Drive, so-called at present, a proposed new street; thence southerly on the westerly line of Wethersfield Avenue, one hundred three (103) feet, more or less, to a point marking the northeasterly corner of land now or formerly of Eunice F. Trevitt, et al.; thence westerly on land of said Eunice F. Trevitt, et al., E. G. Malstrom, et al.; A. M. DeLuca, et al. and J.A. Cataldi et al., partly on each, in all, two hundred seventy-seven (277) feet, more or less, to the northwesterly corner of said land now or formerly of J. A. Cataldi, et al.; thence northerly on land of the City of Hartford one hundred ten (110) feet, more or less to a point in the southerly line of said Hooker Drive, as proposed, which point is about two hundred fifty (250) feet, more or less, westerly from the point of beginning as measured on said southerly line of said Hooker Drive, as proposed; thence easterly on said southerly line of said Hooker Drive, as proposed, two hundred fifty (250) feet, more or less, to the point and place of beginning; in said Hartford, to the Rau-Locke Post No. 8, The American Legion, upon recommendation of the city manager and approval by two-thirds of the court of common council. Said land shall be sold for a fair and reasonable market price to be determined after an appraisal has been made by three (3) disinterested real estate appraisers.
(Sp. Laws 1961, Act No. 261)

### Sec. 9. Tenure of office for teachers—Definitions.

[a] The term "teacher," as used in this act, shall include all teachers in the high schools and in the grades below the high school, including kindergartens, teachers of sewing, cooking, manual training and any other special subjects, also principals, vice-principals, deans, supervisors of instruction, nurses and directors of instruction whose positions require certification by the state board of education, and who are regularly appointed by the board of education, and employed in the public day schools of the Hartford town and city school districts.

[b] The term "public schools," as used in the act, shall include all public day schools maintained wholly by the Hartford town and city school districts.
(Sp. Laws 1945, Act No. 277, § 1; Sp. Laws 1947, Act No. 319, § 1)

### Sec. 10. Same—Qualifications for permanent appointments.

All teachers regularly appointed and employed in the public day schools of Hartford town and city school districts on July 22, 1945, shall receive permanent appointments provided they have taught for three (3) years in public day schools of the Hartford town and city school districts. Those teachers who have taught less than three (3) years in the public day schools of the Hartford town and city school districts shall be appointed annually provided their services are satisfactory, until they have completed three (3) years' service in the public day schools of the Hartford town and city school districts, or they may be dismissed at the discretion of the board of education. If appointed at the expiration of this probationary period of three (3) years, they shall receive permanent appointments. Those teachers appointed after July 22, 1945, shall be appointed on probation annually for three (3) years, provided their services are satisfactory, or they may be dismissed at any time at the discretion of the board of education. If appointed at the expiration of this probationary period, they shall receive permanent appointments. Any teacher who, prior to his probationary appointment in the public day schools of the Hartford town and city school districts, has had a contract of employment as a teacher renewed for a fourth year in any other school district in the state shall receive permanent appointment after eighteen (18) months of continuous employment in Hartford, unless, prior to completion of the eighteenth month following commencement of employment in Hartford, such teacher has been notified in writing prior to March first that his contract of employment will not be renewed for the following year irrespective of the duration of employment under the then existing contract beyond the date of said notification or unless such teacher has not been employed in any public school within the state for a period of five (5) or more years immediately prior to his employment in Hartford.
(Sp. Laws 1945, Act No. 277, § 2; Sp. Laws 1967, Act No. 368)

### Sec. 11. Same—Grounds for dismissal; notice.

Teachers may be dismissed at any time:

(1) For inefficiency or misconduct;

(2) By reason for the position to which they were appointed being abolished, provided there is no other position to which they may be appointed if qualified, and provided seniority in service in the day schools of the Town and City of Hartford shall be the determining factor in such dismissal.

