UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ELENA POMA F/K/A ELENA AQUINO   :   CIVIL ACTION NO. 3:02CV543 (MRK)
    Plaintiff,

v.

CITY OF HARTFORD/
HEALTH DEPARTMENT   :   DECEMBER 31, 2003
    Defendants.

## PLAINTIFF'S LOCAL RULE 56(A)2 STATEMENT

Pursuant to D. Conn. L. Civ. R. 56, the Plaintiff submits her reply to the Defendant's Statement of Facts Not in Dispute in support of its Motion for Summary Judgment:

1. Plaintiff, Elena Poma, formerly known as Elena Aquino, is an Hispanic female and an employee of the Defendant City of Hartford. From December 30, 1996 until March 12, 1999, Plaintiff was employed as a Senior Clerk Typist in the City of Hartford's Health Department. Transcript of the February 13, 2003 Deposition of Elena Poma ("Poma Tr.") (attached hereto as Exhibit A) at 18,20,22,52; Exhibits 1-3 to the Affidavit of Katherine McCormack ("McCormack Afft."), which is attached hereto as Exhibit B.

ADMIT

2. The City of Hartford ("City") is a municipality in Connecticut. During the relevant time period (1996-1999), the City maintained a health department. However, the City's health department was not a legal entity.

ADMIT

3. During all relevant times, Katherine McCormack was the City's Director of Health. McCormack Afft. (Exhibit B) at ¶2.

ADMIT

4.  Kevin Hood was Plaintiffs supervisor in the City's Health Department. McCormack Afft. at ¶3.

ADMIT

City of Hartford Policies & Procedures

5.  At all relevant times, the City of Hartford operated under a civil service system. Under the Charter of the City of Hartford, as it existed at the time, "the civil service of the city shall be divided into the unclassified and classified service." All positions within the City were deemed to be part of the classified service unless explicitly excluded therefrom by the Charter. Charter of the City of Hartford (hereafter "Charter") (attached hereto as Exhibit C) at Ch. XVI §§7 (p. 44); see also, Conn. Gen. Stat. §§7-407 et seq. (allowing for adoption of merit systems by municipalities).

ADMIT

6.  Within the classified service, the Personnel Director was charged, inter alia, with holding competitive examinations for all original appointments and, whenever practicable, for promotions in the classified service. Such examinations were "restricted to persons reasonably qualified by education and experience to perform the duties of the position." Charter, Ch. XVI §§2(a).

ADMIT

7.  The Charter empowered the Personnel Director to "prepare and recommend to the personnel board rules to carry out" the provisions of the Charter regarding the Department of Personnel. Charter, Ch. XVI §§2(e). The City of Hartford's Personnel Board was charged with considering, adopting or amending rules proposed by the Personnel Director. Charter, Ch. XVI

§§5(b).

ADMIT

8. Under the Charter, the Personnel Rules had "the force and effect of law. Among other things they shall provide for the method of holding competitive examinations; the method of certifying eligibles for appointment...." Charter, Ch. XVI §§6.

ADMIT

9. The Personnel Rules and Regulations for the City of Hartford provided that: "All examinations for positions in the classified service shall be published by posting announcements in the Personnel Office, on official bulletin boards, and in such other places as the Director of Personnel deems advisable.... The announcements shall specify... the qualifications desirable for the performance of the work of the class; the time, place and manner of making application; the closing date for receiving application; and other pertinent information." Personnel Rules & Regulations, Rule V §§ 1 (p. 5-1) (attached as Exhibit 1 to Affidavit of Susan Comstock, which is attached hereto as Exhibit D); see also, Poma Tr. at 83-84 (Personnel I Department does the posting).

ADMIT

10. Applications filed in response to the posting of a job announcement were required to be made on the forms provided by the Director of Personnel. Personnel Rules & Regulations, Rule V §§2 (p. 5-1).

