UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED

ELENA POMA F/K/A ELENA AQUINO     :     CIVIL ACTION NO. 3:02CV543 (MRK)
                  Plaintiff,

v.

CITY OF HARTFORD/
HEAL TH DEPARTMENT     :     DECEMBER 31, 2003
              Defendants.

## AFFIDAVIT OF CHRISTINE E. CORRIVEAU

The undersigned, being over the age of eighteen years, and believing in the obligations of

an oath, and being duly deposed, hereby make affidavit and state:

1.     That I am an attorney with Miniter and Associates, and that this office represents

    the Plaintiff in the above captioned matter.

2.     That Ms. Poma was formerly represented by Robert Muchinsky at the CHRO

    level.

3.     That on September 19, 2001, I drafted and Attorney Francis Miniter signed an

    appearance letter which requested a Release of Jurisdiction. The letter was sent to

    the CHRO at their address at 1229 Albany Avenue, Hartford, Connecticut. (See

    Exhibit A)

4.     That on November 8, 2001, the CHRO rejected Ms. Poma's Request for

    Reconsideration and sent the decision to Ms. Poma. The decision was cc'd to

    Attorney Muchinsky. No copy of the decision was forwarded to this office

    despite our appearance in the matter. (See Exhibit B)

5.     On or about January 4, 2002, I called the CHRO to inquire where the Right to Sue

    letter was. I was informed that the CHRO had already made its decision and the

case was closed. The CHRO refused to act on our request for a Release of Jurisdiction.

6.    Further correspondence between Attorney Miniter and the CHRO ensued. On or about February 4, 2002, the Managing Director & Commission Attorney Raymond P. Pech wrote to Attorney Miniter and noted that the "file was located in our Special Enforcement Unit, located at the Commission's Central Office on 21 Grand Street in Hartford while the reconsideration request was pending. As the September 19, 2001 letter is addressed to our Capitol Region office at 1229 Albany Avenue, it is possible that the letter was misplaced in transit..." (See Exhibit C). The letter further went on to refuse to grant a Release of Jurisdiction.

Dated at Hartford this 31st day of December, 2003.

Christine E. Corriveau

Subscribed and sworn to before me this 31st day of December, 2003.

Daniel C. Spineti
Comm. of the Superior Court

# EXHIBIT A

*Miniter and Associates*
*Attorneys At Law*
*147 Charter Oak Avenue*
*Hartford, Connecticut 06106-5100*

860-560-2590   (Phone)
860-560-3238   (Fax)

Francis A. Miniter   CT, NY                                    Daniel C. Spineti          CT
Michael T. Landino   CT                                       Christine E. Corriveau     CT

Christine E. Corriveau
e-mail: cecorriveau@hotmail.com

September 19, 2001


Connecticut Commission on Human Rights and Opportunities
Reconsideration Department
1229 Albany Avenue
Hartford, CT 06112

Re:    Elena Aquino v. City of Hartford
       Request for Right to Sue Letter
       CHRO # 9910333

Dear Sir:

Please be informed that I represent the Complainant, Elena Aquino in the above referenced matter. Pursuant to P.A. 01-95, Ms. Aquino respectfully requests that you issue a right to sue letter to enable her to pursue her legal remedies in court.

Please feel free to call me if you have any questions.

Very truly yours,

Francis A. Miniter

# EXHIBIT B



State of Connecticut

## COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES

21 Grand Street, Hartford, CT 06106  (860) 541-3400  FAX (860) 246-5419
Toll Free in Connecticut  1-800-477-5737  www.state.ct.us/chro
TDD (860)541-3459

November 8, 2001

**Certified Mail No.**  7099 3400 0009 0144 7072

Elena Aquino
33 Daisy Lane
South Windsor, CT  06074

**Subject:  Reconsideration Request - REJECTED**

**Re:  Elena Aquino v. City of Hartford**
       **Case No. 9910333**

Dear Ms. Aquino:

Your complaint, which is noted above, was dismissed by this agency. You filed a timely request for reconsideration.  Your request for reconsideration has been carefully reviewed by staff, who have recommended it to be rejected.  A copy of the review is enclosed for your information and review.  I have accepted the recommendation and denied your request.  This denial of reconsideration is the Commission's final decision on your complaint.

