FILED JAN 5

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ELENA POMA, F/K/A ELENA AQUINO : 3:02CV543 (MRK)

V. :

CITY OF HARTFORD/HEALTH DEPARTMENT : DECEMBER 19, 2003

AFFIDAVIT OF ELENA POMA

I, Elena Poma, being over the age of eighteen years and believing in the obligations of an oath, and being duly deposed, hereby make affidavit and state:

1. I am a Hispanic woman and was employed as a Senior Clerk Typist by the defendant City of Hartford/Health Department from December 1996 until March of 1999. On December 2, 1997 and on January 27, 1999, I gave birth to my children.

2. In or about February 1997, the person then holding the position of Lead Inspector for Defendant was promoted, thereby leaving the position vacant. At this time, I was offered the opportunity to go out with other Lead Inspectors in order to perform inspections.

3. I began performing these inspections in or about February, 1997, yet, despite the fact that I was performing the duties of a Lead Inspector (such position constituting a promotion), I was not granted the Lead Inspector salary. I continued to receive the salary of a Senior Clerk Typist.

4. In or about November, 1997, I temporarily left my employment for a two (2) month maternity leave.

5. Before I left for maternity leave, the I spoke to both Owen Humphries and my

immediate Supervisor Kevin Hood, regarding the Lead Inspector application process. Both men assured me that they were "working on" filling the position, and that I would be afforded the opportunity to apply for the position.

6. When I returned to work in February of 1998, the Defendant had filled the vacant Lead Inspector position in December of 1997, thereby denying me the opportunity to apply for this position.

7. The Defendant hired Bennie Crudup, an African American male, for the Lead Inspector position.

8. Despite the fact that the Defendant hired Mr. Crudup for the Lead Inspector position, I was still obliged to assist Mr. Crudup and the other Lead Inspector, Kenneth Elliason, with performing inspections and epidemiological investigations.

9. On March 18, 1998, I informed Kevin Hood that I felt I was working out of my job class and further, that I wished to be compensated for the same.

10. Mr. Hood informed me that in the event I filed a grievance regarding this matter, I could be barred from performing future inspections as a result, such action thereby jeopardizing my opportunities for advancement.

11. Mr. Hood suggested that I speak to Director Katherine McCormack in order to express my interest in the Lead Inspector position. However, Mr. Hood informed me that Ms. McCormack did not harbor a favorable impression of me.

12. My contact with Ms. McCormack was very limited (indeed, Ms. McCormack neither supervised me nor worked in my particular unit). I believe that if Ms. McCormack did not view me with favor, it could only be based upon the fact that I was pregnant and/or Hispanic.

13. On or about May 19, 1998, I became certified as a State Certified Lead Inspector and I continued performing inspections until September of 1998. (See Exhibit A attached hereto.)

14. On September 11, 1998, Mr. Hood informed me that Ms. McCormack had mentioned to him that I spent too much time talking about "personal things" to my co-worker, Ms. Matilde Bello. I believe that Ms. McCormack automatically assumed that my conversations with Ms. Bello were personal simply because we were conversing in Spanish. Upon information and belief, however, Ms. McCormack does not speak Spanish and is in no way qualified to characterize the substance of my conversations with Ms. Bello.

15. On October 14, 1998, while I was having a conversation with Ms. Bello, Kevin Hood approached me and proceeded to state "This is what Katherine was talking about." Mr. Hood's statement makes me believe that there was an issue or problem regarding my native language, Spanish, and by extension, my ancestry, Hispanic.

16. On or about October 14, 1998, I filed a complaint against Kevin Hood, my immediate supervisor, with the Human Resources Department based upon the fact that Mr. Hood was harassing me during work hours simply because I was speaking Spanish to my co-worker. (See Exhibit B attached hereto)

17. On October 27, 1998, Owen Humphries sent me a memo regarding RMD - XRF training that I should attend; this training was mandatory for all Lead Inspectors. See Exhibit C attached hereto.

18. On November 2, 1998, I submitted the request to my supervisor, Kevin Hood, that I be permitted to attend the RMD-XRF training. On November 5, 1998, my request was denied. Defendant's alleged reason for said denial was that the training did not fall

within my job description. (See Exhibit D attached hereto.)

