UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ELENA POMA F/K/A ELENA AQUINO : | | CIVIL ACTION NO. |
| Plaintiff, : | | 3:02CV543 (MRK) |
| v. : | | |
| : | | |
| CITY OF HARTFORD/ : | | |
| HEALTH DEPARTMENT : | | |
| Defendants. : | | JANUARY 15, 2004 |
| : | | |

**DEFENDANT'S REPLY BRIEF IN SUPPORT OF**
**ITS MOTION FOR SUMMARY JUDGMENT**

Pursuant to D. Conn. L. Civ. R. 7(d), the Defendant, City of Hartford, respectfully submits this brief in reply to Plaintiff's "Memorandum of Law in Support of Plaintiff's Objection to Defendant's Motion for Summary Judgment" dated December 31, 2003 (Plaintiff's "Opposition") and in support of Defendants' Motion for Summary Judgment. Plaintiff's Opposition is remarkable in that it is supported by only two affidavits—one executed by Plaintiff and one executed by Plaintiff's counsel. Further, Plaintiff either agrees with the virtually all of the statements contained in Defendants' Local Rule 56(a)1 Statement of Facts Not in Dispute or offers no evidence to refute such statements which are supported by the record.

I.  <u>There Are No Material Facts in Dispute</u>.

Where the parties disagree as to the facts, Plaintiff's assertions are mistaken, undermined by the record and/or composed of conjecture and surmise. In short, Plaintiff has not offered sufficient evidence to prevent the entry of summary judgment in favor of the Defendant.

Of the 55 numbered paragraphs in Defendants' Local Rule 56(a)1 Statement, Plaintiff fully admits the truth of 44 such paragraphs. With respect to ¶¶13-14, Plaintiff admits to the truth of the statements contained in the Personnel Rules and Regulations but simply claims no knowledge as to whether the Personnel Rules and Regulations were followed at all times. With respect to ¶¶32-35, Plaintiff cannot admit or deny the assertions contained in Susan Comstock's affidavit because she lacks knowledge.[1] In response to ¶36, Plaintiff admits that she received her lay-off letter, but contends that the reason for her lay-off, as stated in such letter, was false. In response to ¶40, Plaintiff neither admits nor denies the assertions because she was not present for the conversation between Ms. McCormack and Mr. Hood. However, Plaintiff offers no evidence to refute Ms. McCormack's deposition testimony. Likewise, with respect to ¶41, Plaintiff admits the substance of the assertion. Thus, Plaintiff only denies ¶¶12 and 47.

Paragraph 12 of Defendants' Local Rule 56(a)1 Statement reads: "Once an applicant's application was deemed to meet the minimum qualifications for the position, that applicant would be eligible for a competitive examination. Personnel Rules and Regulations §1 (p. 6-1); see also, Poma Tr. at 84 (Personnel Department does the testing)." Rule V §3 of the Personnel Rules and Regulations states, in part: "<u>Disqualification</u>. The Director of Personnel shall reject any application which indicates on its face that the applicant does not possess the minimum qualifications required for the position . . . ." The next rule, Rule VI (§1) states, in part: "Advancement within the [classified] service shall be through promotional tests which shall be

---

[1] It is worth noting that Plaintiff failed to take the deposition of Ms. Comstock.

open to all permanent employees who meet the <u>necessary requirements</u> and who are serving in an appropriate class as determined by the Director of Personnel." Thus, there can be no question that, under the Personnel Rules and Regulations, an applicant was not eligible to take an examination for a promotional opportunity if the applicant's application did not reflect the minimum qualifications for the position. In short, there is no reason for Plaintiff to deny this fact.

Second, Plaintiff denies paragraph 47 of Defendants' Local Rule 56(a)1 Statement which states: "Plaintiff was never disciplined as a result of these two conversations with Ms. Bello." Plaintiff explains her denial by stating, "Plaintiff was retaliated against as a result of these incidents." While Plaintiff may claim that she was unlawfully retaliated against for these conversations, Plaintiff cannot present any evidence to suggest that she was subjected to any official discipline by the defendant as a result of these conversations. Poma Tr. at 44-45, 54-55. Thus, Defendant's assertion is correct.