No teacher shall be dismissed or suspended except upon written notice from the superintendent of schools, the notice to state the reasons for such action. Notice of dismissal shall not take effect in less than three (3) months. In cases where serious misconduct is charged a teacher may be suspended from duty immediately.
(Sp. Laws 1945, Act No. 277, § 3)

### Sec. 12. Same—Appeals from dismissal or suspension.

Teachers may appeal to the board of education against suspension or dismissal but such appeal shall be in writing stating the grounds of the appeal, and shall be filed with the board of education within thirty (30) days after the date of notice of suspension or dismissal. The board of education upon the receipt of such notice of appeal shall fix a date for a hearing upon said appeal which hearing shall be before a majority of the board of education and shall be within thirty (30) days of the receipt of the appeal. Such hearing shall be open or private as the teacher may request. Teachers shall have the right to appear with counsel at such hearing and said counsel shall have the right to represent and advise the teacher at such hearing and to participate in any or all proceedings of the hearing. Within thirty (30) days after the hearing the board of education shall decide the case by a majority vote of the board of education, all members persent voting. Such appeal shall in no way be interpreted as prohibiting a teacher from appealing to the civil courts of this state. If the suspension or dismissal is reversed the notice of suspension or dismissal shall be void and of no effect and the teacher shall be reinstated. If the teacher is reinstated as above, any salary lost shall be paid to the teacher.
(Sp. Laws 1945, Act No. 277, § 4)

### Sec. 13. Same—Leaves of absence.

Any teacher who enlists or who is or has been selected for service in or with the armed forces of the United States, the Red Cross, or the United Service Organizations shall be granted leave of absence for the duration of such service and upon his application made within six (6) months of his honorable discharge or release or resignation therefrom and not more than one (1) year after his return to the continental United States, whether discharged or not, said board shall within a reasonable time after he is available for teaching, assign him the same or similar position held at the time he entered such service if he be then physically and mentally capable of satisfactorily performing the duties of such position. This reinstatement shall be made without prejudice as to salary.
(Sp. Laws 1945, Act No. 277, § 5)

### Sec. 14. Same—Leaves included in "consecutive period of service."

The consecutive period of service prescribed herein shall include any period served in the Hartford town and city day schools prior to such service as stated in section five [section 13 of this Appendix] of this act, provided such teacher shall, within six (6) months after honorable discharge from such service apply for return to active service in said school system.
(Sp. Laws 1945, Act No. 277, § 6)

### Sec. 15. Same—Persons affected by act.

All teachers appointed in the public day schools of the Hartford town and city school districts for the school year 1945-1946 and thereafter, shall be appointed subject to the provisions of this act.
(Sp. Laws 1945, Act No. 277, § 7)

### PENSIONS IN GENERAL

### Sec. 16. Retirement credit for policemen and firemen for service in armed forces.

In determining length of service for the purposes of the retirement system of the City of Hart-

ford as it applies to the members of the police and fire departments of that city, the length of service of the personnel of those departments who are members of said departments on July 1, 1945, shall be deemed to include their war service during the first world war, even though said members of said police and fire departments may not have been employed by the City of Hartford at the time of their participation of said war. In determining length of service for the purposes of said retirement system as it applies to members of the police and fire departments who served in World War II, the length of service of the personnel of those deparments who were members of said departments when they entered war service shall be deemed to include accredited city pension time plus an additional month for each month of such war service.
(Sp. Laws 1945, Act No. 394; Sp. Laws 1949, Act No. 281)

### Sec. 17. Retirement credit for police employees during World War II.

In determining length of service for the purpose of the retirement systems of the City of Hartford as they apply to members of the police department of that city, the length of service of the personnel of said department shall be deemed to include their war service during the second warld war, December 7, 1941, through December 31, 1946, even though such members of said police department may not have been employed by the City of Hartford at the time of their participation in the second world war, provided such members shall pay into the retirement system to which they belong, for each year of such war service, a sum equal to two and one-half (2½) percent of the first year's salary as a city employee with interest at five (5) percent per annum, said payment to be made on or before October 1, 1969, and the legislative body of said city approves same.
(Sp. Laws 1957, Act No. 521; as amended by Ord. No. 3-68, 2-13-68; Sp. Laws 1969, Act No. 242)

### Sec. 18. Retirement credit for police for service in hospitals.

In determining the length of service for the purpose of the Hartford Police Benefit Fund, the length of service of the personnel of the police department shall be deemed to include any prior service to the City of Hartford in the John James McCook Memorial Hospital or the Municipal Hospital of said city. Such prior service shall be included even though such members of said police department may not have been employed continuously by the City of Hartford. Such members shall pay into the Police Benefit Fund for each year of such prior service a sum equal to two and one-half (2½) percent of the annual wages received, together with interest at five (5) percent per annum, such payment to be made to the treasurer of the Hartford Police Benefit Fund on or before October 1, 1960.
(Sp. Laws 1959, Act No. 477)