ADMIT

11. The Personnel Rules & Regulations provided: "The Director of Personnel shall reject any application which indicates on its face that the applicant does not possess the minimum qualifications required for the position or who fails to file by the announced closing

date for receiving applications unless prior to such date an extension has been publicly announced." Personnel Rules & Regulations, Rule V §§3 (p. 5-1).

ADMIT

12. Once an applicant's application was deemed to meet the minimum qualifications for the position, that applicant would be eligible for a competitive examination. Personnel Rules & Regulations, Rule VI §§ 1 (p. 6-1); see also, Poma Tr. at 84 (Personnel Department does the testing).

DENIED

13. After testing, the names of eligible applicants were listed on an employment list for the position based on their test scores. Personnel Rules & Regulations, Rule VII §§2 (p. 7-1).

ADMITTED THAT THE PERSONNEL RULES AND REGULATIONS STATE THIS. THE PLAINTIFF HAS NO KNOWLEDGE TO ADMIT OR DENY WHETHER THIS PROCEDURE WAS FOLLOWED AT ANY GIVEN TIME.

14. In filling one vacancy in the classified service, the Personnel Department certified the top three names on the relevant employment list to the department head (the Director of the relevant department within the City). Personnel Rules & Regulations, Rule VIII §§4 (p. 8-1).

ADMITTED THAT THE PERSONNEL RULES AND REGULATIONS STATE THIS. THE PLAINTIFF HAS NO KNOWLEDGE TO ADMIT OR DENY WHETHER THIS PROCEDURE WAS FOLLOWED AT ANY GIVEN TIME.

15. The department head (or appointing authority) was authorized to select from among the three certified names, after an interview and any investigation, in filling the vacancy in the classified service. Personnel Rules & Regulations, Rule VIII §§5 (p. 8-2); see also, Poma Tr. at 84 (usually the department head conducts the interview and makes the selection).

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ELENA POMA F/K/A ELENA AQUINO    :    CIVIL ACTION NO. 3:02CV543 (MRK)
    Plaintiff,

v.

CITY OF HARTFORD/
HEALTH DEPARTMENT    :    DECEMBER 31, 2003
    Defendants.

## PLAINTIFF'S LOCAL RULE 56(A)2 STATEMENT

Pursuant to D. Conn. L. Civ. R. 56, the Plaintiff submits her reply to the Defendant's Statement of Facts Not in Dispute in support of its Motion for Summary Judgment:

1. Plaintiff, Elena Poma, formerly known as Elena Aquino, is an Hispanic female and an employee of the Defendant City of Hartford. From December 30, 1996 until March 12, 1999, Plaintiff was employed as a Senior Clerk Typist in the City of Hartford's Health Department. Transcript of the February 13, 2003 Deposition of Elena Poma ("Poma Tr.") (attached hereto as Exhibit A) at 18,20,22,52; Exhibits 1-3 to the Affidavit of Katherine McCormack ("McCormack Afft."), which is attached hereto as Exhibit B.

ADMIT

2. The City of Hartford ("City") is a municipality in Connecticut. During the relevant time period (1996-1999), the City maintained a health department. However, the City's health department was not a legal entity.

ADMIT

3. During all relevant times, Katherine McCormack was the City's Director of Health. McCormack Afft. (Exhibit B) at ¶2.

ADMIT

4. Kevin Hood was Plaintiffs supervisor in the City's Health Department. McCormack Afft. at ¶3.

ADMIT

City of Hartford Policies & Procedures

5. At all relevant times, the City of Hartford operated under a civil service system. Under the Charter of the City of Hartford, as it existed at the time, "the civil service of the city shall be divided into the unclassified and classified service." All positions within the City were deemed to be part of the classified service unless explicitly excluded therefrom by the Charter. Charter of the City of Hartford (hereafter "Charter") (attached hereto as Exhibit C) at Ch. XVI §§7 (p. 44); see also, Conn. Gen. Stat. §§7-407 et seq. (allowing for adoption of merit systems by municipalities).