Denial may be appealed by filing a petition in the Connecticut Superior Court for the judicial district where the discriminatory practice is alleged to have occurred or in the judicial district where you reside or transact business.  Such appeal must be made in accordance with the provisions of relevant Connecticut General Statutes including Section 4-183 as it reads after July 1, 1989.  Copies of the petition must be served upon this agency at its principal office or the Office of the Attorney General and on all parties listed in the decision.

Under Public Act 01-95, effective July 1, 2001:

> (b) The executive director of the commission may, upon the complainant's request, issue a release from the commission if (1) a complaint is dismissed pursuant to subsection (b) of section 46a-83, and (2) the complainant requests reconsideration of the dismissal and the reconsideration request has been granted or

## CHRO

*Safeguarding Civil Rights in Connecticut*

Affirmative Action/ Equal Opportunity Employer



denied, or the reconsideration request has not yet been acted
upon in accordance with subsection (e) of section 46a-83.

Whenever a reconsideration request has been granted or denied, a
request for a release from the commission shall be made within
fifteen days of receipt of the notice granting or denying such
reconsideration request. The complainant may, within ninety
days of receipt of the release from the commission, bring an
action in accordance with section 46a-100 and sections 46a-102
to 46a-104, inclusive.

Very truly yours,

Cynthia Watts Elder
Executive Director

CWE/sel


Enclosure


cc:  Patricia C. Washington, Director of Personnel, City of Hartford
     Attorney Robert B Muchinsky
     Ivan A Ramos, Assistant Corporation Counsel, City of Hartford

STATE OF CONNECTICUT
COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES

Elena Aquino
COMPLAINANT

                                DECISION ON RECONSIDERATION

vs.                                  REQUEST - Denied

City of Hartford
RESPONDENT

| | |
|---|---|
| CCHRO Case No. 9910333 | Date Filed: 02-18-99 |
| EEOC Case No. 16a991180 | Date Filed: 02-18-99 |

## SECTION I - SUMMARY OF ORIGINAL INVESTIGATION

This case was *dismissed upon a finding of no reasonable cause* by the Commission on May 10, 2000. The Complainant was notified of this disposition in a letter sent by certified mail on that date. The Complainant had been previously provided a copy of the draft summary and was provided the opportunity to provide comment on the summary and evidence in the Commission's file. The Complainant submitted comments which were reviewed and considered by the investigator before the case was dismissed.

## SECTION II - SUMMARY OF RECONSIDERATION REQUEST

The Complainant has requested reconsideration in a document received on May 25, 2000. The Connecticut General Statutes § 46a-83 requires that reconsideration requests be received within fifteen (15) days from the date of dismissal. Accordingly, the request for reconsideration is timely having been received fifteen (15) days after the date of dismissal.

The reasons given for requesting reconsideration are summarized as follows:

### Failure to Hire/Promote

1. The investigator issued findings that are contrary to fact and/or law.
2. The investigator concluded that Complainant did not clearly specify her experience on the applications she submitted and in doing so short changed her own experiences. Contrary to the investigator's finding, the Complainant's employment application submitted to Respondent specifically described her experiences with regard to a Lead Inspector position.
3. The investigator stated that "although the investigator believes the Respondents Health Department Personnel were aware of the nature of the work the Complainant was performing, the fact that the Respondents personnel department failed to

recognize that information from the Complainant's application is seen as a significant reason for the Complainant's rejection from initial consideration for the position." Its inconceivable the Human Resources Department, in search for someone to fill a Lead Inspector position, when faced with an application which specifically describes someone with Lead Inspector experience, would reject that application as not meeting the minimum requirements on its face, without due consideration, and then hire someone for the position with even less experience than the Complainant. The position taken by the investigator is not supported by the facts.

4. The investigator found that the job description had an ambiguous description of the educational requirements for the position. The educational qualifications are "graduation from a standard high school, or its equivalent, supplemented by two years of college." The Complainant stated on her application more attendance than two years of college and believed that her qualifications had been clearly stated on the application.

## Retaliation

1. The investigator found that the Complainant was allowed to attend training courses prior to her complaint being filed but not after. The investigator described the Respondent's explanation as "legitimate, albeit puzzling."