19. Defendant's reason for this denial is false in that Defendant, as well as my supervisor, Kevin Hood, were well aware of the fact that I had performed Lead Inspector duties for the Defendant. They were also aware that I was highly interested in the Lead Inspector position (and therefore would be well served by attending the training). Finally, Defendant was well aware of the fact that the denial of this particular training request would hinder my efforts to advance (i.e. to be promoted to the Lead Inspector position).

20. On November 20, 1998, while I was pregnant with my second child, I met with Ponn Mahayosnand, the Defendant's Deputy Director, and requested that she examine the issue of my training request. Rather than address this specific concern however, Ms. Mahayosnand instead asked me when my baby was due and how long I was planning to be out on maternity leave. These queries from Ms. Mahayosnand give rise to an inference that the my pregnancy was related to Defendant's refusal to deny me the RMD-XRF training.

21. On December 3, 1998, Ms. Mahayosnand told me that she could not authorize the RMD-XRF training because the Lead Inspector position was now open, and that granting me the opportunity to attend the training would not be fair to the other applicants because such would grant me an unfair advantage. In fact, this was the same excuse that Ms. McCormack had presented to Godfred Ansah, Human Resource Representative for Defendant, who investigated my October 14th complaint against Kevin Hood.

22. Bennie Crudup was promoted in or about July of 1998 to the position of Public Health Sanitarian, thereby creating a vacancy in the Lead Inspector position.

23.     On November 25, 1998, the Lead Inspector position was posted. I applied for it in a timely manner. The job requirements were as follows: Graduation for High School, two years of college, and two years of "responsible experience in the field of public health sanitation, involving public contact." The posting also stated "Whenever appropriate equivalents will be considered." See Exhibit E attached hereto. Neither the posting nor the application requested a transcript to be submitted. In December of 1998, when the position was posted, I applied for the position and later received a letter of rejection from the Defendant on December 29, 1998. See Exhibit F attached hereto.

24.     The Defendant's stated reason for denying me the position was that I did not possess the minimum academic requirements and experience for the position, with no further elaboration.

25.     Defendant's reason for the my rejection is false in that I had become certified as a Lead Inspector and indeed, I had already worked in that capacity for approximately 1-1/2 years for the Defendant, both serving to demonstrate that I did indeed possess both the minimum educational requirements and employment experience. In addition, I had actually attended more than two years of college at the time of the rejection. (See College Transcript attached hereto as Exhibit G attached hereto)

26.     I noted on my application that I attended North Tech. Institute from April 1990 to December 1990; PBCC from January 1990 to December of 1991; and MCTC from 1992 to "present," i.e. 1998. No where on the application did the application request the number of credits that I had completed. (See Exhibit H attached hereto).

27. I noted the following on my application in the section inquiring of "other training."

Attended Lead Inspector and Risk Assessor Training and received

> certificates in May, 1998. Attended a one day Lead Abatement Course at CRT on November 16, 1998. I have perform (sic) inspections, epidemiological investigations and perform (sic) other duties currently assigned to a Lead Inspector.

Id.

28. In addition, on the application, I identified my duties as Senior Clerk Typist as follows:

> Performed epidemiological and lead investigation under the supervision of the current lead inspectors. Provided educational material to families to help them prevent further lead poisoning to their children. Prepare orders to owners for abatement of lead. Serve as liason between medical providers, state agencies, community agencies. Type monthly report and other letters, forms, affidavits for completion of abatement. Attend Court.

Id.

29. My application reflected that I had two years experience in the Health Department as well as over four years public contact on all prior jobs.

30. The Defendant now requires employees to submit transcripts with their applications, but did not require it at that time. This requirement is clearly stated on the posting.

31. I was qualified for the job of Lead Inspector, as evidenced by the letter from Katherine McCormack dated January 19, 2001 and attached hereto as Exhibit I. My qualifications were the same then as they had been when I was denied in December of 1998, although this time I was allegedly denied because I inquired as to a flexible schedule.

32. The Defendant knew that certain positions were going to be eliminated in 1999, and by leaving me in the Senior Clerk Typist position, rather than promoting me, they knew I would be laid off in March of 1999.