Plaintiff also claims that there are 11 facts in dispute. Plaintiff's Local Rule 56(a)2 Statement at Facts in Dispute ("Facts in Dispute"). Plaintiff claims that she was disciplined as a result of her conversations, in the Spanish language, with Ms. Bello in that Mr. Hood allegedly retaliated against her by denying her the RMD-XRF training. Facts in Dispute at 1-3. This alleged denial of a training session does not rise to the level of an adverse employment action, especially when Plaintiff was allowed to attend a different training session. <u>See</u>, Defendant's Memorandum of Law in Support at 12 n.3. Next, Plaintiff claims that "The RMD-XRF training

3

may have qualified Ms. Poma for the Lead Inspector position." Facts in Dispute at 4. However, the record is clear that Plaintiff's application was not rejected because she had not attended any particular training session. Rather, the record reveals that Plaintiff's application was rejected because it failed to reflect the minimum educational requirements as stated on the job announcement (which was completion of 2 years of college) and the minimum experience qualifications (two years of responsible experience in the field of public health sanitation, involving public contact). See, Exhibit 14 to Exhibit A. Thus, the fact that Plaintiff did not attend the RMD-XRF training was not a decisive, or even a relevant factor, in Ms. Comstock's determination that Plaintiff's application failed to reflect the minimum job qualifications for the Lead Inspector position. Plaintiff's assertion is mere speculation.

Despite the assertions in Ms. Comstock's affidavit and the fact that Plaintiff did not take Ms. Comstock's deposition, Plaintiff claims that there is a question of fact as to whether Ms. Comstock had any knowledge of Plaintiff's pregnancy status. Facts in Dispute at 5-7. The lynchpin of Plaintiff's argument is that "the Deputy Director of Personnel had knowledge that Plaintiff was pregnant." Facts in Dispute at 7.[2] However, there is no evidence in the case (and Plaintiff offers no evidence in her Opposition) that any Deputy Director of Personnel had any knowledge of Plaintiff's pregnancy status. Rather, Plaintiff swears that Ponn Mahayosnand, the Deputy Director of Health asked Plaintiff when her baby was due and how long she planned to be out on maternity leave. Plaintiff's Affidavit at ¶20; see also January 14, 2004 Affidavit of

---

[2] The Opposition makes the same mistake. Opposition at 13, 15.

Katherine McCormack, attached hereto as Exhibit F.  Thus, Plaintiff offers nothing to contradict Ms. Comstock's sworn testimony that:  she did not have any knowledge as to whether Plaintiff was pregnant or not; prior to reviewing Plaintiff's application, she spoke to no one regarding such application; and she consulted with no person outside of the Personnel Department prior to sending Plaintiff a rejection letter.  Comstock Aff't. (Exhibit D) at ¶¶9-12.  Plaintiff has introduced no evidence suggesting that anyone in the Personnel Department knew that Plaintiff was pregnant.  Further, Plaintiff has introduced no evidence that anyone informed Ms. Comstock that Plaintiff was pregnant at that time.  Additionally, Plaintiff offers no evidence to suggest that someone other than Ms. Comstock made the decision that plaintiff's application failed to reflect the minimum qualifications for the position.  See, Facts in Dispute at 8.  Plaintiff has failed to undermine Ms. Comstock's Affidavit.

Next, Plaintiff makes the naked, self-serving assertion that "Defendant often makes exceptions to the application process for white males."  Facts in Dispute at 9; Poma Affidavit at ¶33.  Plaintiff offers no evidence to support this contention other than her speculation that Owen Humphries and Kevin Hood did not have the requisite field experience before assuming their positions.  Plaintiff's Affidavit at ¶33.  However, Plaintiff has no knowledge regarding Mr. Humphries' and Mr. Hood's positions.  Certainly, Plaintiff does not assert that she was a decision-maker in any decisions to appoint either individual.  Plaintiff does not profess to have any knowledge regarding the field experience of either individual and would not have been in a position to know such information.  Plaintiff does not profess to have any knowledge regarding

any selection processes for these individuals or any other candidates for such positions. In short, Plaintiff's assertions are based on pure conjecture and surmise. As such, they are not sufficient to prevent the entry of summary judgment in favor of the Defendant.[3]

Further, factual representations contained in the Opposition are inaccurate and unsupported by the Record. For example, on page 9 of the Opposition, Plaintiff maintains that Mr. Humphries and Mr. Hood "falsely assured [plaintiff] that she would be notified when the position was posted. Affidavit of Poma ¶5." However, in her Affidavit (at ¶5), Plaintiff simply swears that Mr. Humphries and Mr. Hood assured Plaintiff that she "would be afforded the opportunity to apply for the position." Additionally, Plaintiff testified that she was never told when the posting would occur and was not promised a telephone call when the posting was made. Poma Tr. (Exhibit A) at 78. Thus, the record is clear that Plaintiff, as well as anyone else, was afforded the opportunity to apply for the Lead Inspector position in accordance with the Personnel Rules and Regulations.