### Sec. 19. Retirement credit for police for service in widows' aid department.

In determining the length of service for the purpose of the Hartford Police Benefit Fund, the length of service of the personnel of the police department shall be deemed to include any prior service to the City of Hartford in the widows' aid department of said city. Such prior service shall be included even though such members of said police department may not have been employed continuously by the City of Hartford. Such members shall pay into the police benefit fund for each year of such prior service a sum equal to two and one-half (2½) percent of the annual wages received, together with interest at five (5) percent per annum, such payment to be made to the treasurer of the Hartford Police Benefit Fund on or before October 1, 1962.
(Sp. Laws 1961, Act No. 92)

### Sec. 20. Certain female employees in police and fire departments included in pension plans.

Each female telephone employee in the police department of the City of Hartford and the female secretary and administrative aide to the fire board and department may be included in the pension plans of the respective departments by hereafter contributing to the police benefit fund or to the firemen's relief fund, as the case may be a sum equal to two and one-half percent of her salary, and she shall thereby be entitled to and receive

73

all of the benefits of said police benefit fund or firemen's relief fund.
(Sp. Laws 1947, Act No. 466)

## RETIREMENT SYSTEM FOR CITY EMPLOYEES

### Sec. 21. Charter 1941, section 233, as amended.

(a) There shall be in the City of Hartford a retirement system for city employees except those employees who are included under the provisions of sections two hundred thirty-four and two hundred thirty-five of the charter of the City of Hartford. The management of the retirement system shall be vested in a commission, to be known as the pension commission, which shall consist of three (3) electors of the city, none of whom shall be an employee thereof or shall hold any other appointive or elective office in the city government. The terms of the members now serving on said commission are continued until the expiration of the terms for which they were appointed, and their successors shall be appointed in accordance with the provisions of sections forty-three and forty-nine of the charter of the City of Hartford. Not more than two (2) members of said commission shall be of the same political party. The treasurer of the city shall be, ex officio, secretary of said commission but shall have no vote.

(b) Any city employee shall be eligible for retirement from active service subject to the following conditions as to term of service and age, and shall receive, in lieu of any other compensation, an annual retirement allowance, payable monthly, for the term of his life, as hereinafter provided: (1) After fifteen (15) years of aggregate service preceding retirement, if so employed on May 5, 1927, or after twenty (20) years of aggregate service preceding retirement, if employed after May 5, 1927, and reaching the age of sixty-five (65) years if a man, or sixty (60) years if a woman, or (2) after ten (10) years of such service, if so employed on September 1, 1933, or after fifteen (15) years of such service, if employed after September 1, 1933, and becoming permanently disabled from continuing to render the service in which he has been employed, or (3) having reached the age of sixty (60) years if a man, or fifty-five (55) years if a woman, after twenty-five (25) years of such service, at a retirement allowance equal to fifty (50) percent of his average salary for the five (5) years next preceding his retirement; provided the retirement allowance of a person who is retired after becoming so disabled or after reaching the age of sixty (60) years if a man or fifty-five (55) years if a woman, and who has had more than twenty-five (25) years of aggregate service preceding retirement, shall be equal to two (2) percent of his average salary for the last five (5) years of his service multiplied by the number of whole years of such service. Employees of the Hartford board of education, having reached the age of fifty-five (55) years if a man with thirty (30) years of such service, or fifty-five (55) years if a woman, after twenty-five (25) years of such service, at a retirement allowance equal to fifty (50) percent of his average salary for the five (5) years next preceding his retirement; provided the retirement allowance of a person who is retired after becoming so disabled or after reaching the age of fifty-five (55) years, and who has had more than twenty-five (25) years of aggregate service preceding retirement, shall be equal to two (2) percent of his average salary for the last five (5) years of his service multiplied by the number of whole years of such service.

Any person permanently disabled from continuing to render the service in which he has been employed as a result of any injury received while in the performance of his duty as an employee of the city shall be retired at a retirement allowance equal to fifty (50) percent of his salary at the time of such retirement, regardless of his term of service unless such term shall entitle him to a greater percentage.