ADMIT

6. Within the classified service, the Personnel Director was charged, inter alia, with holding competitive examinations for all original appointments and, whenever practicable, for promotions in the classified service. Such examinations were "restricted to persons reasonably qualified by education and experience to perform the duties of the position." Charter, Ch. XVI §§2(a).

ADMIT

7. The Charter empowered the Personnel Director to "prepare and recommend to the personnel board rules to carry out" the provisions of the Charter regarding the Department of Personnel. Charter, Ch. XVI §§2(e). The City of Hartford's Personnel Board was charged with considering, adopting or amending rules proposed by the Personnel Director. Charter, Ch. XVI

§§5(b).

ADMIT

      8.    Under the Charter, the Personnel Rules had "the force and effect of law. Among other things they shall provide for the method of holding competitive examinations; the method of certifying eligibles for appointment...." Charter, Ch. XVI §§6.

ADMIT

      9.    The Personnel Rules and Regulations for the City of Hartford provided that: "All examinations for positions in the classified service shall be published by posting announcements in the Personnel Office, on official bulletin boards, and in such other places as the Director of Personnel deems advisable.... The announcements shall specify... the qualifications desirable for the performance of the work of the class; the time, place and manner of making application; the closing date for receiving application; and other pertinent information." Personnel Rules & Regulations, Rule V §§ 1 (p. 5-1) (attached as Exhibit 1 to Affidavit of Susan Comstock, which is attached hereto as Exhibit D); see also, Poma Tr. at 83-84 (Personnel I Department does the posting).

ADMIT

      10.    Applications filed in response to the posting of a job announcement were required to be made on the forms provided by the Director of Personnel. Personnel Rules & Regulations, Rule V §§2 (p. 5-1).

ADMIT

      11.    The Personnel Rules & Regulations provided: "The Director of Personnel shall reject any application which indicates on its face that the applicant does not possess the minimum qualifications required for the position or who fails to file by the announced closing

date for receiving applications unless prior to such date an extension has been publicly announced." Personnel Rules & Regulations, Rule V §§3 (p. 5-1).

ADMIT

  12. Once an applicant's application was deemed to meet the minimum qualifications for the position, that applicant would be eligible for a competitive examination. Personnel Rules & Regulations, Rule VI §§ 1 (p. 6-1); see also, Poma Tr. at 84 (Personnel Department does the testing).

DENIED

  13. After testing, the names of eligible applicants were listed on an employment list for the position based on their test scores. Personnel Rules & Regulations, Rule VII §§2 (p. 7-1).

ADMITTED THAT THE PERSONNEL RULES AND REGULATIONS STATE THIS. THE PLAINTIFF HAS NO KNOWLEDGE TO ADMIT OR DENY WHETHER THIS PROCEDURE WAS FOLLOWED AT ANY GIVEN TIME.

  14. In filling one vacancy in the classified service, the Personnel Department certified the top three names on the relevant employment list to the department head (the Director of the relevant department within the City). Personnel Rules & Regulations, Rule VIII §§4 (p. 8-1).

ADMITTED THAT THE PERSONNEL RULES AND REGULATIONS STATE THIS. THE PLAINTIFF HAS NO KNOWLEDGE TO ADMIT OR DENY WHETHER THIS PROCEDURE WAS FOLLOWED AT ANY GIVEN TIME.

  15. The department head (or appointing authority) was authorized to select from among the three certified names, after an interview and any investigation, in filling the vacancy in the classified service. Personnel Rules & Regulations, Rule VIII §§5 (p. 8-2); see also, Poma Tr. at 84 (usually the department head conducts the interview and makes the selection).

ADMITTED

16. The Charter prohibits discrimination on the basis of race and national origin. Charter, Ch. XVI §§12 (p. 45). The Personnel Rules & Regulations prohibit discrimination on the basis of race, national origin and sex. Personnel Rules & Regulations, Rule XIV §§4 (p. 14-1).