2. The investigator concluded that there was insufficient evidence from which to establish a nexus between the denial of training opportunity and the Complainant having engaged in a protective conduct. Complainant filed her complaint against her supervisor on October 14, 1998 and was denied training on November 5, 1998, twenty-one days later, by the person complained of, Kevin Hood.

## Credibility of Respondents

1. In the present matter, the investigator's own words throughout the finding included statements such as "the investigator does not buy the Respondent" position", "the investigator finds this explanation incomprehensible in light of other training courses that the Complainant was allowed to participate in" or "difficult to accept" and "explanation given by the Respondent was puzzling." These comments tend to question the plausibility of the explanations and reasons given by Respondent and raises questions of their credibility. Yet although the investigator had her own stated doubts, she failed to act on them.

## SECTION III - ANALYSIS

In accordance with Section 46a-79(d) of the Regulations of Connecticut State Agencies, the Commission may reconsider such finding of no cause if:

1) an error of fact or law should be corrected;
2) new evidence has been discovered which materially affects the merits of the case and which for good reason, was not presented during the investigation; or

3) other good cause for reconsideration has been shown."

Having conducted a thorough and complete review of Complainant's request for reconsideration and those portions of the record necessary to address this request, the undersigned reviewer makes the recommendation indicated in Section IV for the reasons that follow:

Here, Complainant alleges she was denied training, denied hire/promotion to a Public Health Sanitation Inspector position due to her ancestry [Puerto Rican], gender [female], pregnancy and retaliated against for filing an internal complaint against her supervisor. A review of the record indicates Complainant held a Senior Clerk Typist position and "performed epidemiological and lead investigation under the supervision of the current Lead Inspectors." At the outset, Complainant was not considered for said position because her application failed to reflect the minimum educational and experience requirement. The Complainant noted on her application that she was attending Manchester Community Technology College from "92-Present." Although the investigator concluded "that the wording on the job announcement, specifically two years of college is ambiguous" but "Complainant did not make clear on the application the number of credits she had obtained from MCTC and so the mere attendance for 2+ years is insufficient." The investigator concurred with the Respondent's in that "Complainant did not contact the Personnel Dept. following her receipt of the rejection letter to explain that her qualifications had been misunderstood or had not been clearly stated."

As for the minimum experience requirement, the investigator concluded that a reasonable person would acknowledge Complainant had satisfied the minimum experience requirement but "did not clearly specify her experience on the application she submitted and by so doing shortchanged her own experiences."

The record notes that Complainant had previously filed a harassment complaint in October of 1998 and; shortly thereafter, Complainant's request for training was denied. It is not disputed that the aforementioned incidents are close in time; however, the record indicates her training request was denied after she "had threatened a grievance for working out of class" and said training would have been out of her classification." Respondent further stated that granting her training would give her an unfair advantage over the other applicants.

The Complainant's Request for Reconsideration highlights the investigator's opinions and reservations about certain findings of fact but does not demonstrate how the investigator erred in any of the findings. A review of the summary and record shows that the findings and conclusions are supported by substantial evidence in the record. Although it is noted that the credibility of the Respondent's evidence is not without any question, the investigator's reliance upon the Respondent's evidence was not unreasonable, arbitrary or capricious. It should be noted that the possibility of drawing two inconsistent conclusions from the evidence does not prevent a finding from being supported by substantial evidence. See <u>Dolgner v. Alander</u>, 237 Conn. 272, 281 (1996).

In sum, a review of the summary and record indicates that a thorough investigation was conducted, findings were made on all material issues in dispute and these findings were supported by substantial evidence in the record. All inferences drawn are reasonable. Therefore, reconsideration is not warranted.

## SECTION IV.- RECOMMENDATION

For the reason(s) set forth herein, it is hereby recommended that the request for reconsideration be REJECTED.

11/05/01
DATE

Julie Tse
Assistant Commission Counsel I

ADOPTED

11/6/01
DATE

Cynthia Watts Elder
Executive Director

# EXHIBIT C



State of Connecticut

## COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES

21 Grand Street, Hartford, CT 06106  (860) 541-3400 FAX (860) 246-5419
Toll Free in Connecticut 1-800-477-5737  www.state.ct.us/chro
TDD (860) 541-3459

February 4, 2002

Attorney Francis A. Miniter
147 Charter Oak Ave.
Hartford, CT  06106-5100

RE: **Aquino v. City of Hartford**; No: 9910333
     **Your Correspondence Dated 1/24/02**

Dear Mr. Miniter:

By letter dated January 24, 2002, you wrote to Philip A. Murphy, Jr., Commission Counsel, raising several concerns about the processing of this matter. Your letter has been referred to me for response. I have enclosed a copy of your letter for reference; I will respond to each point, from the information at hand, as best I can.