33. The Department of Health, under the direction of Katherine McCormack,

often made exceptions to the job application process for unqualified white males. For example, Owen Humphries was appointed to the position of Public Health Sanitarian without any field experience. Kevin Hood was appointed as a manager for the Environmental Unit without any state certification.

34. Although I did not hold the title of Lead Inspector, I performed all job requirements except that I was untrained at calibrating the RMD-XRF instruments. Upon understanding and belief, Kevin Hood denied me the RMD-XRF training in retaliation for my filing a grievance against him.

Dated at Hartford, Connecticut this 19th day of December, 2003.

Elena Poma

Elena Poma

Subscribed and sworn to before me this 19th day of December, 2003.

Christine E. Corriveau

Christine E. Corriveau
Commissioner of the Superior Court

# EXHIBIT A



# EnviroMed Services, Inc.

25 Science Park • New Haven, Connecticut 06511 • (203) 786-5580

## Elena Aquino

68 Smith Drive, East Hartford, Connecticut 06118

has successfully completed a two (2) day, sixteen (16) hour Lead Risk Assessor Initial Training Course in accordance with the Department of Public Health Standards established pursuant to Section 20-477 of the Connecticut General Statutes.

5/18/98-5/19/98
Course Date

5/19/98
Exam Date

5/19/99
Expiration Date

20040 Pb-05
Certificate Number

[signature] C.I.H.
Training Manager

# EXHIBIT B

# CITY OF HARTFORD

## COMPLAINT INTAKE FORM

NAME: Elena Aquino

ADDRESS: 68 Smith Dr., E. Hartford 06118

HOME TELEPHONE:

WORK TELEPHONE: 547-1426 x7168

DEPARTMENT: Health

DIVISION: Enviro. Health

TITLE: Sr. Clerk Typist

DISCIPLINARY ACTION WITHIN LAST 6 MOS
YES ( ) NO (✓)

BASIS OF DISCRIMINATION
( ) Race ( ) National Origin
( ) Color ( ) Marital Status
( ) Sex ( ) Physical Disability
(✓) Ancestry ( ) Mental Disability
( ) Age ( ) Religion
( ) Sexual Orientation ( ) Previously Opposed, Filed, Testified Assisted

NATURE OF DISCRIMINATION:
( ) LAYOFF
( ) EXCLUSION
( ) NO TRAINING
( ) NO CAREER LADDER
( ) JOB CLASSIFICATION
( ) BENEFITS
( ) PROMOTION
( ) DISCIPLINARY
( ) UNFAIR TREATMENT
( ) TERMS/CONDITIONS OF EMPLOYMENT
( ) OTHER __________
( ) DEMOTION
(✓) HARASSMENT
( ) INTIMIDATION
( ) WAGE DIFFERENTIAL
( ) DISCHARGE
( ) SENIORITY
( ) HIRING

HAVE YOU FILED WITH ANY OTHER FORUM? (STATE, UNION, ETC.) IF YES, WHICH ONE?
YES ( ) NO (✓)

RECEIVED 1998 OCT 14 AM 11:48 PERSONNEL DEPT

DATES OF ALLEGED DISCRIMINATORY/HARASSING PRACTICES, PROCEDURES OR INCIDENTS?
September 11, 1998 and October 14, 1998.

PERSON(S) WHO HAVE ALLEGEDLY DISCRIMINATED AGAINST COMPLAINANT:
Kevin Hood.

EXPLANATION OF CHARGE: Mr. Hood claims that Ms. McCormack told him that I spend too much time talking about personal matters to Ms. Bello. On the 2 mentio dates Ms. Bello and I were talking spanish which is why this leads me to be that there is a problem with us speaking spanish.

REMEDY YOU ARE SEEKING: I want to not feel harrassed because I speak spanish and I would also like for people to assume that our conversations are personal because they are spoken in spanish.

October 14, 1998
DATE

Elena Aquino
COMPLAINANT'S SIGNATURE

CONFIDENTIALITY WILL BE PROTECTED – RETALIATION DUE TO FILING OF THIS COMPLAINT IS AGAINST THE LAW.