---

[3] Plaintiff is also confused about two paragraphs in her Facts in Dispute. First, Plaintiff asserts that there is a dispute over the proposition that "the Defendant never requested a transcript of [sic] requested the number of college credits on the application for employment." Facts in Dispute at 10. For purposes of this motion only, Defendant will concede such assertion. The Personnel Rules and Regulations put the onus on the applicant to submit an application that reflects the minimum qualifications for the position by stating that the "Director of Personnel shall reject any application which indicates on its face that the applicant does not possess the minimum qualifications for the position . . . ." Local Rule 56(a)1 Statement at paragraph 11 (admitted by Plaintiff). The Defendant is not obligated to request additional information from applicants. Thus, the assertion that the Defendant never requested a transcript from Plaintiff is immaterial to this dispute. Second, Plaintiff is confused in her assertion in Facts in Dispute 11. Defendant's assertion, throughout its brief, is that <u>at the time Plaintiff submitted her application</u> for the Lead Inspector position in 1998 (which was no later than the deadline for submission of applications—December 18, 1998), she had not worked for two years in the Health Department. Defendant's assertion is not that <u>by the time she received her rejection letter</u>, she had worked two full years in the Health Department. It should also be noted that Plaintiff asserts that she filed her application on December 3, 1998. Opposition at 14.

Plaintiff points to a January 19, 2001 letter from Katherine McCormack as evidence that she met the minimum requirements for the Lead Inspector position in December of 1998.  Poma Aff't. at ¶31.  This letter is irrelevant and immaterial to the issues raised in Plaintiff's complaint.  First, this letter obviously refers to a later job announcement for the Lead Inspector position.  Thus, it has no evidentiary value to the issues raised in this case.  Second, Plaintiff would have been required to submit a new application for this later job announcement and such application would reflect updated information.  One can assume that Plaintiff learned from her mistakes in December of 1998 when she filed her application in 2000 or 2001.

In her Opposition, Plaintiff has failed to provide the court with evidence sufficient to create a genuine issue of material fact necessitating a trial of any of her claims.  Accordingly, summary judgment should enter in favor of the Defendant on all claims.

  2. <u>The Court Lacks Jurisdiction Over the CFEPA Claims</u>.

In her Opposition, Plaintiff acknowledges that she has not received a Release of Jurisdiction from the Connecticut Commission on Human Rights and Opportunities ("CHRO").  Opposition at 10; Affidavit of Christine Corriveau.  However, she argues that her failure to obtain a Release of Jurisdiction is not her fault and, presumably, that equitable considerations should govern this inquiry.  Opposition at 10.

The failure to obtain a Release of Jurisdiction deprives this court of subject matter jurisdiction over her CFEPA claims.  <u>Garcia v. Saint Mary's Hosp.</u>, 46 F. Supp. 2d 140, 142 (D. Conn. 1999); <u>Catalano v. Bedford Associates, Inc.</u>, 9 F. Supp. 2d 133, 135 (D. Conn. 1998).

Because the court is deprived of subject matter jurisdiction over the matter, there is no occasion for the application of equitable principles to this situation. The failure to produce a Release of Jurisdiction ends the inquiry. Simply put, the only proper forum for Plaintiff's equitable arguments is the CHRO – not federal court.

Even if the court were to consider Plaintiff's arguments, such arguments do not stand up to scrutiny. According to Attorney Corriveau, Plaintiff was represented at the CHRO by Attorney Robert Muchinsky. Corriveau Aff't. at ¶2. On November 8, 2001, Plaintiff's Request for Reconsideration was rejected by the CHRO and notice was sent to Attorney Muchinsky. Corriveau Aff't. at ¶4. When Attorneys Corriveau and Miniter inquired in July of 2002, the CHRO refused to act on their request for a Release of Jurisdiction. Corriveau Aff't. at ¶5. Raymond Pech, Managing Director and Commission Attorney, wrote to Attorney Miniter and explained that: the CHRO was unaware of any appearance in that matter by Attorney Miniter or his firm; Attorney Muchinsky had represented Plaintiff throughout the CHRO proceedings and no withdrawal of his appearance was ever filed; rather than request a Release of Jurisdiction after a finding of No Probable Cause, Attorney Muchinsky requested reconsideration of the CHRO's determination; the request for reconsideration was denied on or about November 7, 2001; and Attorney Miniter was not notified because the CHRO did not have notice of any appearance by him. Exhibit C to the Corriveau Aff't. Moreover, as Attorney Pech alluded to, the CHRO was not able to issue a Release of Jurisdiction, even if it had received Attorney Miniter's request.