Any city emplyee who is not otherwise eligible to receive a retirement allowance under the provisions of this section and who, after reaching the age of fifty (50) years and after fifteen (15) years of continuous service, shall be obliged to retire involuntarily from service, except for malfeasance or misfeasance in office, shall receive a retirement allowance equal to two and one-half (2½) percent of his average salary for the last five (5) years of his service multiplied by the number of whole years of such service; provided no such retirement allowance shall exceed one-half of his

average salary for the last five (5) years of his service or two (2) percent of his average salary for the last five (5) years of his service multiplied by the number of whole years of such service, whichever is greater; and provided, in computing the age and years of service hereunder, the termination of service in the case of an employee appointed under the provisions of law for a definite term shall be construed as of the date when such term would have ended in the event no change was made by law in such term. In the determination of the period of service, the period during which any city employee was engaged in the service of the Keney Park trustees, of the board of education of the Town of Hartford or of any of the former school districts, of the mayor's Americanization committee or of the trustees of the Hartford grammer school shall be included. Periods of absence of not more than ninety (90) days in any one (1) year, without pay, during the course of such service or transfers from one (1) city department to another shall not be considered as breaking the continuity of a year's service. Periods of absence of more than ninety (90) days by reason of authorized leave of absence or any disability necessitating the regular attendance of a physician, unless such requirement is waived in the event such attendance shall be declared unnecessary by medical authority satisfactory to the commission, shall not be considered as breaking its continuity, provided such absence shall not exceed a period of twelve (12) calendar months, nor shall the continuity of service of teachers employed by the board of education be considered broken when they are on authorized leave of absence for professional improvement for a period not to exceed twenty-four calendar months but such periods of absence shall not be included in the period of service in determining the amount of the retirement allowance. Any city employee who shall have attained the age of seventy (70) years, if a man, or sixty-five (65) years, if a woman, shall be retired from active service unless said commission shall, on written recommendation of his department head, permit such employee to remain in active service. Any city employee who shall have reached retirement age after having served not less than ten (10) years but without having served twenty (20) years shall receive a retirement allowance equal to two and one-half (2½)

percent of his average salary for the last three (3) years of his service multiplied by the number of whole years of such service. Each retirement allowance shall be based upon the basic salary of the employee, regardless of any general temporary increase or reduction thereof or any reduction or nonpayment on account of illness or temporary absence. No annual retirement allowance granted under the provisions of this act shall exceed the sum of four thousand dollars ($4,000.00) or two-thirds of the employee's average salary for the five (5) years next preceding his retirement, whichever is greater.

(c) In the case of any city employee retired because of disability, existence and continuation of such disability shall be determined by the pension commission after such medical examination as it may require. Such allowance shall not be paid in any case when an award has been made under the workmen's compensation law except when such payments shall have terminated or when payments under said law shall be less than the allowance provided by the terms of this act, in which event the difference between such allowance and such compensation benefits shall be paid. In order to obtain the benefits of this section, such employee shall make application in writing for a disability retirement allowance to the pension commission within one (1) year after the termination of his service.

(d) Any annual retirement allowance payable to any teacher employed by the City of Hartford shall be reduced annually by an amount equal to the pension, if any, which such teacher is entitled to receive from the state retirement system by reason of the contribution or appropriation of state funds to said system, the amount of such reduction to be computed on the basis of such pension being payable as a life annuity on the pensioner's life, regardless of whether the pensioner shall actually receive his pension on this basis or whether, under the optional benefit provisions of said retirement system, the pension shall be based on the pensioner's life and that of a dependent, and provided such reduction shall be based on the proportion of the years of service in Hartford to the total number of years of service upon which the state pension is based. Reduction of the city's annual retirement allowance by the amount of the

75

state pension contribution shall be computed by using the state pension formula in effect previous to July 1, 1967. Any member of the state teachers' retirement association who avails himself of the privilege of retirement under the provisions of this act before becoming eligible for a pension under the state retirement system shall be required to pay to the city the difference between his contribution for his years of service under this act and the contribution required of other city employees based on whatever percentages may have been stipulated for the same period, together with interest on such deferred contributions at a rate to be determined by the commission. In computing the retirement allowance, the years of active service of any employee shall include all the years that such employee has been in the employ of said city, of said board of education of the Town of Hartford or any of said school districts or of said Keney Park trustees. In computing such retirement allowance for that teacher in the high school department who is known as the "Master of Hartford Grammar School," the pension commissioner shall use as the basis of the computation the sum total of the compensation paid to such teacher annually by the city and by the trustees of the Hartford grammar school, and the years of active service of such teacher shall include all the consecutive years that such teacher shall have been in the employ of said city or said trustees or of both. The term "salary" as used in this act, shall include the value of any maintenance furnished to an employee at the expense of the city when such maintenance, in the judgment of the pension commission, was furnished to such employee in lieu of salary. The value of the maintenance so included shall be as determined by said commission.