ADMITTED

The 1997 Posting

17. On or about December 4, 1997, the City of Hartford posted a promotional opportunity for the position of Public Health Sanitarian Inspector. Poma Tr. at 79-80 & Exhibit 7 thereto.

ADMITTED

18. A Public Health Sanitarian Inspector is also known as a "Lead Inspector." Poma Tr. at 53; Affidavit of Susan Comstock ("Comstock Afft.") (attached as Exhibit D) at ¶5.

ADMITTED

19. This posting stated that applications for the position would be accepted until Friday, December 19, 1997. Poma Tr. at Exhibit 7.

ADMITTED

20. Plaintiff never submitted an application in response to this posting. Poma Tr. at 80.

ADMITTED

21. Plaintiff contends that she was unable to submit an application in response to this posting because she was on maternity leave and was not aware that the position had been posted. Poma Tr. at 80-82.

ADMITTED

22. Plaintiff returned to work in February of 1998, after her maternity leave, and discovered that the Lead Inspector position had been filled. Amended Complaint at ¶16.

ADMITTED

The 1998 Posting

23. On or about November 25, 1998, the City of Hartford posted a promotional opportunity for the Public Health Sanitarian Inspector (or Lead Inspector) position. Poma Tr. at 128-130 & Exhibit 12 thereto; Comstock Afft. (attached as Exhibit D) at ¶5.

ADMITTED

24. The posting stated that applications would be accepted until Friday, December 18, 1998 and that the qualifications included graduation from high school, two years of college and two years of "responsible experience in the field of public health sanitation, involving public contact." Poma Tr. at Exhibit 12.

ADMITTED

25. Plaintiff filed a timely application in response to the posting. Poma Tr. at 131-32 & Exhibit 13 thereto.

ADMITTED

26. Plaintiffs application did not show the number of credits that she had accumulated towards a college degree and she did not supplement her application by submitting a college transcript reflecting her progress towards a degree. Poma Tr. at 132.

ADMITTED

27. Plaintiff's application indicated that she had experience since December of 1996

as a Senior Clerk Typist in the Health Department. Poma Tr. at Exhibit 13 (p. 2).

ADMITTED

28.     Although the application indicated that Plaintiff had been employed in the Health Department since December of 1996, Plaintiff, as of the deadline for applications (December 18, 1998), had not completed two full years of service in the Health Department, since she did not start work in the Health Department until December 30, 1996. See, Poma Tr. at Exhibit 13 (p. 2) & Exhibit 1 to the McCormack Afft. (Exhibit B) (indicating Plaintiff's start date in the Health Department).

ADMITTED

29.     Plaintiff contends that she accompanied the City's Lead Inspectors on lead inspections since February of 1997. Poma Tr. at 132-33 & Exhibit 4 thereto (at 116-7); Amended Complaint at 112.

ADMITTED

30.     Plaintiff admits that she accompanied Lead Inspectors on lead inspections for less than two years. Poma Tr. at 133.

ADMITTED

31.     On or about December 29, 1998, Plaintiff received a letter from Susan Comstock of the Personnel Department, indicating that Plaintiff's application could not be considered for the position because the application reflected neither the minimum educational requirements nor the minimum experience requirements as stated on the job announcement. Poma Tr. at 134-35 & Exhibit 14 thereto; Comstock Afft. at 18 & Exhibit 2 thereto.

ADMITTED

32.     Plaintiff admits that, prior to receiving this letter, she had never met Susan

Comstock. Poma Tr. at 135.

ADMITTED

Likewise, Susan Comstock has no recollection of ever meeting Ms. Poma prior to reviewing her application. Comstock Afft. at ¶9.

PLAINTIFF CANNOT ADMIT NOT DENY THIS ALLEGATION.

33.  Prior to reviewing Ms. Poma's application, Susan Comstock did not consult with anyone regarding such application. Comstock Afft. at ¶10.

PLAINTIFF CANNOT ADMIT NOT DENY THIS ALLEGATION.