1) The file contains no copy of an appearance, and request for a "right to sue" letter, dated September 19, 2001. The copy of same accompanying your letter is the first I have seen of this correspondence. The file was located in our Special Enforcement Unit, located at the Commission's Central Office on 21 Grand Street in Hartford, while the reconsideration request was pending. As the September 19, 2001 letter is addressed to our Capitol Region office at 1229 Albany Avenue, it is possible that the letter was misplaced in transit; no one in the Capitol Region recalls ever having received your letter, however.

2) Our file shows that Attorney Muchinsky represented the Complainant throughout this proceeding; there is no withdrawal of his appearance on file.

3) Attorney Muchinsky did request reconsideration, on behalf of Ms. Aquino, in May of 2000. The request had not been acted upon by September 19, 2001.

4) The request for reconsideration was denied on or about November 7, 2001. You were not copied because, as noted, the file contained no record of an appearance by you. Our records do indicate that Attorney Muchinsky was copied on the notice of denial of reconsideration.

5) As Diedre Morris is not in today, I cannot confirm the contents of any phone conversation she may have had with Christine Corriveau on or about January 4, 2002. As the reconsideration request had been denied some two months earlier, Ms. Morris may well have informed Ms. Corriveau of that fact.

6) As with the letter referenced in # 1, the file does not contain the referenced letter dated January 4, 2002.

# CHRO

*Safeguarding Civil Rights in Connecticut*



Affirmative Action/ Equal Opportunity Employer

As to the substance of your request, even assuming that we had received an appearance, and request for a Release of Jurisdiction (a Right to Sue letter is obtained from the EEOC and relates to the companion federal charges; this agency issues a Release of Jurisdiction with respect to state charges) in September of 2001, we could not have issued the requested Release of Jurisdiction. Public Act 01-95, cited in the letters dated September 19, 2001 and January 4, 2002, is not applicable to this matter. The public act, which does authorize the issuance of a release of jurisdiction while a request for reconsideration is pending, or has been granted or denied, pertains only to complaints which were initially dismissed pursuant to CONN. GEN. STAT. § 46a-83(b). That section pertains only to complaints that are dismissed following Merit Assessment Review. Ms. Aquino's complaint, however, was retained after Merit Assessment Review. It was investigated, and subsequently dismissed, pursuant to subsections (c), (d) and (e) of CONN. GEN. STAT. § 46a-83. Therefore, P.A. 01-95 does not apply.

I have enclosed copies of the initial MAR review, showing that this complaint was retained for a full investigation, and of the denial of the request for reconsideration. Thank you for your attention.

Sincerely,

Raymond P. Pech
Managing Director & Commission Attorney

c: Philip A. Murphy, Jr., Commission Counsel
   Diedre Morris

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

# COPY

---

ELENA POMA F/K/A ELENA AQUINO    :

       Plaintiff        :

                     :    CIVIL ACTION NO.

VS.                   :    3:02CV543 (CFD)

                     :

CITY OF HARTFORD/        :
HEALTH DEPARTMENT      :

                     :    FEBRUARY 13, 2003

       Defendants     :

---

### DEPOSITION OF ELENA POMA

    Taken before Sandy K. Visentin, Licensed
Professional Reporter and Notary Public in and for
the State of Connecticut, pursuant to the Federal
Rules of Civil Procedure, at the law offices of
Kainen, Escalera & McHale, 21 Oak Street, Hartford,
Connecticut, on Thursday, February 13, 2003,
commencing at 9:54 a.m.

Sandy K. Visentin, LSR, RPR
CT Lic. #SHR.234
Andrews Reporting Service
330 Cook Hill Road
Cheshire, CT  06410
(203) 271-2190

2

<u>APPEARANCES</u>

<u>REPRESENTING THE PLAINTIFF</u>:

    MINITER & ASSOCIATES
    147 Charter Oak Avenue
    Hartford, CT  06106
    (860) 560-2590
        By:  Christine E. Corriveau, Esq.