IX-2

DEFENDANT'S ~~Aquino~~ POMA EXHIBIT NO. 2
FOR IDENTIFICATION
2-13-03
DATE: RPTR: U

POMA 000067

# EXHIBIT C



# STATE OF CONNECTICUT

DEPARTMENT OF PUBLIC HEALTH

DEH #98-26

TO: Directors of Health
HUD Program Coordinators
Chief Sanitarians

FROM: Mark Aschenbach, Environmental Sanitarian II
Childhood Lead Poisoning Prevention Program

SUBJECT: RMD X-ray Fluorescence Analyzer Training and Radiation Monitoring Devices

DATE: October 21, 1998

The Childhood Lead Poisoning Prevention Program (CLPPP) will be sponsoring a factory instruction training course December 8, 1998 from 8:15 a.m. to 4:30 p.m. at the Department of Transportation Headquarters in Newington, CT for the RMD Model LPA-1 Lead in Paint X-ray fluorescence analyzer. As you may be aware, the Department of Public Health currently has two (2) RMD LPA-1 instruments which it makes available to local code enforcement agencies responsible for the performance of lead inspections. **In order to release the CLPPP's RMD lead analyzer for use by a local health department, the representative from that department who will transport and/or use the instrument must have attended a factory instruction training course.** There will be no cost to local health departments or housing code enforcement officials. The course will cover:

a) Principles of X-ray Fluorescence
b) Principles of Operation
c) The Characteristics of the Radioactive Source
d) Radiation Safety Practices
e) Proper Operation of the LPA-1

If you have any new or additional personnel who need to attend this training course, please contact Mark Aschenbach at (860) 509-7299 by November 20, 1998 so that we may determine the number of attendees.

For those who have received training from RMD in the past, refresher training is not required.

MA:ck

*Phone:* (860) 509-7299
*Telephone Device for the Deaf (860) 509-7191*
*410 Capitol Avenue - MS #* 51LED
*P.O. Box 340308 Hartford, CT 06134*
*An Equal Opportunity Employer*

POMA 000193

EXHIBIT A

# EXHIBIT D

# LOCAL CONFERENCE/TRAINING ATTENDANCE REQUEST FORM

(use for local non-overnight conference/training only)

**Employee Name:** Elena Aquino **Employee Title:** Sr. Clerk Typist

**Division:** Environmental **Program Name:** LPPEP

**Program Code:** ______

**Conference Title:** RMD-XRF Training

**Sponsor:** Childhood Lead Poisoning Prev. Prgm.

**Conference Dates:** From 12/8/98 To 12/8/98

**Purpose of Attendance:** To learn how to properly use the RMD-XRF machine. Training is necessary in order to use and transport equipment.

**Registration Fee:** Ø

**Mileage Cost:** unknown

Elena Aquino — Employee Signature — 11/2/98 Date

______ Program Manager Approval ______ Date

______ Director of Health or Designee Approval ______ Date

Elena
This is not within your job description
11/5/98
[signature]

---

Please note: Once all signatures have been obtained, forward original request to Alma Hernandez in the Administration Office. Alma will distrubute photocopies as follows: employee and program manager. Employee will attach a copy of approved request form to time sheet.

# EXHIBIT E

# THE CITY OF HARTFORD

*An Equal Opportunity Employer*

**Announces a Promotional Opportunity for**

PUBLIC HEALTH SANITARIAN INSPECTOR Weekly Salary Range $503.75 - $680.00

## POSITION

Vacancy is in the Lead Program of the Community Health Division of the Health Department. Under supervision, assists in the administration of the City's public health program by participation in the routine inspection and regulation activities of general environmental sanitation. Provides epistemologies and environmental investigations of lead poisoning cases. Conducts prompt environmental inspections of dwellings where children with elevated blood lead levels reside. Performs environmental testing of housing. Conducts risk reduction education with families. Writes reports to providers, case managers, and State Health Department. Transmits orders to owners for abatement of lead from properties. Performs related work as required. Hours of this position are 35 per week and the above salary includes 5% in lieu of overtime.

## QUALIFICATIONS

Graduation from a standard high school, or its equivalent, supplemented by two years of college. Two years responsible experience in the field of public health sanitation, involving public contact. Wherever possible, appropriate equivalents will be considered.