Indeed, after Plaintiff's request for reconsideration was denied, Plaintiff's only avenue of relief was to appeal to Superior Court.

> Judge Droney has explained a CHRO complainant's options as follows:
>
> If a complainant does not request a release while the case is pending, and the complaint is dismissed by the CHRO, he or she has two avenues of relief. First, "if a complaint is dismissed pursuant to subsection (b) of section 46a-83 . . . and the complainant does not request reconsideration of such a dismissal as provided in subsection (e) of said section 46a-83 the executive director of the commission shall issue a release and the complainant may, within ninety days of receipt of the release from the commission, bring an action in accordance with section 46a-100 and sections 46a-102 to 46a-104, inclusive." Conn. Gen. Stat. §46a-83a. Second, the complainant may take an administrative appeal of a final decision of the CHRO to the Connecticut Superior Court, Conn. Gen. Stat. §46a-94a(a), though "a complainant may not appeal the dismissal of his complaint if he has been granted a release pursuant to section 46a-101," §46a-94a(b). Third, the complainant may seek reconsideration of the dismissal pursuant to section 46a-83(e) and appeal any decision denying reconsideration in accordance with section 4-183. section 46a-94a(a). In other words, in the event that the CCHRO rejects a request for reconsideration after dismissing a complaint . . . the complainant's only avenue for relief is to file an administrative appeal to the Connecticut Superior Court."

Nader v. Brunalli Construction Co., 2002 U.S. Dist. LEXIS 7310 at *35-36 (D. Conn. March 26, 2002) (quoting, Peltier v. Apple Health Care, Inc., 130 F. Supp. 2d 285, 293 (D. Conn. 2000)).

In this case, it is clear from the materials provided that Plaintiff's CHRO complaint was not dismissed on the CHRO's merit assessment review. Rather, the CHRO complaint was retained and investigated. After the CHRO made the determination that there was no reasonable cause to further retain the complaint, Plaintiff had two options: (1) request a Release of Jurisdiction and file an action in court within 90 days of receipt; or (2) request reconsideration

9

and, thereafter, appeal to Superior Court if the results were unfavorable. Plaintiff, represented by counsel, chose to seek reconsideration. Thus, upon denial of such reconsideration, Plaintiff had the option to appeal to Superior Court. She did not have the option to then seek a Release of Jurisdiction.

Moreover, Plaintiff was represented by Attorney Muchinsky throughout the CHRO proceedings. Perhaps, Attorney Muchinsky and Attorneys Miniter and Corriveau had differing approaches to strategy. However, the Defendant should not be penalized for the failure of a complainant who was represented by counsel to obtain a Release of Jurisdiction from the CHRO.

The bottom line is that Plaintiff did not request a Release of Jurisdiction in a timely manner and did not receive one. Therefore, she has not exhausted her administrative remedies; she is not statutorily authorized to pursue CFEPA claims in federal court; and this court lacks subject matter jurisdiction over any CFEPA claims asserted in Plaintiff's Complaint. Therefore, summary judgment should enter in favor of the Defendant on Plaintiff's CFEPA claims.

        DEFENDANT,
        CITY OF HARTFORD/HEALTH DEPARTMENT

By: _____
    Joseph W. McQuade, ct12121
    jmcquade@kemlaw.com
    Kainen, Escalera & McHale, P.C.
    21 Oak Street, Suite 601
    Hartford, CT  06103
    Tel.: (860) 493-0870
    Fax: (860) 493-0871
    Its Attorneys

**CERTIFICATE OF SERVICE**

This is to certify that a copy of the foregoing Defendant's Reply Brief was sent via first class U.S. mail on this the 15th day of January 2004 to:

Francis A. Miniter, Esq.
Christine E. Corriveau, Esq.
Miniter & Associates
100 Wells Street, Suite 1D
Hartford, CT  06103

Joseph W. McQuade

12424