(e) The department of finance shall keep such records, both financial and statistical, as may be necessary for the proper administration of this section, and, upon request, the heads of the several city departments shall furnish the department of finance such information as may be necessary for such purpose.

(f) The pension commission shall have power to make reasonable rules and regulations for carrying out the provisions of this section and may employ such assistance, necessary for the effective performance of its duties as the court of common council shall by ordinance provide. It shall annually submit to the board of finance of said city, in accordance with the charter and ordinances, its estimate of the appropriation required to pay the retirement allowances already in effect and to become effective during the ensuing fiscal year and the necessary expenses of said commission, and such estimates as revised by the board of finance shall be included in the report of said board to the court of common council of said city.

(g) The term "city employee," as used in this section shall not include those employees who are included under the provisions of sections two hundred thirty-four and two hundred thirty-five of the charter of the City of Hartford, but shall include elected or appointed officials and employees of the Town of Hartford, and employees of the board of education of the Town of Hartford, and the term "teachers employed by the city," as used in this section, shall include teachers employed by the board of education of the Town of Hartford. Unless a different meaning is plainly indicated by the context, the term "retirement age" as used in this act shall be construed to mean the age of sixty-five (65) years.

(h) All retirement allowances or pensions heretofore granted by the City of Hartford are validated and continued in force.

(i) When any person employed by The Metropolitan District or by the City of Hartford shall be transferred, either temporarily or permanently, to the service of the other, the period of his service with each municipality shall be counted for the purpose of qualifying such employee for a retirement allowance and for the purpose of computing the amount thereof. The municipality by which such employee is employed at the time of his retirement shall pay to him the retirement allowance provided under the terms of its retirement system and the other municipality shall contribute monthly to such allowance a proportion of the total thereof equal to the ratio which his period of service with such other municipality shall bear to his total period of service with both municipalities; provided such proportionate contribution shall, in no case, exceed the proportionate amount of retirement allowance which would be allocable

to such period of service if his total period of service had been rendered to the municipality so contributing. The term "period of service," shall be construed to mean such service as may be considered in qualifying such employee for a retirement allowance under the provisions of the retirement system of the municipality to which such service shall have been rendered. If either of such municipalities shall not have adopted a retirement system or if the retirement systems of such municipalities shall not provide for retirement allowances on the same or substantially the same basis, such employee shall receive a retirement allowance based upon the terms of the retirement system of said city and contribution to such retirement allowances shall be made on the basis set forth in this subsection. The terms "municipality" and "municipalities" as used in this subsection, shall mean only the City of Hartford and The Metropolitan District, whichever is applicable.

(j) Whenever the pension commission shall determine that a pensioner who has been granted a retirement allowance based upon disability has sufficiently recovered from such disability to engage in gainful occupation or employment, it shall be incumbent upon the city to provide such pensioner with employment which, in the judgment of said commission, is suitable, at a rate of compensation consistent with the minimum rate which said commission shall establish. If such pensioner shall thereafter reenter active employment of the city, payment of the retirement allowance theretofore granted to such pensioner shall be suspended during the period or periods in which the pensioner is so employed. If, at any time, the city shall provide employment, approved by the commission, and the pensioner shall fail to accept such employment, such allowance shall be irrevocably canceled. If, at any time, subsequent to reemployment, the pensioner shall not be employed by the city for reasons beyond his control or deemed justifiable by the commission, the commission may order the payment of such retirement allowance to be resumed during the perid [period] of such unemployment, or until the city shall provide employment satisfactory to the commission. Any pensioner who shall reenter the active service of the city shall be required to make the monthly contributions provided for under subsection (l) of this section, and when thereafter retired under the provisions of subsections (b), (c) and (d) of this section shall be entitled to receive the same retirement allowance he was entitled to receive prior to such reemployment, and in addition thereto a further annual allowance for each additional year of active service, at the rate of two (2) percent of the average annual salary upon which such allowance was computed.

(k) Each application for retirement shall be made to the pension commission. The department of finance shall, upon request by any employee who is making contributions under the provisions of this section, notify such employee of the total amount of contributions credited to him as of the preceding April first.