34.  Prior to notifying Ms. Poma that her application did not reflect the minimum qualifications for the position and that, consequently, such application could not be considered, Susan Comstock did not consult with anyone outside of the Personnel Department regarding her determinations. Comstock Aff't. at ¶12.

PLAINTIFF CANNOT ADMIT NOT DENY THIS ALLEGATION BECAUSE SHE HAS NO KNOWLEDGE.

35.  At the time that she reviewed Ms. Poma's application, Susan Comstock had no knowledge as to whether or not Ms. Poma was pregnant. Comstock Aff't. at ¶11.

PLAINTIFF CANNOT ADMIT NOT DENY THIS ALLEGATION BECAUSE SHE HAS NO KNOWLEDGE.

Plaintiff's Lay-Off

36.  Plaintiff was laid off from her job as a Senior Clerk Typist in the Health Department as of March 12, 1999 due to a reduction in federal funds and because Plaintiff was the least senior Senior Clerk Typist in the Health Department. February 23, 1999 Letter from Katherine McCormack to Plaintiff (attached as Exhibit 2 to the McCormack Aff't. [Exhibit B]);

see also, March 19, 1999 Memo from Katherine McCormack to Plaintiff (attached as Exhibit 3 to the McCormack Afft.).

THE PLAINTIFF ADMITS THAT SHE RECEIVED THE LETTER STATING THAT SHE WAS LAID OFF DUE TO A REDUCTION IN FEDERAL FUNDS. PLAINTIFF DENIES THAT WAS THE REASON SHE WAS LAID OFF.

The CHRO Complaint

37. On February 18, 1999, Plaintiff filed her complaint with the Connecticut Commission on Human Rights and Opportunities ("CHRO"). Poma Tr. at 64 & Exhibit 4 thereto.

ADMITTED

38. Plaintiff did not obtain a Release of Jurisdiction from the CHRO.

ADMITTED, DUE TO THE ERROR OF THE CHRO

Plaintiff's Allegations Regarding Racial Harassment

39. Plaintiff is not claiming that she was sexually harassed. Poma Tr. at 75-77.

ADMITTED

40. Katherine McCormack spoke to Kevin Hood regarding Plaintiff not being at her desk and socializing for an extended period of time. Transcript of the June 19, 2003 Deposition of Katherine McCormack ("McCormack Tr.") (relevant portions of which are attached hereto as Exhibit E) at 30-31, 48.

PLAINTIFF HAS CANNOT ADMIT OR DENY THIS ALLEGATION.

41. Mr. Hood communicated these concerns to Plaintiff. Poma Tr. at 30-31; Amended Complaint at ¶24.

ADMITTED THAT KEVIN HOOD SPOKE TO PLAINTIFF REGARDING KATHERINE

MCCORMACK.

42. According to Plaintiff, Ms. McCormack overheard Plaintiff speaking, in Spanish, with a co-worker, Mathilde Bello, but said nothing directly to Plaintiff. Poma Tr. at 30-32, 35-36.

ADMITTED

43. At a later time, Plaintiff was again conversing with Ms. Bello in Spanish when she was approached by Mr. Hood who told her that this was what Ms. McCormack was talking about. Poma Tr. at 31-32, 35-36; Amended Complaint at ¶25.

ADMITTED

44. On the same day that Mr. Hood spoke to Plaintiff, Plaintiff and Ms. Bello met with Mr. Hood to express concern over Mr. Hood's comments. Poma Tr. at 36-37.

ADMITTED

45. After her meeting with Mr. Hood, Plaintiff went to the City's Personnel Department and filed a complaint against Mr. Hood. Poma Tr. at 38, 46 & Exhibit 2 thereto; Amended Complaint at ¶26.

ADMITTED

46. Plaintiff claims to have never received the results of the Personnel Department's investigation. Poma Tr. at 47-48 & Exhibit 3 thereto.