<u>REPRESENTING THE DEFENDANTS</u>:

    KAINEN, ESCALERA & MCHALE, P.C.
    21 Oak Street
    Hartford, CT  06106
    (860) 493-0870
        By:  Joseph W. McQuade, Esq.

<u>ALSO IN ATTENDANCE</u>:

    Katherine M. McCormack   (partial attendance)
    City of Hartford Health Department

1       Q.    Would you present it differently?

2       A.    From my point of view, yes.

3       Q.    And how is that?

4       A.    Well, you have someone who has performed

5    the job, you know that this person has shared with

6    you the interest of filling that position, and that

7    you know that this person is coming back to work, and

8    yet you go on and open the job and close it so

9    this -- it's unusual for positions to open and close

10   in such a short time frame.  For the most part they

11   are not that short of a posting and closing date.

12      Q.    What do you think is the typical posting

13   and closing date timelines?

14      A.    About 30 days.

15      Q.    About 30 days, okay.

16      A.    Just for the application process.  Not

17   taking into consideration qualifying the best

18   candidates and the whole process.

19      Q.    Right, just the application process?

20      A.    Right.

21      Q.    Are you aware that some of these open and

22   close in two or three days?

23      A.    Very unusual.

24      Q.    Now, it's fair to say that the Personnel

25   Department does the posting, correct?

1    available.  And he also authorized me to go to the

2    lead abatement training.

3        Q.   Now, the lead abatement training, was that

4    a low-level training, was that an introductory

5    course?  What kind of training was Sally Odle doing?

6        A.   It was a lead abatement training to give

7    the inspectors and property owners, you know,

8    valuable information as to the best ways to meet the

9    plan and abate.

10       Q.   Was one training better than the other?

11       A.   Not to my opinion.

12       Q.   So he would like you to go to one of the

13   training sessions but not the other?

14       A.   Yes.

15       Q.   If we go to the next page of Exhibit 8, it

16   starts, "Today, November 20, 1998 at 3:00 P.M. I met

17   with Deputy Director Ponn because I wanted her to

18   review the denial for training I had received from

19   Mr. Hood.  According to him the training was denied

20   because it was out of my job classification.  When I

21   met with Ponn I informed her that the training was a

22   completion for the lead inspector position; that the

23   training was sponsored by the state; therefore it was

24   free of charge to the city.  I also informed her that

25   Owen had given me the information regarding the

1  training and had suggested for me to call and

2  register for it.

3        "After Ponn wrote all of this information

4  down she asked me 'When is your baby due?  How long

5  do you plan to be out on maternity?  Do you think

6  this had anything to do with it?'  I told her I

7  didn't even want to think about my pregnancy" --

8        A.    That my pregnancy.

9        Q.    -- "that my pregnancy had anything to do

10  with this situation because that was a very serious

11  matter and I didn't want to think that this was the

12  reason for what was going on.

13        "Ponn told me that she was aware I was

14  interested in the lead inspector position and she

15  also knew that I have been doing inspections.  She

16  asked me if I knew whether or not Ms. McCormack knew

17  about it.  I told her that I never personally told

18  her but that if she (Ponn) knew about it most

19  definitely Ms. McCormack knew about it, too.  Ponn

20  told me that she would talk to Kevin and that she was

21  going to get back to me within 48 hours."

22        If I understand correctly, you scheduled an

23  appointment with Ponn and that appointment occurred

24  on November 20th?

25        A.    I don't recall if I scheduled the

1  appointment ahead of time or just went by her office

2  and asked to meet with her.

3       Q.   I guess before I was under the impression

4  that on November 5th you marched down to Ponn's

5  office and tried to get an appointment with her.  Is

6  that what happened?

7       A.   Like I said, I don't recall if I did it on

8  the same date or afterwards, if it was scheduled

9  ahead of time or if it just happened on that date.

10      Q.   Why did this meeting take place two weeks

11 after you talked to Mr. Hood?

12      A.   Availability from Ms. Ponn's schedule.

13      Q.   So is it fair to say that Ponn asked you

14 whether you were under the impression that your

15 pregnancy had something to do with the denial of one

16 of these two training sessions?