## NECESSARY SPECIAL QUALIFICATIONS

Possession of a valid driver's license is required. A copy of a valid driver's license must be submitted with the application. APPLICATIONS WITHOUT A COPY OF A VALID DRIVER'S LICENSE WILL NOT BE PROCESSED.

## EXAMINATION

Open to all full-time, permanent employees of the City of Hartford who possess the above qualifications. The examination will include a rating of your training and experience as described on your application and may include a written test, an oral test, or a combination of both. All parts of the examination, including ratings and tests, will be related to the requirements of the position for which you have applied. The examination will be designed to measure the following knowledge, abilities and skills; Knowledge of the laws, rules and regulations pertaining to municipal environmental sanitation; Knowledge of modern methods, principles and practices, and techniques of public health sanitation; Knowledge of lead inspection and the pathways of lead poisoning; Ability to express oneself clearly and concisely, both orally and in writing. If appointed, you will be required to serve a probationary period normally 3-12 months in duration This examination is subject to all Federal, State and Municipal laws, rules and regulations.

APPLICATIONS WILL BE ACCEPTED UNTIL FRIDAY, DECEMBER 18, 1998.

DEFENDANT'S EXHIBIT NO. ~~Agrino~~ POMA 12 FOR IDENTIFICATION
DATE: 2-13-03 RPTR: T

Exam No. 2074
Issued: 11/25/98

Applications are obtained from and submitted to
DEPARTMENT OF PERSONNEL
MUNICIPAL BUILDING
550 MAIN STREET
HARTFORD, CONNECTICUT 06103
TELEPHONE (203) 543-8590

POMA 000196

CHANGE OF ADDRESS :
It is your responsibility to notify the Personnel Department of any change of address on your application.

# EXHIBIT F

# CITY OF HARTFORD

DEPARTMENT OF PERSONNEL
550 Main Street, Hartford, CT 06103
Telephone (860) 543-8590

COUNCIL – MANAGER GOVERNMENT

12/29/98

Elena Aquino
33 Daisy Lane
South Windsor, CT 06074

Dear Applicant:

This is to inform you of the status of your application for the position of PUBLIC HEALTH SANIT. INSPEC.

Unfortunately, we cannot consider your application for the following reason(s):

__X__ Academic: Application did not reflect the minimum educational requirements as stated on the job announcement.

__X__ Experience: Application did not reflect the minimum experience requirements as stated on the job announcement.

----- Age: Does not meet the minimum age requirement.

----- Residence: Is not a bonafide resident of Hartford on the date of application.

----- Late Application: Your application was received after the official closing date for this position.

----- Incomplete: Copy of required documentation was not submitted with the application as stated on the job announcement or has been determined to be insufficient.

----- Bilingual Ability: Did not indicate bilingual ability on application.

----- Other -

This action does not preclude you in any way from applying for future positions with the City of Hartford.

Thank you for your interest in employment with the City of Hartford.

For the Personnel Director

By: Susan Cerni fn L
Personnel Department

INTERNATIONAL PERSONNEL MANAGEMENT ASSOCIATION IPMA MEMBER

DEFENDANT'S EXHIBIT NO. Aquino POMA 14
FOR IDENTIFICATION
DATE: 2-13-03 RPTR: 3

# EXHIBIT G

#16 McCormack

Student No: 600374662 Date of Birth: 19-NOV-1966

Date Issued: 11-MAR-1999
BUNF

UNOFFICIAL

Record of: Elena Aquino
68 Smith Dr
East Hartford, CT 06118

Issued To: Elena Aquino
68 Smith Dr
East Hartford, CT 06118

Course Level: MaCTC Credit
Student Type: Continuing
High School: Hartford Public HS 30-JUN-1985
Only Admit: MaCTC Fall 1987