(l) *Contributions.* Each person in the service of the city covered by this plan shall be required to contribute during the first six (6) years from September 1, 1943, a sum equal to two and one-half (2½) percent of his salary, including the full amount of any maintenance furnished to him, and thereafter such amount as the actuarial restudy would indicate as necessary, except that the maximum contribution shall not exceed five (5) percent of his salary; provided any member of the state teachers' retirement association covered by this plan shall be required to contribute during the first six (6) years from September 1, 1943, a sum equal to one and one-half (1½) percent of his salary, including the full amount of any maintenance furnished to him, and thereafter such amount as the actuarial restudy would indicate as necessary, except that the maximum contribution shall not exceed three (3) percent of his salary. Such contributions shall be deducted from the payroll and shall be entered in the general ledger under a separate fund to be known as the "Retirement Allowance Fund." Not more than one-half of the retirement allowances provided for under subsection (b) of this section shall be paid from the fund created by the employees' contributions. The treasurer, with the approval of the board of finance, may invest as much of said fund as is not required for current disbursements in accordance with the statutes governing the investments of savings bank funds. The board of finance may authorize the treasurer to execute all instruments necessary to convey or transfer any of the assets

77

belonging to said fund. The board of finance may authorize the transfer of any money remaining in said retirement allowance fund at the end of each fiscal year to the general fund for retirement allowance purposes only, and shall, thereafter, appropriate such moneys, with such additional moneys from the general fund as may be necessary, for the payment of retirement allowances provided for under this section and for no other purpose. An employee who entered the service of the United States in its armed forces after October 16, 1940, or who shall hereafter enter the service of the United States in its armed forces during the period while the United States shall be at war, shall not be required to contribute to the retirement allowance fund during the period of such service. If, not later than six (6) months after the termination of such period of service and within one (1) year after the United States shall have concluded treaties of peace with the countries with which it now is at war, such employees shall reenter the service of the city, his period of service in the armed forces of the United States shall be included in the determination of his period of service to the city in the same manner as if such service had been rendered, and the contributions required under this act had been paid, to the City of Hartford. Other employees absent from duty without pay shall make no contribuitons during such absence. Any person leaving the emnployment of the city before becoming eligible to retire may withdraw, on request, the total of all contributions made by him, without interest. If any employee who has made contributions to the retirement fund shall leave the employment of the city before becoming eligible to retire and if he shall not be reemployed by the city within five (5) years, he shall be conclusively presumed to have made the request referred to in the preceding sentence. In case of the death, either before or after retirement, of a person who has contributed to the retirement fund, his contributions to said fund, without interest, less any retirement allowance payments made to him, shall be refunded by the treasurer to the beneficiary named by such person, and the records of the pension commission shall be conclusive as to whether a beneficiary shall have been named and, if so, the name of such beneficiary. If a person shall have named more than one (1) beneficiary, then, unless otherwise specifically provided by him, the refund shall be made equally to such of the named beneficiaries as survive him. If no named beneficiary shall survive a person, the refund shall be made to the executors or administrators of such person, except that, if the amount shall be less than five hundred dollars ($500.00), the refund may, at the option of the treasurer, be made in accordance with the terms of section 4970 of the general statutes.

(m) *Credit for war service.* Any employee of the city who entered the service of the United States in its armed forces and auxiliaries thereof after October 16, 1940, or who enters the service of the United States in its armed forces and auxiliaries thereof during the period while the United States is at war, and returns to the service of the city shall be credited with the period of such federal service to the same extent as though it had been a part of the term of his employment by the city. Except as otherwise provided in this section, in determining the length of service for the purpose of this section, (1) service prior to September 1, 1943, shall be included only for persons who commence to contribute to the retirement fund before October 1, 1943; (2) no month after August 31, 1943, shall be counted if the employee made no contributions to the retirement fund for such month; and (3) if the employee shall request the withdrawal of his contributions in accordance with subsection (l), no service prior to the date of such request shall be counted in determining his service.

(n) *Payment by city and employees.* If the income of the retirement allowance fund shall be found at any time insufficient to meet the requirements upon it, the city shall make an appropriation to make good such deficiency, and any prospective deficiency in the income of the fund shall be provided by the city in its annual appropriations. Except as otherwise provided herein, all persons in the service of the city shall contribute to said fund unless they shall have notified the pension commission in writing before September 15, 1943, that they elect to be excluded from the provisions of this section. If they shall not so contribute, they shall be deemed to have waived all rights for retirement allowance under the provisions of this section or any subsequent retirement