ADMITTED

Additionally, Plaintiff claims that she left one voice mail message for Godfred Ansah, Personnel Administrator/EEO Officer, and cannot recall undertaking any other efforts to follow up on her complaint. Poma Tr. at 48-51.

AMITTED

47. Plaintiff was never disciplined as a result of these two conversations with Ms. Bello. Poma Tr. at 44-45, 54-55; McConnack Aff't. at 14.

DENIED. PLAINTIFF WAS RETALIATED AGAINST AS A RESULT OF THESE INCIDENTS.

48. On or around October 27, 1998, Owen Humphries, who was Plaintiff's superior, sent Plaintiff a note requesting her to call to attend a training session on the lead inspection equipment used by Hartford Lead Inspectors ("RMD-XRF Training"). Poma Tr. at 110-111 & Exhibit 10 thereto.

ADMITTED

49. Plaintiff submitted a request to attend the RMD-XRF Training to her supervisor, Kevin Hood, and Mr. Hood denied such request, noting that such training did not fall within her job description. Poma Tr. at 112-114 & Exhibit 11 thereto.

ADMITTED.

50. According to Plaintiff, on the same day that her request for RMD-XRF Training was denied, Mr. Hood granted her permission to attend a lead abatement training. Poma Tr. at 116-117.

ADMITTED

51. Plaintiff attended the lead abatement training. Poma Tr. at 117.

ADMITTED

52. In Plaintiff's opinion, the RMD-XRF Training was not better than the lead abatement training. Poma Tr. at 118.

ADMITTED

53. According to Plaintiff, the then-Deputy Director of Health for the City informed Plaintiff that she could not authorize the RMD-XRF Training because the Lead Inspector position was open and granting Plaintiff the opportunity to attend the RMD-XRF Training would provide Plaintiff with an unfair advantage over other applicants. Amended Complaint at ¶31.

ADMITTED

54. Plaintiff never filed a grievance over the denial of the RMD-XRF Training, nor did she file any other complaint. Poma Tr. at 124, 128.

ADMITTED

55. Plaintiff has never filed a grievance while employed by the City. Poma Tr. at 124.

ADMITTED

## FACTS IN DISPUTE

1. Plaintiff was disciplined as a result of these two conversations with Ms. Bello.

2. The discipline involved Mr. Hood's retaliation against Ms. Poma for filing her internal complaint.

3. The retaliation was the denial of the RMD-XRF training.

4. The RMD-XRF training may have qualified Ms. Poma for the Lead Inspector position.

5. Prior to reviewing Ms. Poma's application, Defendants claim that Susan Comstock did not consult with anyone regarding such application.

6. Prior to notifying Ms. Poma that her application did not reflect the minimum qualifications for the position and that, consequently, such application could not be considered, Susan Comstock did not consult with anyone outside of the Personnel Department regarding her determinations.

7. At the time that she reviewed Ms. Poma's application, Defendants claim that Susan Comstock had no knowledge as to whether or not Ms. Poma was pregnant. However, the Deputy Director of Personnel had knowledge that Plaintiff was pregnant.

8. That Susan Comstock was the sole decision-maker in the application process.

9. That the Defendant often makes exceptions to the application process for white males (Affidavit of Poma ¶33)

10. That the Defendant never requested a transcript of requested the number of college credits on the application for employment.

11. That given that the Plaintiff worked from December 30, 1996 and the letter denying her the position of lead inspector was dated December 29, 1998, the Defendant makes the assertion that the Plaintiff had not worked two full years.

PLAINTIFF

BY: /s/ Christine E. Corriveau
Christine E. Corriveau
Miniter & Associates
100 Wells Street
Hartford, CT 06103
(860) 560-2590
Federal Bar # No.: ct21212

## CERTIFICATION

This is to certify that a copy of the foregoing has been mailed to the following counsel of record this 31st day of December, 2003:

Joseph W. McQuade
Kainan Escalera & McHale, PC
21 Oak Street Suite 601
Hartford, CT 06106

Christine E. Corriveau