17      A.   I'm sorry, can you ask that again?

18      Q.   If I understand, Ponn was asking you, well,

19 are you here because you think that your pregnancy

20 had something to do with your denial?

21      A.   That's what she asked me, yes.

22      Q.   So she was asking you whether you were

23 filing a complaint about this, or whether you felt

24 that you had been discriminated against?

25      A.   I think she was asking me -- I'm sorry, ask

121

1    me again because I'm a little bit confused.

2        Q.    What I'm trying to understand is it sounds

3    like she's asking you, well, are you here to complain

4    that you were denied this position because you're

5    pregnant?

6        A.    I don't know what her intentions were

7    asking me this, but my intention was for her to look

8    at the situation and find out whether or not, you

9    know, I could still attend the training, if they

10   could change their decision to not have me attend the

11   training.

12       Q.    And what did you take her question to you

13   about do you think your pregnancy had anything to do

14   with this, what did you take that to mean?

15       A.    That perhaps she knew something about it,

16   that perhaps a comment had been made that I was not

17   aware of.

18       Q.    And did you ask her whether someone had

19   mentioned something to her?

20       A.    I don't recall if I asked her that.

21       Q.    Did you answer her question as to how long

22   you planned to be out on maternity leave?

23       A.    I believe I did.

24       Q.    The next page of Exhibit 8 -- well, let me

25   ask you this.   I'm sorry, go back to the fourth page.

# THE CITY OF HARTFORD

*An Equal Opportunity Employer*

**Announces a Promotional Opportunity for**



**PUBLIC HEALTH SANITARIAN INSPECTOR**      Weekly Salary Range      **$498.75 - $673.25**

## POSITION

Vacancy is in the Lead Program of the Community Health Division of the Health Department. Under supervisio
assists in the administration of the City's public health program by conducting routine inspection and regulatio
activities of general environment sanitation. Provides epidemiological and environmental investigations of lea
poisoning cases. Conducts prompt environmental inspections of dwellings where children with elevated blood lea
levels reside. Performs environmental testing of housing. Conducts risk reduction education with families. Write
reports to providers, case managers, and the State Health Department. Transmits orders to owners for abatement o
lead from properties. Performs related work as required. Hours of this position are 35 per week.

## QUALIFICATIONS

Graduation from a standard high school, or its equivalent, supplemented by two years of college. Two years
responsible experience in the field of public health sanitation involving public contact. Wherever possible,
appropriate equivalents will be considered.

## NECESSARY SPECIAL QUALIFICATIONS

Possession of a valid driver's license is required. A copy of a valid driver's license must be submitted with the
application. **APPLICATIONS WITHOUT A COPY OF A VALID DRIVER'S LICENSE WILL NOT BE
PROCESSED.**

## EXAMINATION

Open to all full-time, permanent employees of the City of Hartford who possess the above qualifications. The
examination will include a rating of your training and experience as described on your application and may include
a written test, an oral test, or a combination of both. All parts of the examination, including ratings and tests, will
be related to the requirements of the position for which you have applied. The examination will be designed to
measure the following: Knowledge of the laws, rules and regulations pertaining to municipal environmental
sanitation; Knowledge of modern methods, principles and practices, and techniques of public health sanitation;
Knowledge of lead inspection and the pathways of lead poisoning; Ability to express oneself clearly and concisely
both orally and in writing. If appointed, you will be required to serve a probationary period normally 6-12 months
in duration. This examination is subject to all Federal, State and Municipal laws, rules and regulations.

## APPLICATIONS WILL BE ACCEPTED UNTIL FRIDAY, DECEMBER 19, 1997.

DEFENDANT'S
EXHIBIT NO. _PMA_ **7**
FOR IDENTIFICATION
2-13-03
DATE: _____ RPTR: _____

Applications are obtained from and submitted to

**DEPARTMENT OF PERSONNEL**
MUNICIPAL BUILDING
550 MAIN STREET
HARTFORD, CONNECTICUT 06103
TELEPHONE (203) 543-8590

Exam No.    1962
Issued:    12/4/97

CHANGE OF ADDRESS :                                                                    POMA 000145

It is your responsibility to notify the Personnel Department of any change of address on your application.