Current College : Manchester CTC (7702)
Current Major : PARALEGAL

| SUBJ | NO. | C | COURSE TITLE | CRED | GRD | PTS | R |
|---|---|---|---|---|---|---|---|
| **TRANSFER CREDIT ACCEPTED BY THE INSTITUTION:** | | | | | | | |
| Institution: | | | Palm Beach Community College | | | | |
| MATH | B109 | | GEOMETRY | 3.00 | TR | | |
| Ehrs: 3.00 GPA-Hrs: 0.00 Pts: 0.00 GPA: .000 | | | | | | | |
| F98 | | | CLEP | | | | |
| SPAN | B101 | | Elementary Spanish I | 3.00 | TR | | |
| SPAN | B102 | | Elementary Spanish II | 3.00 | TR | | |
| SPAN | B201 | | Intermediate Spanish II | 3.00 | TR | | |
| SPAN | B202 | | Intermediate Spanish II | 3.00 | TR | | |
| Ehrs: 12.00 GPA-Hrs: 0.00 Pts: 0.00 GPA: .000 | | | | | | | |
| **INSTITUTION CREDIT:** | | | | | | | |
| MaCTC Fall 1987 — Manchester CTC (7702), PARALEGAL, Continuing | | | | | | | |
| COMM | B281 | M | JOURNALISM I | 3.00 | D+ | 3.60 | |
| Ehrs: 3.00 GPA-Hrs: 3.00 Pts: 3.60 GPA: 1.200 | | | | | | | |
| MaCTC Fall 1992 — Manchester CTC (7702), PARALEGAL, Continuing | | | | | | | |
| BUS | B101 | M | LAW I | 3.00 | B | 9.00 | |
| LEGL | B201 | M | REAL PROPERTY I | 3.00 | W | 0.00 | |

******************* CONTINUED ON NEXT COLUMN ******************

| SUBJ | NO. | C | COURSE TITLE | CRED | GRD | PTS | R |
|---|---|---|---|---|---|---|---|
| Institution Information continued: | | | | | | | |
| PHIL | B201 | M | INTRO | 3.00 | B | 9.00 | |
| PLSC | B112 | M | STATE & LOC GVMT | 3.00 | C | 6.00 | |
| Ehrs: 9.00 GPA-Hrs: 9.00 Pts: 24.00 GPA: 2.666 | | | | | | | |
| MaCTC Spring 1993 — Manchester CTC (7702), PARALEGAL, Continuing | | | | | | | |
| ENG | B111 | M | INTRO COMP | 3.00 | W | 0.00 | |
| LEGL | B111 | M | INTRO PARALEGALISM | 3.00 | A- | 11.40 | |
| LEGL | B221 | M | LITIGATION | 3.00 | B+ | 9.60 | |
| PSYC | B111 | M | GENERAL I | 3.00 | B+ | 9.60 | |
| Ehrs: 9.00 GPA-Hrs: 9.00 Pts: 30.60 GPA: 3.400 | | | | | | | |
| MaCTC Fall 1993 — Manchester CTC (7702), PARALEGAL, Continuing | | | | | | | |
| CJ | B111 | M | INTRO | 3.00 | A | 12.00 | |
| CJ | B211 | M | CRIMINAL LAW | 3.00 | B+ | 9.60 | |
| Ehrs: 6.00 GPA-Hrs: 6.00 Pts: 21.60 GPA: 3.600 | | | | | | | |
| MaCTC Fall 1995 — Manchester CTC (7702), PARALEGAL, Continuing | | | | | | | |
| PLSC | B212 | M | CONSTL LAW | 3.00 | A | 12.00 | |
| Ehrs: 3.00 GPA-Hrs: 3.00 Pts: 12.00 GPA: 4.000 | | | | | | | |
| MaCTC Spring 1996 — Manchester CTC (7702), PARALEGAL, Continuing | | | | | | | |
| PLSC | B111 | M | AMER GVMT | 3.00 | A | 12.00 | |
| Ehrs: 3.00 GPA-Hrs: 3.00 Pts: 12.00 GPA: 4.000 | | | | | | | |
| MaCTC Fall 1996 — Manchester CTC (7702), PARALEGAL, Continuing | | | | | | | |
| ENG | B111 | M | INTRO COMP | 3.00 | B+ | 9.60 | |

******************** CONTINUED ON PAGE 2 *******************

# EXHIBIT H

THE CITY OF HARTFORD
An Equal Opportunity Employer

# APPLICATION FOR EMPLOYMENT

Department of Personnel, 550 Main Street, Hartford, Connecticut 06103

(COMPLETE IN INK OR ON TYPEWRITER)

DO NOT WRITE IN THIS SPACE
Q
NQ
Res
Educ
Exp
Not City Emp
Other
Rev. by: SA

1. Job Applying For: Public Health Sanitarian Inspector (2074)
USE TITLE ON JOB ANNOUNCEMENT — EXAM NO.

2. Your Name (PRINT): LAST NAME Aquino FIRST Elena MIDDLE

3. Address: 33 Daisy Lane
NO. AND STREET, RD OR P.O. BOX — APT. NO.
CITY So. Windsor STATE CT ZIP CODE 06074

4. How long have you lived at this address? 6 mo.

5. Your telephone number: HOME unlisted WORK 547-1426x

6. Date of Birth: 1-[redacted]-66

7. Have you ever been convicted of any offense other than a minor traffic violation? Yes [ ] No [X]
Conviction is not necessarily disqualifying. Give the facts and dates of your conviction(s) in Space 8.

8. Use this space to explain any items in Spaces 1-7.

DEFENDANT'S EXHIBIT NO. POMA 13
FOR IDENTIFICATION
DATE: 2-13-03 RPTR: V

9. EDUCATION

A. Did you graduate from high school?

| YES | MONTH | YEAR | NO | HIGHEST GRADE COMPLETED |
|---|---|---|---|---|
| | | | | |

B. If you have a high school equivalency certificate, give the year and place the certificate was granted:

| YEAR | PLACE |
|---|---|
| | |

C. Give last high school, grade school, or trade school you attended:

| NAME OF SCHOOL | LOCATION | DATES ATTENDED | COURSE |
|---|---|---|---|
| | | | |

D. List any colleges, business schools, or technical schools you attended:

| NAME OF SCHOOL | LOCATION | COURSE OR MAJOR | DATES ATTENDED | DEGREE OR CERTIFICATE RECEIVED |
|---|---|---|---|---|
| MCTC | 60 Bidwell St. Manchester | Legal Studies | 92-Present | |
| PBCC | PGA Boulevard Florida | Drafting | 1/90-12/90 | |
| North Tech. Institute | Riviera Beach Florida | Mechanical Drafting | 4/90-12/90 | Drafting Certificate |
| | | | | |

E. Other training (special courses, work training programs, armed forces training). Give name and location where training was given, certificate (if any), dates attended, subject of training, number of hours weekly, and other details related to the job for which you are applying.

Attended Lead Inspector and Risk Assessor Training and received certificates in May, 1998. Attended a one day Lead Abatement Course at CRT on November 16, 1998. I have perform inspections, epidemiological investigations and perform other duties currently assigned to a Lead Inspector.

NOTE Aliens must show an Alien Registration Receipt Card (Form I-151), or Form I-94 endorsed to permit employment.

POMA 000140

10. EXPERIENCE. Start with your present or last job and work back listing all paid or unpaid, full or part-time work, military service, and such jobs performed during the last 10 years. Use additional sheets of plain paper if you need more space. Work performed more than 10 years ago be given if it applies to the job you want.

Is it O.K. if we contact your present employer? Yes [X] No [ ] (NOTE: We may contact any previous supervisor to verify past duties.)

| Starting Date (Month/Year) | Ending Date (Month/Year) | Name and Address of Present or Last Employer |
|---|---|---|
| 12 96 | Present | Hartford Health Dept., 131 Coventry St. |

Salary: $537. wk | Hours per week: 35 | Name, title, and phone number of your immediate supervisor: Kevin Hood, Program Manager. 547-1426 x 7175

Reasons for leaving: —

Your present or last job title: Sr. Clerk Typist

Your duties: Performed epidemiological and lead investigation under the supervision of current lead inspectors. Provided educational material to families to help them prevent further lead poisoning to their children. Prepare orders to owners for abatement of lead. Serve as a liaison between medical providers, state agencies, community agencies. monthly report and other letters, forms, affidavits for completion of abatement. Attend court

| Starting Date (Month/Year) | Ending Date (Month/Year) | Name and Address of Next Previous Employer |
|---|---|---|
| 10 94 | 12 96 | Department of Human Services, 2 Holcomb St. |

Salary: $ 468. wk | Hours per week: 35 | Name and title of your immediate supervisor: Ramon Arroyo, Supervisor

Reasons for leaving: transfer to Health Department

Your job title: Sr. Clerk Typist

Your duties: Attended clients. Informed the clients of the services provided, how they need to request services. Referred clients to different departments and/or agencies. Distribute checks to clients. Interpreted/translated during interviews or hearings. Typed medical cards, vouchers, letters, etc.

| Starting Date (Month/Year) | Ending Date (Month/Year) | Name and Address of Employer |
|---|---|---|
| 5 94 | 10 94 | TCI Cablevision 91 Shield St., West Hartford |

Salary: $400 + com. wk | Hours per week: 40 | Name and title of your immediate supervisor: Claudia Hawking, Supervisor

Reasons for leaving: job Offer with the City of Hartford with better hours

Your job title: Customer Service Representative

Your duties: Answered Calls from customers. Helped them understand their bills. Helped them "trouble shoot" minor cable problems. Adjusted bills by giving credit whenever necessary. Provided customers with options for services and assisted them on the selection of cable services based on their needs. Provided training to new employees and other services as requested

| Starting Date (Month/Year) | Ending Date (Month/Year) | Name and Address of Employer |
|---|---|---|
| 1 92 | 5 94 | Civic Center, 1 Civic Center Plaza |

Salary: 10.25 hr. | Hours per week: 16-25 | Name and title of your immediate supervisor: Helen Boyle, Box Office Supervisor

Reasons for leaving: full time position with Cable.

Your job title: Box Office Clerk

Your duties: Sold tickets for concerts, games, special events. Gave directions to Civic Center. Answer telephone. Balanced cash register at the end of my shift. Performed other duties as required.

11. SPECIAL SKILLS OR ABILITIES. Show licenses (including driver's); machines you operate; languages other than English which you speak, read and write well; typing and shorthand speeds; and any other special abilities or knowledges relating to the job you want. Some veterans may be eligible for special preference. Check with the Personnel Department.

I speak, read and write fluent Spanish. I have the ability to communicate well with the public. (Because of the fact that we serve a spanish speaking community they feel very confortable with some one who speacs their language).

CERTIFICATION: I certify that all statements made on or in connection with this application are true, complete, and correct to the best of my knowledge and belief, and are made in good faith. I understand that incomplete, false, or inaccurate information may result in the rejection of this application and that false information may result in my dismissal if employed.

12/3/98 [signature]

# EXHIBIT I



CITY OF HARTFORD
# Health Department

131 Coventry St.
Hartford, CT
06112

Administration
v: 860-543-8800
f: 860-722-6719

AIDS/HIV
543-8822

Child Development
543-8831

Childhood Immunization Registry
543-8816

Environmental Health
543-8815

Grants & Management Services
543-8800

Healthy Start
543-8800
ext. 7191

Lead Prevention
543-8817

Maternal & Infant Outreach
543-8834

Public Health Nursing
543-8820

Ryan White Title I
543-8806

Sexually Transmitted Diseases
543-8820

Tuberculosis
543-8827

Vital Records
543-8539

Women, Infant & Children
543-8835

Women Services
543-8833

January 19, 2001

Elena Poma
33 Daisey Lane
South Windsor, CT 06074

Dear Ms. Poma:

I would like to thank you for your interest in the Health Department and the position of Public Health Lead Inspector.

Although you qualify for the position, I am unable to meet your conditions of employment as described to Owen Humphries during the interview process:

- Flex working hours.
- Guaranteed working time off during the spring and fall semesters 2001 to attend classes toward your associates degree.

I will notify the Personnel Director that because of the above reasons, you are not being selected for the Lead Inspector position.

Sincerely,

Katherine M. McCormack, RN, MPH
Director of Health

KMM/jd

cc: P. Washington
G. Wenger
O. Humphries

RECEIVED
01 JAN 22 PM 3:19
PERSONNEL DEPT

DEFENDANT'S
EXHIBIT NO. Poma 16
FOR IDENTIFICATION
DATE: 2-13-03 RPTR: V